**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

JAMES P. TENNILLE, On Behalf of Himself and All Others Similarly Situated,

        Plaintiff,

    v.

THE WESTERN UNION COMPANY, a Delaware Corporation,

        Defendant.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

Plaintiff, James P. Tennille, individually and on behalf of all others similarly situated, through his undersigned counsel, complains against defendant, The Western Union Company ("Western Union"), pursuant to the investigation of his attorneys and upon knowledge as to himself and his own acts and otherwise upon information and belief, as follows:

### NATURE OF THE ACTION

1.      This is a putative class action brought by Plaintiff individually and on behalf of a class, as defined more fully herein, of all persons who Western Union failed to inform that the money transfers they sent were unredeemed.

2.      Specifically, when a customer sends money using Western Union's services and the money is not claimed by the recipient, Western Union either does not inform the customer, or waits for several years to inform the customer that the money was not claimed.  All the while Western Union generates income for itself from holding onto this money.

3. According to Western Union's Form 10-K for the period ending 12/31/07, such unredeemed funds, or "unsettled money transfers," are classified as "settlement assets" and "are not used to support [Western Union] operations" but are utilized to "earn income" for the company. *Id.* at p. 59. Western Union reported $203.5 million of such "settlement assets" on hand in 2007 and $348.8 million on hand in 2006. *Id.* at 85.

4. In the event that Western Union does contact the customer regarding the unredeemed funds, Western Union does not reimburse the customer for the interest generated by holding onto the money. Instead Western Union charges a fee that it had not previously adequately disclosed for holding onto the money.

5. As alleged more fully herein, Plaintiff seeks damages and equitable relief on behalf of himself and all other Western Union customers who were never told by Western Union that the money transfers they sent were unredeemed.

6. This Complaint alleges claims for violations of Colorado law, or alternatively violations of substantially similar consumer protection laws, and for unjust enrichment and conversion against defendant Western Union, as well as declaratory judgment.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction of the claims asserted herein insofar as the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class of Plaintiffs are citizens of states different from Defendants. 28 U.S.C. § 1332(d)(2)(A).

8. This District is the proper venue for adjudication of the claims asserted herein insofar as Defendant has its principal place of business in this District. 28 U.S.C. § 1391(a)(1).

9.      Any applicable statute of limitations has been tolled by Western Union's willful concealment of the facts that would have alerted Plaintiff to the availability of the relief that he now seeks.

## PARTIES

10.      Plaintiff, James P. Tennille, is a natural person and resident of Eufaula, Alabama. Plaintiff is a member of the class of Western Union customers defined herein (the "Class").

11.      Defendant The Western Union Company is a Delaware corporation with its principal place of business in Englewood, Colorado.

## FACTUAL BACKGROUND

12.      During the years of 2002 and 2003, Plaintiff used Western Union's money transfer services to submit his home mortgage payments to his mortgage lender.  To do so, Plaintiff went to the Western Union agent and sent payments via Western Union's services.

13.      Plaintiff's monthly mortgage payment at the time was $180.00.   In addition, Western Union charged Plaintiff $12.95 to transfer each payment.

14.      In November of 2002 and again in May of 2003, Plaintiff's mortgage payments were not redeemed.

15.      In May 2008, over five years after Western Union lost his May 2003 mortgage payments, Plaintiff received two letters from Western Union indicating that the company would submit his unredeemed mortgage payments to the State of Alabama Treasurer's Office if

CR

Plaintiff did not request a refund within the time period specified in the letter.[1] These letters were the first notice that Plaintiff received that his payments were not redeemed.

16.     The letters also state that Plaintiff's refund could be reduced from the amount of the original money transfer due to Western Union fees and charges, or by applicable law.[2]  The November 2002 and May 2003 mortgage payments had been in Western Union's possession the entire time.  Accordingly, Western Union had been in possession of, and had been generating income from Plaintiff's money for more than five years.

## COLORADO LAW APPLIES TO THE CLASS

16.     Colorado's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class Members under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  Colorado has a significant contact, or significant aggregation of contacts, to the claims asserted herein, thereby creating state interests that ensure that the choice of Colorado state law is not arbitrary or unfair.

17.     Western Union's headquarters and principal place of business are located in Colorado.  Colorado has a paramount interest in regulating Defendant's conduct, and Western Union's decision to principally reside in Colorado and avail itself of Colorado courts and laws render the application of Colorado law to the claims at hand constitutionally permissible.

18.     Colorado is the state from which Western Union's alleged misconduct emanated, which similarly injured and affected Plaintiff and Class members.  The application of Colorado's

---

[1]     *See* letters from Western Union to Plaintiff dated July 31, 2008 (attached hereto as Exhibit 1.)

[2]     *Id.*

laws to the proposed Class members is also appropriate under Colorado's choice of law rules because Colorado has significant contacts to the claims of the Plaintiff and the putative Class members, and Colorado has a greater interest in applying its laws here than any other interested state.

19.     Further, Colorado law is appropriately applied to the putative Class here because, on information and belief, Western Union's Terms and Conditions states that its services are "governed by Colorado law, without regard to its rules regarding conflicts of law."

## CLASS ACTION ALLEGATIONS

20.     *Class Definition.*   Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), including subclass, of which Plaintiff is a member:

> (b)(2) Injunctive Relief Class:
>
> All persons and entities who sent money using Western Union's money transfer services, and whose money went unredeemed and was not returned within 60 days.
>
> (b)(3) State Sub-Class:
>
> All persons and entities who sent money using Western Union's money transfer services, and whose money went unredeemed and was not returned within 60 days.
>
> [Alternative] (b)(3) Specific State Sub-Class:
>
> All persons and entities in Alabama, Arizona, California, Colorado, Florida, Illinois, Michigan, Missouri, New Jersey, New York, Ohio and Washington, and who sent money using Western Union's money transfer services, and whose money went unredeemed and was not returned within 60 days.

Excluded from the Class(es) are Defendants and any of their officers, directors or employees, the presiding judge, and any member of their immediate families.  Plaintiff hereby reserves his right to amend the above class definition based on discovery and the proofs at trial.

21.    *Numerosity.*  The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds, if not thousands of persons in the Class.

22.    *Commonality.*  There are questions of law or fact common to the Class including, *inter alia*, the following:

    a.    Whether Defendant violated Colorado law, or specific states' laws, by failing to timely return customers' monies that were unredeemed;

    b.    Whether Defendant failed to disclose that it unlawfully retains unclaimed money to generate revenue;

    c.    Whether Defendant had a corporate policy to not return unclaimed money in a timely fashion;

    d.    Whether Defendant was unjustly enriched by failing to timely return customers' monies that were unredeemed and/or generating income for itself on those unredeemed funds and/or not sharing those monies generated with the rightful owner of those funds;

    e.    Whether by failing to timely return customers' monies that were unredeemed amounts to conversion of Plaintiff's money for its own benefit; and

    f.    Whether Plaintiff and Class have been damaged by Defendant's conduct and, if so, what is the proper measure of such damages.

23.    *Typicality.*  The claims or defenses of Plaintiff are typical of the claims of the Class, alleged herein.  Plaintiff, the same as every class member, placed funds to be transferred with Defendant, those funds went unredeemed and Defendant failed to inform Plaintiff of the

unredeemed funds and even generated monies through the use of those funds which Defendant did not share with Plaintiff.

24.     *Adequacy.*  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained undersigned counsel who are competent and experienced in the prosecution of complex class action litigation.  The interests of the Plaintiff are aligned with, and not antagonistic to, those of the Class.

25.     *Fed. R. Civ. P. 23(b)(2) Requirements.*  The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

26.     The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendant.  For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not unlawful.  Individual actions may, as a practical matter, be dispositive of the interest of the Class, who would not be parties to those actions.

27.     Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

28.     Defendant's alleged uniform scheme and common course of conduct make declaratory relief with respect to the Class as a whole appropriate.

29.     *Fed. R. Civ. P. 23(b)(3) Requirements.*  This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate

over questions affecting only individual members of the Class, and a class action is the superior

method for fair and efficient adjudication of the controversy.

30.     The likelihood that individual members of the Class will prosecute separate

actions is remote due to the extensive time and considerable expense necessary to conduct such

litigation, especially in view of the relatively modest amount of monetary, injunctive and

equitable relief at issue for each individual Class member.

31.     This action will be prosecuted in a fashion to ensure the Court's able management

of this case as a class action on behalf of the Class.

## COUNT I
**(Violation of Colorado Consumer Protection Act;
Alternatively, Violation of Various State Consumer Protection Laws)**

32.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if

fully set forth herein.

33.     At all times hereto, there was in full force and effect the Colorado Consumer

Protection Act, Colo. Rev. Stat. § 6-1-105 *et seq.,*("the Act").[3]

34.     Plaintiff and other Class members, whose money sent through Defendant's

services went uncollected, are consumers within the meaning of the Act given that Defendant's

---

[3]        Should Colorado law not apply to the Class, then this Count is also brought pursuant to substantially similar state consumer protection statutes  identical in their material respects - *see e.g*., Ala. Code § 8-19-1 *et seq.* (Alabama); Cal. Bus. & Prof. Code § 17200 *et seq.*, and Cal. Bus. & Prof. Code § 17500 *et seq.* (California); Fla. Stat. Ann. § 501.201 *et seq.* (Florida); 815 ILCS 505/1 *et seq.* (Illinois); Mich. Stat. Ann § 445.901 *et seq.*, Mich. Stat. Ann. § 19.418(1) *et seq.* (Michigan); N.J. Rev. Stat. § 56:8-1 *et seq.*, N.J. Rev. Stat. § 56:12-1 *et seq.* (New Jersey); N.Y. Gen. Bus. Law § 349 *et seq.* (New York); Ohio Rev. Code Ann. § 1345.01 *et seq.* (Ohio).

business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

35.     The Act renders unlawful the use or employment of any deception [including the] concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce.

36.     Defendant intended that Plaintiffs and the class would rely on the deception by purchasing Defendant's services unaware of the material facts including but not limited to:

> (a)     that should the money go unredeemed Defendant was not returning the money in a timely fashion,
>
> (b)     that should the money go unredeemed Defendant would not inform Plaintiff and the Class, and
>
> (c)     that Defendant would use the unredeemed money to generate income that Defendant would keep for its self.

This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

37.     If Defendant had disclosed the above facts to Plaintiff and the Class, they could have (and would have) prevented economic injury by either negotiating a lower price to reflect risk or simply avoiding the risk altogether by going to another money transfer service.

38.     Defendant's conduct alleged herein is furthermore unfair insofar as it offends public policy; is so oppressive that the consumer has little alternative but to submit; and causes consumers substantial injury.

39.     The omission of a material fact, such as that alleged here, impacts the public as actual or potential consumers of Defendant's services.   All other consumers of Defendant's services are affected the same as the Plaintiff if their money transfers go unredeemed.

40.     As a direct and proximate result of the above-described breach, Plaintiff and the Class have been damaged.

## COUNT II
### (Unjust Enrichment)

41.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein, and in the alternative to Count II.

42.     In May 2008, nearly five years after accepting Plaintiff's second payment, Defendant notified Plaintiff via two form letters that his payments would be forfeited if he did not request a refund within a specified time period.   Prior to receiving the two letters, Defendant never informed Plaintiff that the two payments were unredeemed, and that Defendant had been using them to generate income for itself.

43.     Defendant has been unjustly enriched by enjoying the benefits of Plaintiff's and the Class' monies, including utilizing the funds to generate income for itself for nearly five years.

44.     Under the circumstances, it is inequitable for Defendant to retain these benefits at the expense of Plaintiff and the Class.

45.     Such conduct sounds in equity under the common law of unjust enrichment, or money had and received, and constructive trust.

46.     Plaintiff and the Class have no adequate remedy at law.

47.     As a direct and proximate result of the above-described breach, Plaintiff and the Class have been damaged.

## COUNT III
### (Conversion)

48.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

49.     Western Union accepted Plaintiff's mortgage payment monies and the transfer fees for those services.

50.     Plaintiff's money transfers were never completed.

51.     After a substantial amount of time Defendant notified Plaintiff that the funds were available to be returned to Plaintiff.

52.     During the substantial time that Plaintiff was without his money, and during the substantial time that Defendant said the money was lost, Defendant had in fact been using the money for its own benefit to generate income for itself.

53.     Western Union's conduct improperly deprived Plaintiff of the rightful access to and use of these funds, and constitutes an unlawful conversion of Plaintiff's monies.

54.     As a direct and proximate result of the above-described breach, Plaintiff and the Class have been damaged.

## COUNT IV
### (Declaratory Relief Pursuant To 28 U.S.C. § 2201)

55.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

56.     There is an actual controversy between Defendant and the Class concerning whether Defendant should be able to hold on to unredeemed funds owned by the Class for a period longer than 60 days.

57.     Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

58.     Defendant has wrongfully held on to money rightfully owned by the Class, for periods of up to and surpassing 5 years all the while using such funds for its own benefit.

59.     Accordingly, Plaintiff seeks a declaration that Defendant should be prohibited from holding onto unredeemed funds owned by the Class for any amount of time longer than 60 days.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class of persons defined herein, prays for an Order providing as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class defined herein;

B.     Designating Plaintiff as representative of the Class and his undersigned counsel as Class counsel;

C.     Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.     Granting the relief sought herein and awarding Plaintiff and Class members their individual damages, attorneys' fees and costs, including interest thereon, as allowed by law; and

      F.      Granting all such further and other relief as the Court deems just and appropriate.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  April 23, 2009         **BURG, SIMPSON, ELDREDGE, HERSH & JARDINE, PC**

By:   s/ *Seth A. Katz*
    Seth A. Katz
40 Inverness Drive East
Denver, Colorado 90112
Tel:  303-792-5595
Fax:  303-708-0527
E-mail: **skatz@burgsimpson.com**

*Attorney for Plaintiff*

James P. Tennille
406 Bush Drive
Eufaula, Alabama 36027

Eric D. Freed
Jeffrey A. Leon
George K. Lang
Jamie E. Weiss
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Jim S. Calton, Jr.
CALTON & CALTON
Post Office Box 895
Eufaula, Alabama 36072-0895