IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **09-cv-00938-JLK** (consolidated with 10-cv-765-JLK)

**JAMES P. TENNILLE, on behalf of himself and all others similarly situated,**

    Plaintiff,

v.

**THE WESTERN UNION COMPANY, a Delaware corporation,**

Defendant.

---

Civil Action No. **10-cv-765-JLK**

**ROBERT P. SMET, individually and on behalf of all others similarly situated,**

    Plaintiff,

v.

**THE WESTERN UNION COMPANY, a Delaware corporation,**

    Defendant.

THIS ORDER RELATES TO BOTH ACTIONS.

---

## PRELIMINARY ORDER RE MOTIONS TO DISMISS

Kane, J.

    Plaintiffs James Tennille and Robert Smet, in separate actions assigned to my docket, assert claims for conversion, unjust enrichment and fraud against The Western Union Company ("Western Union") on behalf of the same nation-wide class of wire transfer customers. I recently consolidated the actions. Plaintiffs' allegations center on

Western Union's practice of failing to notify customers when their attempted wire transfers fail or go unclaimed, and retaining the unclaimed funds, sometimes for years, until state unclaimed property statutes require them to escheat to the state and/or compel notification. By withholding notice of a failed transfer until then, Western Union is able to leverage the time-value of customers' unclaimed funds to generate income for itself, value which, according to Plaintiffs, it is unjust for Western Union to retain. Plaintiffs contend Western Union's practices are particularly egregious because they take advantage of individuals – immigrants, the poor and others lacking access to bank accounts – least able successfully to challenge them.

The matter is before me on Western Union's Motion to Dismiss Tennille's Amended Complaint in lead case 09-cv-938, which was fully briefed shortly before Mr. Smet filed his Complaint in 10-cv-765.[1] Western Union's grounds for dismissal are numerous and overlapping, including that (1) some or all of Tennille's claims are time-barred; (2) Tennille's fraud allegations are insufficient under Rule 9(b) and *Twombly/Iqbal* to state viable claims for relief; and (3) Tennille's allegations generally fail to support any legal or equitable claims for conversion or unjust enrichment. Western Union also argues choice of law issues doom certification of this case as a class action, and contends the business practices at issue conform to individual states' unclaimed property laws and cannot,

---

[1] I note that I summarily dismissed Tennille's original Complaint without prejudice under *Twombly/Iqbal*, *see infra*, and granted Tennille leave to file an Amended Complaint. It is Tennille's Amended Complaint to which I therefore turn.

therefore, give rise to liability for fraud.

Western Union has indicated it intends to seek the dismissal of Mr. Smet's Complaint in 10-cv-765, but that Motion is not due until May 28, 2010. Given the consolidation of the actions and the identity of the putative plaintiff classes and claims, it is prudent to await full briefing on both Motions before ruling on the merits of Western Union's Rule 12(b)(6) arguments. In the interim, however, certain issues can be addressed definitively now, which may streamline consideration of Western Union's 12(b)(6) Motions.

## I. Jurisdiction.

Federal subject matter jurisdiction in both cases is premised on diversity of citizenship under 28 U.S.C. § 1332. Because neither Plaintiff purports to have lost anywhere near the $75,000 prerequisite for diversity jurisdiction, each brings suit on a behalf of a nationwide class or subclasses of Western Union customers and invokes federal jurisdiction under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 14 ("CAFA"). CAFA confers federal jurisdiction over any action "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

As the proponents of federal jurisdiction in these cases, Plaintiffs receive the benefit of the doubt that the aggregated value of individual class members' claims meets or exceeds $5,000,000 and their claims are not dismissible on that basis unless it

"appear[s] to a legal certainty that they cannot recover" the jurisdictional amount. *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216-17 (10th Cir.2003). *See generally*, 14B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3702, at 97-98 (1998). No such "legal certainty" can be said to appear here. It is well settled, however, that subject matter jurisdiction may be litigated at any time before a case is finally decided, *Basso v. Utah Power & Light Co.* 495 F.2d 906, 909 (10th Cir. 1974), and Rule 12(h)(3) of the Federal Rules of Civil Procedure requires a district court to dismiss an action "at any time" it determines it lacks subject matter jurisdiction. *Id.* Accordingly, if it appears at any stage of this litigation that these consolidated cases are not maintainable as a class action – or, if they are maintainable as a class action that the prerequisites for federal subject matter jurisdiction under CAFA do not exist – then dismissal may be compelled under Rule 12(h)(3).

Having outlined the jurisdictional issues presented, I advise the parties of my predilections with respect to them. My comments are not definitive and should not be construed as carrying any preclusive effect:

At this point in the proceedings, I have jurisdiction under *Woodmen* over both Plaintiffs' claims in these consolidated class actions. Plaintiffs' strongest claim appears to be their claim for unjust enrichment, which is not only likely to survive dismissal under Rule 12(b)(6) and *Iqbal*, but may also be best suited for litigation in a class action. *See In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46, 58 (D.N.J. 2009)(variations in the elements of unjust enrichment under the laws of the various states are minor and do

not create an actual conflict as would impact maintenance as a class action). Plaintiffs' individual fraud-based damages claims, by contrast, face a tougher challenge under Rules 9(b) and 12(b)(6), and also raise significant certification – and therefore, jurisdictional – concerns.

In this case, Plaintiffs' averred $5 million financial interest is premised largely on the aggregation of myriad individual fraud claims to which potentially numerous different state consumer protection statutes apply.[2] Consumer fraud class actions present particular challenges for district courts, and may "implicate the predominance and superiority requirements ... because of the combination of individual legal and factual issues that need to be determined." 7AA Charles Alan Wright et al., Federal Practice and Procedure § 1780.1, at 202 (3d ed.2005). Similarly, if too many separate state laws must be applied, then class proponents may have a difficult time persuading the district court that common questions of law predominate and that a class action is the superior method of litigation. *See Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996).

A determination that the district court will have to apply the laws of multiple states impacts the court's ability to manage the proposed class. Wright et al., *supra*, § 1780.1, at 211. This is particularly true in consumer fraud actions where courts must undertake individualized choice-of-law analyses. *Id.*, n. 41 (citing *In re LifeUSA Holding Inc.*, 242 F.3d

---

[2] Plaintiffs contend a proper conflict of laws analysis will result in a determination that either the law of Missouri – where Western Union's Customer Service Center is located – or Colorado – where Western Union itself is headquartered – applies to class members' claims. Western Union contends the law of each class member's domicil applies.

136, 147-48 (3d Cir. 2001) and collecting cases).[3]  If Plaintiffs' consumer fraud claims are not properly maintainable as a class action, there is an additional question of whether their equitable claims for disgorgement, even if appropriate for maintenance on behalf of a class, are sufficient to satisfy the amount in controversy requirement for federal jurisdiction.

Leaving aside my concerns regarding the future viability of federal jurisdiction, particularly with respect to Plaintiffs' fraud claims, it exists at present under *Woodmen* and Rule 12(b)(1) will provide no basis for dismissal at this point in the proceedings.

II. <u>Western Union's Defense of Compliance with Unclaimed Property Laws</u>.

One of Western Union's overarching defenses is to assert as a sort of immunity from suit that its actions conformed to applicable unclaimed property laws in the states where individual customers reside.  In other words, Western Union argues that as long as it notified customers of failed transfers within the time-frame established by individual states' unclaimed property laws, nothing it did with the funds up to that point could subject it to liability for any harm caused, or unearned benefit received, by failing to notify customers and using the funds to generate income for itself until then.  While I will address the defense in more detail as Western Union invokes it in support of its Motion to

---

[3]  "Discerning the applicable law is an important task in class actions, for if the claims of nonresident class members will require adjudication under the laws of the members' home states, the trial court must ascertain the degree of complexity arising from the need to apply those laws in order to make an informed decision on certification."  *Wash. Mut. Bank, FA v. Super. Ct.*, 15 P.3d 1071, 1077 (Cal. 2001) . Plaintiffs bear the initial burden of producing evidence of the various states' laws and demonstrating "'that class certification does not present insuperable obstacles.' "  *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir.1986) (quoting *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986)).

Dismiss, as a general proposition I find it lacking and advise Western Union it will not serve as a complete defense to bar Plaintiffs' claims.

Western Union's compliance defense is premised entirely on the bald assertion that its only duty vis á vis individual customers when their transfers fail is not to violate state unclaimed property laws. The assertion ignores the contractual/commercial relationship that arises between Western Union and its customers when Western Union agrees to perform a service for a fee. It is this relationship, and any obligations or duties of care that arise from it, that must be plumbed to determine whether Western Union may be held liable for failing to disclose failed wire transfers before individual states' unclaimed property laws kicked in. Simply to posit that no such duty exists under state unclaimed property laws is less than salient given the nature of Plaintiffs' claims and their context.

Accordingly, Western Union will not be heard to argue that mere compliance with individual state unclaimed property laws renders its conduct beyond Plaintiffs' or the court's reach as a matter of law. Withholding notification of a failed transfer for years because state unclaimed property laws allow you to is not the end of the story.

### III. Statutes of Limitation.

The facts relevant to the timeliness of Tennille's claims in 09-cv-938 are that Tennille used Western Union's money transfer services in November 2002 and again in May 2003 to submit his $180 monthly mortgage payment to his lender, those payments were not delivered, and Western Union notified Tennille of that fact in separate letters dated July 31, 2008. The letters, from Western Union's Missouri-based Customer Service Department, informed Tennille that his 2002 and 2003 transfers had failed, and that he had a right to a refund, subject to

"reduction [for] fees and charges as provided in the contract with Western Union or applicable law." Am. Compl. ¶ 16, Exs. 1&2.[4] Tennille filed suit in April 2009, less than one year after receiving the letters but more than five years after the last failed transfer. The longest potentially applicable statute of limitation in this case is five years. While it is true the law imposes on fraud claimants generally a duty to exercise reasonable diligence to discover their claims, I disagree with Western Union the facts alleged permit no plausible inference that Tennille did so.

A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In both cases, the timeliness of Plaintiffs' claims turns on whether Western Union's actions may be deemed to have fraudulently concealed the fact that Plaintiffs' attempted wire transfers did not go through and that question, in turn, depends on whether Western Union had a duty, beyond and independent of the requirements of state unclaimed property laws, to disclose a transfer failure to its paying customers. Tennille's Amended Complaint, and the July 31 letters attached to it, are sufficient to create a plausible inference under Rule 12(b)(6) and *Iqbal* that Western Union was affirmatively obligated to inform Tennille that his transfers had failed and its failure to do so tolled the applicable statute of limitations.

Again, my comments on the matter are not intended to be definitive, but should inform

---

[4] A court's review on a motion to dismiss is generally limited to the four corners of the Complaint but may include documents attached to the Complaint as exhibits, *see* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes").

the parties' arguments on Western Union's Motion(s) to Dismiss.

## IV.  Choice of Law

The choice of law issues are complex in this case.  The wrongful acts and injuries alleged are transient – not fixed in a physical place or time.  Money is transferred electronically, from bank to bank, and does not land anywhere or reside in any particular place in a physical way. Western Union's actions in failing to disclose the fact that funds have gone unclaimed "originate," according to Plaintiffs, in Missouri, but are "directed," and cause "injury," according to Western Union, at customers in the individual states where they reside.  Western Union conducts business in every state and throughout the world.  It is headquartered in Colorado, where Plaintiffs chose to file suit.

Colorado's choice-of-law rules will apply to the questions presented, *see Anderson v. Commerce Const. Servs.*, 531 F.3d 1190, 1193 (10th Cir.2008), and the law to be applied is the law  of the state "which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 145(1) (1971).  The most significant relationship is determined by applying the following principles:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states

in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

（g) ease in the determination and application of the law to be applied.

*Id.* §§ 6(2), 145; *see U.S. Aviation Underwriters, Inc. v. Pilatus Business Aircraft, Ltd.*, 582 F.3d 1131, 1143-44 (10th Cir. 2009). In applying these principles, courts must take the following contacts into account:

  (a) the place where the injury occurred,

  (b) the place where the conduct causing the injury occurred,

  (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

  (d) the place where the relationship, if any, between the parties is centered.

Rest.(2d), § 145(2). These contacts vary in relative importance depending upon the issue at hand. *Ibid.*

Based on my review of the applicable law, the choice of law determination is not easily made at the pleading stage in this case. Moreover, unless the choice of law is dispositive on a particular claim – i.e., that Tennille's claims would survive under one state's law but not another – it may not be necessary to decide it on Western Union's Motion to Dismiss.

Based on the foregoing, ruling on Western Union's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 16) in 09-cv-938 is DEFERRED until briefing on the Western Union's anticipated Motion to Dismiss Mr. Smet's Complaint in 10-cv-765 is complete. While D.C.COLO.LCiv.R 7.1A is not generally applicable to motions to dismiss, given the procedural history of these consolidated cases and the identity of counsel in the two actions, I explicitly ORDER Western Union to comply with its terms before filing any Motion to Dismiss in *Smet*.

Counsel are to confer, in good faith, regarding the potential for tailoring claims and defenses in accordance with my comments herein, and Western Union shall include, in any Motion to Dismiss, a certified statement regarding these efforts.

Dated May 5, 2010.                                s/John L. Kane
                                                  SENIOR U.S. DISTRICT JUDGE