# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. 09-cv-00938-JLK consolidated with No. 10-cv-00765-JLK

JAMES P. TENNILLE, ROBERT SMET, ADELAIDA DeLEON and YAMILET RODRIGUEZ, individually and on behalf of all others similarly situated,

          Plaintiffs,

   v.

THE WESTERN UNION COMPANY and WESTERN UNION FINANCIAL SERVICES, INC.,

          Defendants.

_____

# SECOND AMENDED CONSOLIDATED
# CLASS ACTION COMPLAINT
_____

Plaintiffs James P. Tennille, Robert Smet, Adelaida DeLeon and Yamilet Rodriguez, individually and on behalf of all others similarly situated, through undersigned counsel, complain against defendants The Western Union Company and Western Union Financial Services, Inc. (collectively "Western Union") pursuant to the investigation of their attorneys and upon knowledge as to themselves and their own acts and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1.    This is a putative class action brought by a class of largely economically disadvantaged individuals who have been taken advantage of by Western Union's unconscionable and unfair policy of holding -- *for years* – funds for wire transfer provided by

members of the class to Western Union when Western Union has failed to complete the wire transfer.  Western Union at any given time is holding *over $100 million* of such unreturned funds, and Western Union makes use of the funds and interest on the funds without making reasonable efforts to return the funds even though Western Union requires valid contact information to be provided at the time funds are provided to Western Union for transfer.  Indeed, years later, Western Union uses *these very addresses* to notify the customer that the funds are about to be escheated to the state, and that the class member can avoid escheat by forfeiting to Western Union *a fee* for the return of the money, *even though Western Union benefitted financially from holding this money for the period of years it was in Western Union's possession*.

2.     Western Union's behavior is the archetype of inequitable, unconscionable, and frankly predatory corporate conduct.  Western Union illegally profited from this inequitable conduct on many fronts, and this suit seeks to hold Western Union accountable for all damages, and to reform Western Union's business practices going forward with respect to uncompleted wire transfers.

## WESTERN UNION'S UNCONSCIONABLE, INEQUITABLE AND PREDATORY BEHAVIOR

3.     According to Western Union's 2009 10-K, "[i]ndividual money transfers from one consumer to another are the core of our business, representing 85% of our total consolidated revenue for 2009," and is the "consumer-to-consumer money transfer business which remains the heart of our company."  From this "core business," Western Union boasted in its 2009 Annual Report that it "generated substantial cash flows"-- but apparently (some of) these "substantial cash flows" include the funds that are at issue in this litigation.

4.      This "core" consumer-to-consumer business largely relies on individuals, many of whom are economically disadvantaged and/or financially unsophisticated.  Indeed, the first risk factor in Western Union's Forward Looking Statements section of its 2009 10-K is "changes in immigration laws, patterns and others factors related to migrants."

5.      Western Union's 2009 10-K states that its "consumer-to-consumer money transfer service enables people to send money and make payments around the world in minutes."  The 10-K goes on to reiterate that the "sending agent enters the transaction information into our money transfer system and the funds are made available for payment, usually within minutes."  Western Union thus knows "in minutes" of the funds being provided to it whether those funds have been successfully transferred.

6.      As a general matter, Western Union money transfers are not completed in two ways.  First, a transfer will not be completed if the funds are never picked up by the intended recipient (what we will call an "unredeemed" transfer).  Second, a transfer will not be completed if the transfer fails and funds are not made available to the intended recipient (what we will call a "failed" transfer).  (In the Complaint we refer generally to a transfer that is not completed as an "uncompleted" transfer.)[1]

7.      This lawsuit addresses what Western Union does when it learns a money transfer was not completed, which is nothing.[2]  Despite having contact information for the sender/owner

---

[1]      Western Union's internal records likely distinguish between "unredeemed" (such as Plaintiff Smet's) and "failed" (such as Plaintiff Tennile's) transfers.  This distinction is relevant only for purposes of damages, as Western Union permits transfer failure customers to also obtain refund of the upfront transaction fee paid to send the funds.

[2]      For purposes of this lawsuit it is irrelevant *why* the transfer was not completed.

of the funds, Western Union makes no effort to use the contact information.  What Western Union does instead is to hold the money in its accounts, and make use of the funds, and the interest on the funds, for its general cash flow needs.

8.      Western Union continues to freely plunder the income earned on these funds, and the interest on these funds, and uses the funds for its cash flow needs, until such time as state escheat laws require Western Union to provide the funds to the state as unclaimed property.  No state escheat law applies until at least several years have passed, ensuring Western Union at least three, and in many instances up to ten, years of free use of this money.

9.      Those state escheat laws require Western Union to attempt to notify the customer/class member of the pending escheatment of the funds, and to accomplish that required notice Western Union uses the very contact information that the customer had provided Western Union many years ago at the time the funds were tendered for transfer.

10.     Despite Western Union's possession of this contact information, Western Union makes no reasonable effort to contact the customer of the uncompleted wire transfer until sufficient time has passed to trigger escheatment.

11.     By the time Western Union makes the state-required escheatment notice, many years have passed and the addresses are frequently stale.  Western Union makes no effort to update the addresses.

12.     And in the instances where the Western Union customer responds to the escheatment notice by claiming the funds, Western Union does not return the interest that accumulated on the funds, and Western Union charges a fee, frequently in excess of ten dollars, purportedly to compensate Western Union for its "costs" of holding the money.  But there are no

costs to Western Union, only benefits.  And for a large number of Class members, Western Union is still currently holding onto their uncompleted transfer funds.

13.     Western Union well knows that the vast majority of its customers are immigrants and/or economically disadvantaged.  Western Union knows that this "core" customer group tends not to live in the same place for very long, tends to be unsophisticated in financial matters, and therefore is a ripe population to be taken advantage of.  And Western Union has and continues to take advantage.

14.     What Western Union should do is promptly notify customers, *i.e.*, Class members, who have entrusted Western Union with their funds, and inform them their transfer was not completed.  With respect to failed transfers, , Western Union knows "in minutes" that the wire transfer has failed.

15.     According to Western Union's Form 10-K for the period ending 12/31/07, such unredeemed funds, or "unsettled money transfers," are classified as "settlement assets" and "are not used to support [Western Union] operations" but are utilized to "earn income" for the company.  *Id.* at p. 59.  Western Union reported $203.5 million of such "settlement assets" on hand in 2007 and $348.8 million on hand in 2006.  *Id.* at 85.

16.     As alleged more fully herein, Plaintiffs seek damages and equitable relief on behalf of themselves and all other Western Union customers who had uncompleted money transfers.

17.     This Complaint alleges claims under Colorado law for unjust enrichment, conversion, and for breach of fiduciary duty against the Western Union defendants, as well as for declaratory relief and seeks specific judicial declarations.

**JURISDICTION AND VENUE**

18.     This Court has subject-matter jurisdiction of the claims asserted herein insofar as the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which members of the class of Plaintiffs are citizens of states different from the Western Union Defendants.  28 U.S.C. § 1332(d)(2)(A).

19.     This District is the proper venue for adjudication of the claims asserted herein insofar as the Western Union Defendants have their principal place of business in this District. 28 U.S.C. § 1391(a)(1).

**PARTIES**

**Individual and Representative Plaintiffs**

**Plaintiff James P. Tennille**

20.     Plaintiff James P. Tennille is a natural person and resident of Alabama, who is a member of the class, as defined herein (the "Class"). In 2002 and 2003, Plaintiff used Western Union to transfer $180.00.

21.     Plaintiff went to the Western Union agent and sent the payments via Western Union's money transfer service.   Western Union charged Plaintiff $12.95 to transfer each payment.

22.     Unbeknownst to Plaintiff, in November of 2002 and again in May of 2003, Western Union did not complete Plaintiff's mortgage payment transfers, and those transfers failed.

-6-

23.     Western Union kept Plaintiff's money, and did not return it or otherwise notify him that it was in its possession until 2008, five years later.  In addition to unfairly retaining Plaintiff's funds for years, Western Union earned interest and other income on those funds, Western Union kept the $12.95 it charged him to purportedly transfer the funds, and further Western Union deducted $30.00 from each failed transfer which reduced amount was then refunded to Plaintiff.

### Plaintiff Robert P. Smet

24.     Plaintiff Robert P. Smet is a natural person and resident of Illinois, who is a member of the Class.

25.     In 2004, Plaintiff used Western Union to transfer $50.00.

26.     Plaintiff went to the Western Union agent and sent the payments via Western Union's money transfer service.

27.     Unbeknownst to Plaintiff, Western Union did not complete two of Plaintiff's transfers, and those transfers went unredeemed.

28.     Western Union kept Plaintiff's money, and did not return it or otherwise notify him that it was in its possession until 2010, six years later.  In addition to unfairly retaining Plaintiff's funds for years, Western Union earned interest and other income on those funds, and further Western Union deducted $30.00 from each failed transfer which reduced amount was then refunded to Plaintiff.

### Plaintiff Adelaida DeLeon

29.     Plaintiff Adelaida DeLeon is a natural person and resident of Missouri, who is a member of the Class. In 2002, Plaintiff used Western Union to transfer $100.00.

30.     Plaintiff went to the Western Union agent and sent the payments via Western Union's money transfer service.

31.     Unbeknownst to Plaintiff, Western Union did not complete Plaintiff's transfers.

32.     Western Union kept Plaintiff's money, and did not return it or otherwise notify her that it was in its possession until 2010, eight years later.  In addition to unfairly retaining Plaintiff's funds for years, Western Union earned interest and other income on those funds, and Western Union deducted an unknown amount of money from the failed transfer, which reduced amount was then refunded to Plaintiff.

### Plaintiff Yamilet Rodriguez

33.     Plaintiff Yamilet Rodriguez is a natural person and resident of New Jersey, who is a member of the Class.

34.     In 2007, Plaintiff used Western Union to transfer $900.00.

35.     Plaintiff went to the Western Union agent and sent the payments via Western Union's money transfer service.

36.     Unbeknownst to Plaintiff, Western Union did not complete Plaintiff's transfer.

37.     Western Union kept Plaintiff's money, and did not return it or otherwise notify her that it was in its possession until 2010, three years later.  In addition to unfairly retaining Plaintiff's funds for years, Western Union earned interest and other income on those funds, and Western Union deducted $18.50 from the failed transfer, which reduced amount was then refunded to Plaintiff.

**Defendants**

38.     Defendant Western Union Financial Services, Inc. (WUFSI) is a Colorado corporation with its principal place of business at 12500 East Belford Avenue, Englewood, Colorado.   WUFSI's registered agent is Corporation Service Company, located at 1560 Broadway, Denver, Colorado.

39.     Defendant The Western Union Company is a foreign corporation with its principal place of business at 12500 East Belford Avenue, Englewood, Colorado. Western Union's registered agent is Corporation Service Company, located at 1560 Broadway, Denver, Colorado.

## FACTUAL BACKGROUND

## WHO / WHAT / WHEN / WHERE / HOW?

40.     Plaintiffs makes the following fraud allegations with as much specificity as possible absent access to information necessarily available only to Western Union:

**Who:**  Employees of Western Union.  The Western Union employees who are responsible for the decisions and actions that have harmed Plaintiffs and the Class are located almost exclusively in Englewood, Colorado.  This includes Western Union's Vice President of Accounting and Financial Reporting; Manager, Financial Reporting; Senior Manager, Vendor Relations, and its Director and Manager of Accounting.

**What:**  Western Union's fraudulent and deceptive business practice of holding unremitted funds without contacting the owner of the funds and making use of

those funds for its own benefit while at the same time seeking a fee from the customer in order to return the funds.   Western Union accepts money from customers to transfer to others, for a fee.   Western Union from time to time fails to successfully transfer its customers' money.   Western Union has the contact information for each of its customers.   Yet when the money the customer paid to have transferred does not go through, Western Union does not return this money to its customers, or notify them that the transfer has failed and/or their money has not been redeemed, until after the passage of several years.   Western Union's failure to return its customers' money to them or to notify them that their transaction did not complete for years is particularly egregious in light of their longtime emphasis on speed as being a major benefit of their service (for instance, using the slogan: "The fastest way to send money – worldwide."). Due to the large volume of money transfers in which Western Union engages, the total amount of uncompleted money transfers in its possession is very large.   The total amount cannot be known to Plaintiffs without discovery, but the publicly available information referenced herein suggests it may be hundreds of millions of dollars.   All of this money should rightfully be returned to Western Union's customers, not used as a source of revenue for Western Union.

**When:**   Plaintiff does not know when Western Union began engaging in the practices alleged herein.   However, Western Union engaged in the wrongful conduct since at least 2003 and at all times relevant herein, and still does so.

-10-

**Where:**   Western Union undertook the wrongful actions alleged herein at its headquarters in Colorado, from where the unreturned funds scheme and unfair conduct was devised and implemented.

**How:**  Western Union failed to timely return the unredeemed money belonging to Plaintiffs and the Class, even though it could have done so.  Western Union failed to notify Plaintiffs and the Class that it had that it was holding their unredeemed money, or only did so after a period of years, even though Western Union could have contacted Plaintiff and the Class at any time.  Western Union has been enriched at the expense of Plaintiff and the Class, by keeping the unredeemed money belonging to Plaintiff and the Class, by earning and keeping interest on unredeemed money that does not belong to it, and by unjustly charging an "administrative charge" for holding those funds.  If, against most odds, Western Union does successfully notify Plaintiffs and the Class of the unredeemed transfer several years later, Western Union deducts a fee from the principal unredeemed transfer in the form of an "administrative charge" even though Western Union has benefited and generated interest on said funds.  Western Union has behaved in deceptive fashion toward Plaintiff, the Class and the public at large by not disclosing that it would not return unredeemed money, would use the unredeemed money to generate income that it would keep for itself, and would charge a fee to

finally refund the unredeemed transfer years later even though they reaped profits from unjustly holding onto the funds for several years.

## COLORADO LAW
## APPLIES TO THE CLASS

41.     As a federal court exercising diversity jurisdiction, the Court applies the choice of law rules of Colorado, the forum state.  Colorado has the most significant relationship to the claims and parties.  The Court, pursuant to its February 4, 2011 Order, found that Colorado law will apply to the claims alleged (see D.E. # 37).

42.     Colorado's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class Members under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

43.     The Western Union Defendants' headquarters and principal places of business are located in Colorado.  Colorado has a paramount interest in regulating Western Union's conduct, and Western Union's decision to locate its principal place of business in Colorado and avail itself of Colorado courts and laws render the application of Colorado law to the claims at hand constitutionally permissible.

44.     If Colorado is the place where decisions regarding the conduct in this Complaint were made, then Colorado is the place the injury occurred.

45.     Similarly, if Colorado is the place where the policies of Western Union are set which gave rise to the misconduct alleged herein, the conduct causing the injury occurred in Colorado.

46.     Further, Colorado law is appropriately applied to the putative Class here because, on information and belief, the Western Union defendants have previously disseminated Terms and Conditions that are "governed by Colorado law, without regard to its rules regarding conflicts of law."

## CLASS ACTION ALLEGATIONS

47.     *Class Definition.*   Plaintiffs bring this action individually and on behalf of the following class of similarly situated persons (the "Class"), including subclass, of which Plaintiffs are members:

> ### (b)(2) Injunctive/Declaratory Relief Class:
>
> All persons and entities who sent money using Western Union's money transfer services, and whose money transfer was not completed within 7 days.
>
> ### (b)(3) Damages Class:
>
> All persons and entities who sent money using Western Union's money transfer services, and whose money transfer was not completed within 7 days.
>
> ### (b)(3) Damages "Failed" Transfer Sub-Class:
>
> All persons and entities who sent money using Western Union's money transfer services, and whose money transfer was not completed within 7 days because it failed.

Excluded from the Class(es) are Western Union and any of its officers, directors or employees, the presiding judge, and any member of their immediate families.  Plaintiffs hereby reserve their right to amend the above class definition based on discovery and the proofs at trial.

48.     *Numerosity.*   The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at

this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds, if not thousands of persons in the Class.

49.     *Commonality.*   There are questions of law or fact common to the Class including, *inter alia,* the following:

a.     Whether Western Union violated Colorado law by failing to promptly notify Class members that their transfers were not completed;

b.     Whether Western Union was unjustly enriched;

c.     Whether Western Union is a fiduciary to persons (*i.e.*, the Class) who pay Western Union money to send money transfers;

d.     Whether Western Union breached a fiduciary duty to the Class;

e.      Whether Western Union's conduct constitutes conversion;

f.     Whether Western Union improperly generated income for itself on uncompleted money transfers;

g.     Whether Western Union in equity and good conscience is permitted to deduct money from not completed money transfers before remitting those funds to Class members;

h.     Whether Western Union must immediately notify Class members whose uncompleted money transfers Western Union currently possesses;

i.     Whether Western Union in equity and good conscience is permitted to retain the transfer fee for money transfers failed;

j.     Whether Plaintiffs and Class are entitled to judicial declarations, set forth below;

k.     Whether Western Union must automatically refund, after using address updating and people-finder software technology, all uncompleted transfer funds to Class members;

l.     Whether Plaintiffs and Class have been damaged by Western Union's conduct and, if so, what is the proper measure of such damages?

50.   *Typicality.*   The claims or defenses of Plaintiffs are typical of the claims of the Class, alleged herein.   Plaintiffs, the same as every class member, placed funds to be transferred with Western Union, and those transfers were not completed, and the funds were not returned, if at all, until years later.   Likewise, Western Union generated monies through the use of those funds which Western Union did not share with Plaintiffs, charged Plaintiffs an "administrative charge" before returning the uncompleted transfers (several years later).

51.   *Adequacy.*   Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained undersigned counsel who are competent and highly experienced in the prosecution of complex class action litigation.   The interests of the Plaintiffs are aligned with, and not antagonistic to, those of the Class.

52.   *Fed. R. Civ. P. 23(b)(2) Requirements.*   The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as the Western Union Defendants have acted or refus*ed to act* (and continue to do so) on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

53.   The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Western Union.   For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not unlawful.   Individual actions may, as a practical matter, be dispositive of the interest of the Class, who would not be parties to those actions.

54.   Western Union's actions are generally applicable to the Class as a whole, and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole.

-15-

55.     Western Union's alleged uniform scheme and common course of conduct make declaratory relief with respect to the Class as a whole appropriate.

56.     *Fed. R. Civ. P. 23(b)(3) Requirements.*   This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

57.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.

58.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## CAUSES OF ACTION

### COUNT I
**(Violation of Colorado Consumer Protection Act;
Alternatively, Violation of Various State Consumer Protection Laws)[3]**

59.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

60.     At all times hereto, there was in full force and effect the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105 *et seq.* ("the Colorado Act").

---

[3]     By Order dated February 4, 2010, the Court dismissed Plaintiffs' Consumer Fraud claims.  These claims are pled here solely for purposes of appeal, if necessary.

61.     Plaintiffs and other Class members, whose money sent through Western Union's services went unredeemed, are consumers within the meaning of the Colorado Act given that Western Union's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

62.     The Colorado Act renders unlawful the use or employment of any deception [including the] concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce.

63.     Western Union intended that Plaintiffs and the class would rely on the deception by purchasing Western Union's services unaware of the material facts including but not limited to:

    (a)     that should a money transfer not be completed, Western Union would neither notify the customer nor return the money in a timely fashion,

    (b)     that Western Union would use funds from uncompleted transfers to generate income that Western Union would keep for itself.

    (d)     that Western Union would deduct an "administrative charge" (ostensibly for holding onto said funds) if it returned those funds to the Class member years later.

    (e)     that Western Union would not refund the initial transaction fee charged to transfer funds even though the transfer failed.

This conduct constitutes consumer fraud within the meaning of the Colorado Act.

64.     If Western Union had disclosed the above facts to Plaintiffs and the Class, they could have (and would have) prevented economic injury by collecting all such uncompleted transfer funds, rather than having them remain in Western Union's coffers.

-17-

65.     Western Union's conduct alleged herein is furthermore unfair insofar as it offends public policy; is so oppressive that the consumer has little alternative but to submit; and causes consumers substantial injury.

66.     The omission of a material fact, such as that alleged here, impacts the public as actual or potential consumers of Western Union's services.  As a direct and proximate result of the above-described breach, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**COUNT II**
**(Unjust Enrichment)**

67.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

68.     In 2008, more than five years after accepting Plaintiff Tennille's second transfer, Western Union notified him via two form letters that his payments had not been transferred, and that he forfeit those amounts if he did not request a refund within a specified time period.  Prior to receiving the two letters, Western Union never informed Plaintiff Tenille that his transfers had not been completed (or that Western Union had been using them to generate income for itself). Ultimately when Plaintiff received a refund of his uncompleted money transfers, Western Union deducted a charge, ostensibly for holding onto the funds for years.  Western Union engaged in the same conduct vis-à-vis each Plaintiff, and each Class member.

69.     Western Union has been unjustly enriched by enjoying the benefits of Plaintiffs' and the Class's monies obtained from uncompleted transfers, including using those funds to generate income for itself for years.  Western Union was further unjustly enriched by reducing

Plaintiffs' and Class member's refunds by imposing an "administrative charge" (even though its holding of these funds generated for itself millions of dollars).

70.     Under the circumstances, it is inequitable for Western Union to retain any of these benefits, at the expense and to the detriment of Plaintiffs and Class.

71.     Such conduct sounds in equity under the common law of unjust enrichment, or money had and received, and constructive trust.

72.     Plaintiffs and the Class have no adequate remedy at law.

73.     As a direct and proximate result of the above-described breach, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT III
### (Conversion)

74.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

75.     Western Union accepted Plaintiffs' monies, and charged and accepted a transfer fee with the express understanding that Western Union would transfer those funds on behalf of Plaintiffs and Class.

76.     Plaintiffs' and the Class's money transfers were never completed.

77.     Western Union could have promptly notified Plaintiffs and Class that the transfers were not completed, and returned those funds to Plaintiffs and Class.  Instead, only after a number of years had passed, Western Union notified Plaintiffs that the funds had not been transferred and that they were available for redemption (less various charges).

-19-

78.     During the substantial time that Plaintiffs and Class were without their money, Western Union had in fact been using the money for its own benefit to generate income for itself. Further, Western Union unfairly and inequitably imposed, prior to refunding monies to Plaintiffs and Class, an "administrative charge" for holding onto the funds during the years, even though Western Union generated significant amounts of income off of those funds.

79.     Western Union's conduct improperly deprived Plaintiffs and Class of the rightful access to and use of their money, and constitutes an unlawful conversion of Plaintiffs' and Class's monies.

80.     As a direct and proximate result of the above-described breach, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT IV
### (Breach of Fiduciary Duty)

81.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

82.     Western Union and Plaintiffs and Class entered into an arrangement whereby for a fee, Western Union obligated itself to transfer funds on their behalf.  By and through operation of this relationship, Western Union was acting as a fiduciary to Plaintiffs and Class.

83.     Western Union did not complete the funds transfer for Plaintiffs and Class, which fact Western Union did not disclose.  While the contract has a right of refund, Plaintiffs and Class are not made aware that their refund rights have been triggered because they do not know that their money transfer has not been completed.

84.     Western Union collects contact information from Plaintiffs and Class at the time of the transfer.  Western Union breached a fiduciary duty to Plaintiffs and Class by failing to notify them that their transfers were not completed, failing to use best practicable notice, failing to notify that their refund rights were triggered, and failing to provide a refund in full.

85.     As a proximate result of Western Union's actions, Plaintiffs and Class have suffered damages in the form of (i) lost income and/or lost interest or other use of the uncompleted transfer funds; and  (ii) the charging of administrative fees when the fiduciary benefitted from possession of the funds.

86.     Western Union's breach of fiduciary duty was a direct cause of the Plaintiffs' and the Class's damages.  Had Western Union made reasonable and timely efforts to provide notice of the uncompleted transfer to Plaintiffs and the Class, they would not have lost out on generating income and profits on the funds themselves, and would not have lost the portion of the principal that Western Union deducts as an "administrative charge."

87.     Instead, Western Union waited several years to notify the class until State Abandonment laws were implicated.  During this substantial time, Plaintiffs and Class were without their money and Western Union had in fact been using the money for its own benefit to generate income for itself.  Western Union's conduct improperly deprived Plaintiffs and the Class of the rightful access to and use of their money

88.     As a direct and proximate result of the above-described breach, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**COUNT V**
**(Declaratory Relief Pursuant**
**to 28 U.S.C. § 2201)**

89.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

90.     There is an actual controversy between Western Union and Plaintiffs and the Class concerning whether Western Union should be permitted to hold on to uncompleted fund transfers without notification to Plaintiffs and the Class within a reasonable time.

91.     Western Union has engaged in, and continues to engage in inequitable, unfair and fraudulent conduct concerning its practice of holding uncompleted transfer funds without notifying the owner of those funds within a reasonable period of time after Western Union knows that the transfer has not been completed, all the while keeping the income and interest the funds earn Western Union while it wrongly holds them and then, for those Class members who ultimately receive a refund, for unfairly imposing an administrative charge that is deducted directly from the funds before they are refunded to Plaintiffs/Class.

92.     Western Union, on the other hand, believes it has complied with all obligations and duties arising from its legal relationship with Plaintiffs and Class.[4] On information and belief, Western Union is currently holding uncompleted transfer funds concerning which members of the Class have not been notified; and even though Western Union knows that these transfers are uncompleted, Western Union has not informed the owners of those funds of this circumstance within a reasonable time so that they may obtain a refund of the funds, and transfer fees associated with those transfers.

---

[4]     *See* Stipulated Scheduling and Discovery Order, Judge Kane, February 4, 2011.

93.     These opposing views create adverse legal interests over an actual controversy of where or to whom the money belongs to, including those funds currently being held by Western Union.   A declaratory judgment is proper to declare the rights of the Plaintiffs, Class and Defendants in this controversy.

94.     The foregoing facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

95.     Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  These declarations are being sought under the law supporting the causes of action set forth above.

96.     Western Union has wrongfully held on to money rightfully owned by the Class, without notifying the Class it was holding the money, or offering to return the money, for years, all the while using those funds for its own benefit.  By granting declaratory relief, the Court would avoid multiplicity and circuity of actions by declaring in one action the rights and obligations of the litigants.

97.     Accordingly, Plaintiffs seek the following declarations:

(a) **Declaration I:** That Western Union be prohibited from holding onto funds owned by the Class for any amount of time longer than 7 days without providing notice of the uncompleted transfer to each Class member, and that Western Union's conduct of holding uncompleted transfer funds for more than

7 days without notice to the customer, is unjust and inequitable, and henceforth is prohibited.

(b) **Declaration II:** That the sender of uncompleted funds be declared the true owner of the uncompleted transfer funds and all property rights that accompany said title, if the transfer has not been completed with 7 days absent notice to the sender and consent by the sender of Western Union's continued possession, and that Western Union be declared to have no ownership interest in the uncompleted transfer funds, or any earning thereon

(c) **Declaration III:** That Western Union be required to disgorge all of the uncompleted transfer funds in its possession to the true owners within thirty days of a final judgment, plus pre-judgment interest.

(d) **Declaration IV:** That Western Union be order to immediately employ all reasonably available means to notify each class member whose funds transfer has not been completed with 7 days of remittance, or such reasonable time as the Court shall determine, that the funds transfer has not been completed, and that the principal, interest and transfer fees, without deduction shall be immediately refunded.

(e) **Declaration V.** That Western Union be required, within thirty days of a final judgment, to return to Class members funds that it has escheated to any state or jurisdiction within the United States. Western Union may then pursue reimbursement of escheated funds pursuant to each state's Abandonment

Laws which allow the "holder" of said funds to directly return money to the "true owner" and then seek reimbursement from the State.

(f)      **Declaration VI.**   That Western Union, on a going forward basis, be required to use address updating and person locating, and all other reasonably available systems to ensure accurate notifications of uncompleted transfers as ordered pursuant to these declarations.

(g)  **Declaration VII:** That Western Union's practice of retaining possession of all uncompleted transfer funds breaches its fiduciary duty and creates a constructive trust for the benefit of the Class.   All persons who have uncompleted fund transfers shall be considered the constructive trust beneficiaries, regardless of whether Western Union can trace the property and produce the same subject property, or whether the property is fungible or has become commingled.   Through the creation of a constructive trust Western Union may transfer a like value of property in monetary form, including interest earned on the funds in the constructive trust to Plaintiffs and members of the Class.

(h)  **Declaration VIII:**   That where Western Union is holding funds from uncompleted wire transfers, it be declared a bailee of such funds and therefore subject to all the obligations Colorado law imposes on bailees.

(i)  **Declaration IX:** That Western Union be required to provide the best practicable notice to all senders of uncompleted transfers where Western Union either continues to hold the money, or the money has escheated to the

-25-

State, and to set forth procedures in the letter explaining how Western Union will, without further action required by the class member, return the money pursuant to the other declarations contained herein.  Best practicable notice requires Western Union, under Court supervision, to submit all uncompleted funds transfers to an address updating service to ensure the most accurate method of notifying members of the class.

(j) **Declaration X:**  That Western Union be barred from charging a fee for "holding" class members' uncompleted wire transfer funds.

(k) **Declaration XI:**  That Western Union be required to put in place procedures to track and remit interest on uncompleted wire transfer funds.

(l) **Declaration XII:**  That Western Union be required to segregate unredeemed and failed wire transfer funds in a separate interest-bearing account, and that Western Union be barred from using these funds for any purpose including for cash flow or as collateral for loans or other financing.

(m) **Declaration XIII:**  That Western Union be required to disgorge any fees it has charged class members for possessing, notification, refund, or escheat of uncompleted transfer funds.

(n) **Declaration XIV:**  That Western Union be required to disgorge all income it has earned from uncompleted transfer funds

(o) **Declaration XV:**  That Western Union be required to disgorge all transfer fees it has charged the failed transfer sub-class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class of persons defined herein, prays for an Order providing as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and subclass, as defined herein;

B.    Designating Plaintiffs as representatives of the Class and appointing interim counsel as designated Class counsel;

C.    Entering judgment in favor of Plaintiffs and the Class and against the Western Union Defendants;

D.    Granting the relief sought herein and awarding Plaintiffs and Class members damages, attorneys' fees and costs, including interest thereon, as allowed by law; and

F.    Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated:  March 11, 2011                          Respectfully submitted,


                                                By:  ___s/ Seth A. Katz_____
                                                     One of Their Attorneys

                                                Seth A. Katz
                                                Daniel McKenzie
                                                **BURG SIMPSON**
                                                **ELDREDGE HERSH & JARDINE, P.C.**
                                                40 Inverness Drive East
                                                Englewood, Colorado 80112
                                                (303) 792-5595

                                                INTERIM LIAISON CLASS COUNSEL



                                                By:  ___s/ Richard J. Burke___
                                                     One of Their Attorneys

                                                Richard J. Burke
                                                **FREED & WEISS LLC**
                                                1010 Market Street, Suite 660
                                                St. Louis, Missouri 63101
                                                (314) 880-7000

                                                Jeffrey A. Leon
                                                Grant Y. Lee
                                                Rebecca Duggan
                                                **FREED & WEISS LLC**
                                                111 West Washington Street, Suite 1331
                                                Chicago, Illinois  60602
                                                (312) 220-0000

                                                INTERIM LEAD CLASS COUNSEL

Jim S. Calton, Jr.
**CALTON & CALTON**
Post Office Box 895
Eufaula, Alabama  36072-0895

Christopher A. Seeger
**SEEGER WEISS LLP**
One William Street
New York, New York 10004
(212) 584-0700

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, Pennsylvania 19102
(215) 564-2300

MEMBERS OF PLAINTIFFS' EXECUTIVE COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2011, the Second Amended Consolidated Class Action Complaint was filed using the CM/ECF System which will send notification of such filing to the following participants:

Richard J. Burke          richard@freedweiss.com, paul@freedweiss.com, debs@freedweiss.com

Jeffrey A. Leon           jeff@freedweiss.com, paul@freedweiss.com, sherrie@freedweiss.com

Grant Y. Lee              grant@freedweiss.com

Rebecca E. Duggan         rebecca@freedweiss.com

Seth A. Katz              seth.katz@burgsimpson.com

Daniel E. McKenzie        dmckenzie@burgsimpson.com

Jim Calton                caltonlegal@gmail.com

Jason A. Yurasek          JYurasek@perkinscoie.com


_____ /s/ Richard J. Burke_____

-30-