**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Judge John L. Kane**

Civil Action No. 09-cv-00938-JLK consolidated with No. 10-cv-00765-JLK

**JAMES P. TENNILLE, ROBERT SMET, ADELAIDA DELEON and YAMILET
RODRIGUEZ**, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

**THE WESTERN UNION COMPANY and WESTERN UNION FINANCIAL SERVICES,
INC.,**

      Defendants.

---

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY
AND DEFENDANTS' CROSS-MOTION TO STAY MERITS DISCOVERY**

---

## INTRODUCTION

Plaintiffs bring this matter before the Court on an alleged emergency basis because they contend that Defendants have refused to cooperate and provide discovery, and because "resolution of these issues is needed before the holiday weekend given Plaintiffs' counsels [sic] intention to prepare for the July 7th deposition over the holiday weekend should the Court not intervene before July 7, 2011." (*See* Declaration of Jason Yurasek ("Yurasek Decl.") ¶ 14, Ex. 13.) Not true. Defendants have cooperated at every step (they have responded to Plaintiffs' written discovery immediately and have engaged in multiple meet and confers to resolve these issues), have agreed to and scheduled multiple depositions (four depositions are presently scheduled), and have agreed to provide significant amounts of information and documents (involving at least one employee working full time, and several others part-time, to compile the information and records requested under a shortened time-schedule).

But Plaintiffs do not want the Court to know anything about it. Indeed, Plaintiffs attempt to portray this matter as a simple issue relating to a single topic in a deposition the parties agreed to conduct next week on July 7, 2011. The reality is, however, that Plaintiffs want to ignore the pending motion to compel arbitration and stay proceedings, and proceed with full merits discovery. And Plaintiffs use next week's deposition (which, incidentally, has been scheduled for weeks) to give the impression that the Court must act immediately to grant them that discovery. It need not. The motion to compel arbitration has been filed, but it is not scheduled for hearing. Judge Kane indicated a willingness to permit arbitration-related discovery, and Defendants have agreed to such discovery. Further, there is no discovery cut-off date or trial date set in this case, so no pressing need exists to complete merits discovery before resolution of

the motion to compel arbitration.  Accordingly, Defendants believe the parties should negotiate the scope of discovery and work out a schedule to conduct it within a reasonable time.

Plaintiffs, apparently, are not interested in cooperating to informally resolve these discovery disputes.  Therefore, Defendants request that merits discovery be stayed, and that the parties present to the Court, to the extent they cannot agree, any disputes regarding the proper scope of arbitration discovery.

## BACKGROUND[1]

### A.    WUFSI's Money Transfer Business.

At the heart of this case is the money transfer business operated by WUFSI.  To initiate a money transfer with WUFSI at one of its agent locations, a consumer fills out a pre-printed form provided by WUFSI.  (Declaration of Carol Brown ("Brown Decl.") ¶ 4.)[2]  Accompanying each such form are the terms and conditions governing the consumer's relationship with WUFSI. (*See*, *e.g.*, Declaration of Lisa Sherman ("Sherman Decl.") Exs. A-H.)  These terms and conditions contain a provision requiring bilateral arbitration of disputes arising from or relating to the transaction.  (*Id*.)  As a matter of standard practice, consumers who initiate transactions at WUFSI agent locations must sign the pre-printed form and thereby agree to the accompanying terms and conditions in order to transfer money.  (Brown Decl. ¶ 4; Sherman Decl. Exs. A-H.)

By contrast, The Western Union Company—originally the sole defendant named in this action—exists solely as a holding company.  (Declaration of Nicole Ayres ("Ayres Decl.") at ¶ 3.)  It is not an operating entity.  It has no license to engage in money transfers and does not do

---

[1] Although this factual and procedural background is extensive, we provide it because it is necessary in order to fully demonstrate Defendants' position in this Opposition and Cross-Motion.

[2] The declarations of Carol Brown, Nicole Ayres, and Lisa Sherman were originally submitted in support of WUFSI's Arbitration Motion.  We resubmit them in support of this Opposition and Cross-Motion for the Court's convenience.

so.  (*Id.*)  It was not a party to the transactions alleged by Plaintiffs.  (*Id.* ¶ 4.)  In fact, The

Western Union Company was incorporated in 2006.  (*Id.* ¶ 3.)  WUFSI alone—not The Western

Union Company—operates the money transfer business at issue in this case.  (*Id.*)

B.     **Plaintiffs Initiate Money Transfers And Sign Arbitration Agreements With WUFSI.**

Each of the named Plaintiffs alleges that he or she went to a "Western Union" agent to

arrange for a money transfer:

- Plaintiff Tennille, an Alabama resident, alleges that in November 2002 and May 2003 he went to an agent at least twice to send payments.  (Second Amended Consolidated Class Action Complaint ("Complaint" or "Compl.") ¶¶ 20-22.)

- Plaintiff Smet, an Illinois resident, alleges that he went to an agent at least twice in 2004 to transfer payments.  (Compl. ¶¶ 24-27; Case No. 10-cv-00765-JLK, Dkt. No. 1, ¶ 12.)

- Plaintiff DeLeon, a Missouri resident, alleges that she went to an agent in 2002 to transfer funds.  (Compl. ¶¶ 29-30.)

- Plaintiff Rodriguez, a New Jersey resident, alleges that she went to agent in 2007 to transfer $900.00.  (Compl. ¶¶ 33-35.)

To initiate these transfers at agent locations, Plaintiffs were required to sign a written

form that contained WUFSI's terms and conditions governing the transfers.  (*See* Brown Decl.

¶¶ 3-4; Sherman Decl. Exs. A-H.)  On May 3, 2011, plaintiff Tennille produced a copy of the

contract he signed containing the terms and conditions governing his November 2002 money

transfer.  (Yurasek Decl. ¶ 2, Ex. 1.)  Those terms and conditions contain an arbitration clause

whereby the Tennille agreed to bilaterally arbitrate any disputes arising from or relating to his

money transfers.  (*Id.*; Sherman Decl. Ex. C.)

Although Tennille has not produced the form he filled out in connection with his May

2003 money transfer, the terms and conditions in effect at the time contained a similar arbitration

clause.  (*See* Sherman Decl. ¶ 7, Ex. D.)  The other Plaintiffs have confirmed that they also filled

out Western Union's forms in connection with their money transfers, but have not produced any of them.  (*See* Yurasek Decl. ¶¶ 3.)  Each set of terms and conditions in effect at the time of those transfers also contained arbitration clauses whereby the parties agreed to arbitrate "[a]ny dispute or claim arising from or relating to" the money transfers and waived class-wide arbitration.  (*See* Sherman Decl. ¶¶ 5, 8-10; Exs. A-B, E-H.)  In fact, at all times covered by the transactions in the complaint (2002-2007), all written forms used by WUFSI at agent locations contained a broad, similarly-worded arbitration clause.  (*Id.* ¶¶ 5-10, Exs. A-H.)

### C.    Plaintiffs' Allegations.

Plaintiffs claim that their respective money transfers were not completed or went unredeemed.  (*See, e.g.*, Compl. ¶¶ 22, 27, 31, 36.)  They assert that Defendants held those funds in interest-bearing accounts for years until individual state unclaimed property laws triggered a notification obligation.  (*See, e.g., id.* ¶¶ 23, 28, 32, 37.)  Plaintiffs further allege that Defendants attempt to return customers' unclaimed funds, but retain the accrued interest.  (*See, e.g., id.*)  Plaintiffs contend that Defendants' failure to promptly notify customers that their money transfers are unclaimed is unlawful and the interest earned on the unclaimed funds properly belongs to customers, not Defendants.  (*See, e.g., id.* ¶¶ 67-80.)[3]

### D.    WUFSI's Motion To Compel Arbitration.

At the commencement of this action Plaintiffs did not sue WUFSI, the counterparty to Plaintiffs' agreements and the operating subsidiary responsible for the transactions at issue. Instead, they sued The Western Union Company, the parent holding company.  Nearly two years later, on March 11, 2011, Plaintiffs filed their Second Amended Consolidated Class Action

---

[3] The Court previously dismissed Count I of the Complaint without leave to amend.  Counts IV and V and the Complaint are presently the subject of Defendants' pending motion to dismiss.

Complaint, which, for the first time, named both The Western Union Company and WUFSI as defendants.

On April 25, 2011, The Western Union Company and WUFSI filed a motion to dismiss two of Plaintiffs' claims.  Two days later, on April 27, 2011, the Supreme Court issued its decision in *AT&T Mobility LLC v. Concepcion*, which put to rest any doubts that arbitration clauses containing class action waivers, such as those at issue here, are enforceable.  Following that decision, on June 7, 2011, WUFSI filed a motion to compel arbitration and stay proceedings pending arbitration (the "Arbitration Motion").  (Dkt. No. 56.)  Before WUFSI filed that motion, Plaintiffs had indicated that they would oppose it, at least in part, on the ground that WUFSI's right to compel arbitration had been waived.  (*See* Dkt. No. 54 [Parties' Joint Status Report] at 2.)

> **E.  Plaintiffs' Rule 30(b)(6) Deposition Notice And The June 9, 2011 Conference Call With Judge Kane.**

Before WUFSI filed the Arbitration Motion, on May 3, 2011, Plaintiffs' served a Rule 30(b)(6) deposition notice on The Western Union Company (the "IT/Document Retention Notice").  (Yurasek Decl. ¶ 4, Ex. 2.)  This notice sought examination on nine topics relating to document retention and electronically stored information and a tenth topic calling for "[a] description of the fields in the Excel spreadsheets you produced in this litigation" ("Topic No. 10").  (*Id.*)

Since the IT/Document Retention Notice pre-dated the Arbitration Motion, it was necessarily directed at discovering information relating to the merits of the case, not arbitration-related issues.  Because Plaintiffs had indicated an intent to oppose the Arbitration Motion on waiver grounds, Defendants requested a conference with Judge Kane to address that motion's potential effect on future discovery proceedings.

On June 7, 2011, Plaintiffs served an amended version of the IT/Document Retention Notice, which set the deposition for June 10 and again was directed only at The Western Union Company. (*See* Yurasek Decl. ¶ 5; Ex. 3.) The next day, The Western Union Company served objections to the notice, which included an objection based on the filing of the Arbitration Motion. (*See id.* ¶ 6, Ex. 4.)[4]

On June 9, 2011, the parties participated in a brief telephonic conference with Judge Kane (the "June 9 Call"). During that call, which was not transcribed, the Court indicated a willingness to permit the following discovery to proceed: (1) document discovery and the Rule 30(b)(6) deposition as previously noticed on document retention issues; and (2) depositions of the individual company representatives who submitted declarations in support of the Arbitration Motion. (*See* Yurasek Decl. ¶ 7, Ex. 5.) In the spirit of compromise and cooperation, Defendants agreed to provide Plaintiffs discovery on these limited issues. (*See id.*) Defendants did not agree to discovery outside the scope of the arbitration issue. (*See id.*) Thus, discovery into issues relating to the merits of the action—such as the disposition of Plaintiffs' untransferred funds, the retention of those funds, the notice to Plaintiffs that their funds were not transferred or redeemed, the circumstances under which tendered funds became 'inactive' or otherwise unavailable for transfer, or any notice to Plaintiffs that their funds were eligible for escheatment—would not be permitted. (*See id.*)

---

[4] On June 24, 2011, The Western Union Company served amended objections to the IT/Document Retention Notice. (Yurasek Decl. ¶ 9, Ex. 8.)

### F.     Plaintiffs' Discovery Demands.

#### 1.     Document Requests and Interrogatories

On June 14, 2011, Plaintiffs served Defendants with 26 document requests and 20 interrogatories, which Plaintiffs claimed were "directed at" the Arbitration Motion.  While some of those discovery requests did relate arbitration issues, many did not.

In the interests of cooperation and a speedy resolution of the Arbitration Motion, Defendants promptly served their responses just three days later, rather than taking the full 30 days permitted by Rules 33 and 34.  (Yurasek Decl. ¶ 8, Exs. 6-7.)  In those objections and responses, Defendants stated that they would produce—subject to further meet and confer by the parties—information and documents relating to WUFSI's Arbitration Motion, but objected to producing information and documents that were privileged or did not relate to that motion, such as requests for Perkins Coie billing information and information relating to Due Diligence letters. (*See*, *e.g.*, *id*. Exs. 6-7 [Interrog. Resp. Nos. 17, 20; Doc. Req. Resp. Nos. 13-18, 20-22, 25-26].)

#### 2.     June 21, 2011 Rule 30(b)(6) Deposition Notice

On June 21, 2011, Plaintiffs served another Rule 30(b)(6) deposition notice.  As with their previous discovery requests, Plaintiffs sought examination on some topics relating to the Arbitration Motion, but on many others that did not.  On June 24, 2011, Defendants promptly and timely served their objections to this notice.  (Yurasek Decl. ¶ 10, Ex. 9.)

### G.     Defendants' Meet And Confer Efforts With Plaintiffs.

Following the June 9 Call and service of Plaintiff's document requests and interrogatories, Defendants have continuously met and conferred in good faith with Plaintiffs in an effort to resolve any discovery disputes without necessity of court intervention.

Two days after Plaintiffs served their interrogatories and document requests, on June 16, 2011, Defendants and Plaintiffs (through counsel) met and conferred telephonically about those requests. (*See* Yurasek Decl. ¶ 11, Ex. 10.) During that call, defense counsel indicated they were willing to engage in discovery regarding the Arbitration Motion (without requiring Plaintiffs to bring a motion to obtain such discovery). (*Id*.) Defendants also offered witness designee of The Western Union Company on the IT/Document Retention Notice and the depositions of Lisa Sherman, Carole Brown, and Nicole Ayers (the witnesses who submitted declarations in support of the Arbitration Motion) during the week of July 18. (*Id*.) Defense counsel also indicated during the call that WUFSI was in the process of collecting specific information and documents responsive to Plaintiffs' arbitration-related discovery requests, including copies of individual arbitration case files. (*Id*.)

The following week, on June 21, Defendants and Plaintiffs met and conferred again regarding discovery issues. (Yurasek Decl. ¶ 12, Ex. 11.) On the call, defense counsel indicated that The Western Union Company remained willing and able to produce a Rule 30(b)(6) witness to testify on July 7 on examination Topic Nos. 1-9 identified in the IT/Document Retention Notice served on June 7, 2011. (*Id*.) The Western Union Company did not agree to produce a witness on Topic No. 10, though, because it did not have personnel qualified to testify on the topic (since it is a mere holding company) and the topic was not related to the Arbitration Motion. (*Id*.).

In the follow-up letter to the June 21 meet and confer call, defense counsel provided an update on WUFSI's diligent efforts to collect documents and information responsive to Plaintiffs' arbitration-related requests and the efforts undertaken to do so in advance of the depositions of the declarants offered during the week of July 18. (*Id*., Ex. 11.) The letter

explained that several people were reviewing hundreds of paper and electronic records to compile case-file information and documents relating to WUFSI consumer arbitrations, and that there were hundreds more. (*Id.*) As to Topic No. 10, the letter also indicated that "in the interest of resolving this matter cooperatively and informally, we are evaluating your Rule 30(b)(6) notice on th[at] topic[] and will advise whether and to what extent we believe discovery on th[at] topic[] is appropriate." (*Id.*) The letter closed by inviting Plaintiffs to "continue to work with [Defendants] towards an informal resolution of these issues without troubling the Court." Plaintiffs never responded to that letter or that invitation, choosing instead to file the instant motion ("Ltr. Br.") on a manufactured emergency basis.

Not until Wednesday, June 29, 2011, did Plaintiffs inquire of defense counsel's availability for a call with the Court regarding discovery disputes through July 6, 2011. (Yurasek Decl. ¶ 13, Ex. 12.) Counsel for Defendants indicated he was on a family vacation until the morning of July 5, 2011, but would be available for a call any time after 10:00 a.m. July 5 and would be available anytime on July 6, 2011. (*Id.*) Ignoring counsel's statement of unavailability, Plaintiffs filed a ten-page single-spaced letter brief, along with eight exhibits, seeking an order compelling discovery, and requesting an immediate hearing despite requesting from counsel availability for a call up to and through July 6, 2011. (*Id.* ¶ 14, Ex. 13.) When defense counsel indicated to the Court his unavailability (*Id.* ¶ 15, Ex. 14), Plaintiffs' counsel ignored the record and instead represented that Defendants have failed to cooperate and provide discovery. (*Id.*)

**ARGUMENT**

I.    **THE COURT SHOULD DENY PLAINTIFFS' MOTION TO COMPEL DISCOVERY BECAUSE IT SEEKS INFORMATION BEYOND THE SCOPE OF ARBITRATION ISSUES.**

     A.    **The Deposition Topics At Issue Are Beyond The Scope Of Arbitration Discovery.**

          1.    <u>IT/Document Retention Notice—Topic No. 10</u>

Topic No. 10 in the IT/Document Retention Notice seeks testimony providing "[a] description of the fields in the Excel spreadsheets you produced in this litigation."   Plaintiffs claim that the "purpose of deposition Topic No. 10 . . . is to among other things obtain data related to the 'take rate,' " which they define as "the number and percentage (by state, by year, etc.) of class members who received 'Due Diligence' letters from Western Union shortly before their money was to escheat."  (Ltr. Br. at 4.)  They also contend that the "take rate" is relevant to the exculpatory nature of the arbitration provision.  These arguments are without merit.

For one, none of the spreadsheets that are the subject of Topic No. 10 contains any information about the "take-rate."  (Yurasek Decl. ¶ 16.)  Instead, the spreadsheets contain information relating to the funds escheated to the states.  (*Id.*)  Defendants did provide in response to Interrogatories regarding merits discovery, the number of Due Diligence letters it sent out by state.  (*Id.*)  But that information was sought in relation to merits discovery, not arbitration discovery, and is likewise not relevant to arbitration discovery.  (*Id.*)  Thus, Plaintiffs' purported justification for discovery into Topic No. 10 necessarily fails.

Also, the record and evidence belie Plaintiffs' contention that the spreadsheets are relevant to the arbitration.  Plaintiffs first propounded Topic No. 10 in a deposition notice served May 3—well before WUFSI filed the Arbitration Motion on June 7.  Further, the spreadsheets referred to in Topic No. 10 were initially requested by Plaintiffs in July 2010 in the course of

informal discovery.  (*See* Yurasek Decl. ¶ 17, Ex. 15.)  Plaintiffs' admitted purpose in seeking

this information was not to gain information about arbitration issues, but to "enable Plaintiffs to

formulate a reasonable settlement demand."  (*Id.* at 1.)  The spreadsheets were first produced to

Plaintiffs in response to that request in September 2010.  (Yurasek Decl. ¶ 17.)

Even if the spreadsheets referenced in Topic No. 10 contained "take rate" data, Plaintiffs'

arguments must still be rejected.  They claim that this information may reveal "what percentage

of consumers have actual knowledge of a claim against Defendants—an issue related to the

exculpatory nature of the arbitration provision."  (Ltr. Br. at 4.)  That argument is a red herring.

The named Plaintiffs in this action already have "actual knowledge" of their claims, and those

claims are what WUFSI's Arbitration Motion seeks to compel into arbitration.  Whether or not

*other* consumers have knowledge of a claim has no bearing on whether Plaintiffs' specific

agreements to arbitrate with WUFSI are enforceable.

In all events, whether WUFSI's arbitration provision is exculpatory is legally irrelevant

in terms of its enforceability.  *See AT&T Mobility LLC v. Concepcion*, No. 09-893, 563 U.S. ___,

131 S. Ct. 1740 (Apr. 27, 2011).  In *AT&T Mobility*, consumers sued AT&T for false advertising

and fraud, claiming it wrongly charged them the sales tax on the retail value of phones that came

"free" with their services contract. Plaintiffs' contract with AT&T contained a provision

requiring disputes to be arbitrated, but barring class arbitrations.  AT&T moved to compel

individual arbitration of the Concepcions' claims.  The District Court denied the motion.

Relying on the California Supreme Court's decision in *Discover Bank v. Superior Court*, 113

P.3d 1100 (Cal. 2005), the District Court found the arbitration provision was unconscionable

because AT&T had not shown that individual arbitration adequately substituted for the deterrent

effects of class actions.  In *Discover Bank*, the California Supreme Court held that class action

waivers in consumer arbitration agreements are unconscionable in cases that involve adhesion contracts, predictably small amounts of damages, and allegations of consumer fraud, because such waivers, in violation of California law, effectively permit a defendant to exculpate itself against its own fraud. *AT&T Mobility*, 131 S. Ct. at 1746.  The Ninth Circuit affirmed the District Court's ruling.

The Supreme Court reversed, proceeding from the principle that "[t]he overarching purpose of the FAA [Federal Arbitration Act] . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 1748. The Court found that the *Discover Bank* rule interferes with the FAA's purpose of promoting arbitration because it effectively forces the parties into classwide arbitration proceedings, thus "sacrific[ing] the principal advantage of arbitration—its informality" for a procedure that is slower, costlier, and more complex. *Id.* at 1751.  The Court rejected the argument that California unconscionability law, as interpreted by *Discover Bank*, and California's policy against exculpation are generally applicable defenses to contract formation and thus not preempted by the FAA. *Id.* at 1746-1752.  Moreover, the Court stated, even a generally applicable rule of state contract law must yield to the FAA if the state law rule "stand[s] as an obstacle to the accomplishment of the FAA's objectives" of promoting arbitration and ensuring that arbitration agreements are enforceable according to their terms. *Id.* at 1748.  Since Plaintiffs' arguments about the exculpatory nature of the arbitration provision cannot have any bearing on the outcome of the motion, they cannot seek discovery on that issue.

In addition, any discovery related to the "take rate" could only, at best, relate to the correspondence between customers and WUFSI *after the arbitration agreements have been entered into*.  This is yet another reason why this information is irrelevant to the Arbitration

Motion.  When deciding the arbitrability of a dispute under the Federal Arbitration Act, a court

need only consider two issues: "'(1) Did the parties seeking or resisting arbitration enter into a

valid arbitration agreement? (2) Does the dispute between those parties fall within the language

of the arbitration agreement?'"  *The O.N. Equity Sales Co. v. Emmertz*, 526 F. Supp. 2d 523, 527

(E.D. Pa. 2007) (citing *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d. Cir.

1998)).  Accordingly, Plaintiffs' requested discovery—solely addressing the parties' activities

after the contractual relationship has been established—is irrelevant to the question of

arbitrability as a matter of law.

Finally, Plaintiffs also assert that "Defendants' objection to Topic #10 was untimely."

(Ltr. Br. at 4.)  Plaintiffs cite no legal authority for this position and they are wrong, in any event.

As described in detail above, the IT/Document Retention Notice was served originally on May 3

and was directed at The Western Union Company only (not "Defendants," as Plaintiffs claim).

Plaintiffs then served an amended IT/Document Retention Notice on June 7 setting the

deposition for June 10, which The Western Union Company objected to the next day, June 8.

The Western Union Company objections were therefore timely.

Therefore, Plaintiffs' request for discovery into Topic No. 10 should be denied.

2.     The June 21, 2011 Rule 30(b)(6) Deposition Notice

Plaintiffs also seek to compel discovery into a host of other subject matter areas

contained in the June 21, 2011 Rule 30(b)(6) deposition notice that are unrelated to the

Arbitration Motion.  For the following reasons, discovery into these topics should be denied.

*Deposition Topic No. 2.*  This topic requests examination of a witness regarding the

"proof You believe would have to be established by any claimant asserting claims similar to the

Plaintiffs in this litigation."  On its face, this topic is vague and fails to describe the matter for

examination with reasonable particularity, as required by Rule 30(b)(6).  Plaintiffs fail to

describe, for example, what they mean by "established" and "claims similar to the Plaintiffs in

this litigation."  Worse still, this topic seeks information that is not relevant to the Arbitration

Motion and that is squarely protected by work product doctrine—Plaintiffs concede that they

seek Defendants' understanding of the "complexity of the dispute to be arbitrated, the extent of

the burden of proof, limitations on liability and damages, and the costs of meeting any

evidentiary burden in light of limitations in recovery."  (Ltr. Br. at 8.)  As with the other

discovery requests, though, Plaintiffs offer no law to justify this position.

*Deposition Topic No. 5*.  This topic seeks examination about the "name of each entity that

holds Sender funds pending transfer, including the name of the account, the entity(s) owning the

account, and the means by which money is transferred into and out of the account."  This topic is

beyond the scope of arbitration-related issues because information about the entity and account

holding customer funds has no bearing on the enforceability of the arbitration provisions at issue.

Plaintiffs claim that this information is relevant because it will disclose "which Western Union

entity(ies) is the proper party(ies) to arbitration and which Western Union entity(ies) is the

proper party(ies) to this lawsuit."  Not so.  The evidence submitted in support of the Arbitration

Motion already disclosed that WUFSI—not The Western Union Company—is the party that

operates the money transfer business at issue here (The Western Union Company is merely a

holding company) and the party with which Plaintiffs contracted when they initiated their money

transfers.  (*See* Ayres Decl. ¶ 3.)  As for the issue of the proper party to this lawsuit, that is a

matter for merits discovery.

*Deposition Topic No. 6*.  This topic seeks examination about the "relationship to You of

each company identified on Exhibit 21, bates WUTENNILLE-WULGL-0000014-l6."  Plaintiffs

purported justification for this topic is that it "is discoverable for same reason as deposition Topic #5 above."  (Ltr. Br. at 8.)  Discovery into this topic, therefore, should not be permitted for the same reasons discussed in response to Deposition Topic No. 5.

*Deposition Topic Nos. 7-9, 12-16, 18.*   Each of these topics request examination on areas that Plaintiffs contend relate to the Due Diligence letters sent to customers or the "take rate" associated with those letters.  (Ltr. Br. at 8-9.)  For the same reasons we explained in response to Topic No. 10 of the IT/Document Retention Notice (*see* Part I.A.1, above), this subject matter is not relevant to the resolution of the Arbitration Motion.  Discovery into these topics should be denied accordingly.

**B.    The Interrogatories At Issue Are Beyond The Scope Of Arbitration Discovery.**

Plaintiffs also seek to compel responses to Interrogatory Nos. 17 and 20.  Both interrogatories seek information beyond the scope of arbitration issues and the Court should deny Plaintiffs' request accordingly.

Interrogatory No. 17 requests a description of "all changes in you or your affiliates' policies or practices regarding arbitration of disputes with customers since January 1, 2000."  Defendants objected to this interrogatory on several grounds, including that it "seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and not relevant to any party's claims or defenses with respect to the [Arbitration] Motion."

Plaintiffs argue in response that they "have a right to know what changes have been made to the arbitration provision to determine whether the arbitration provision is exculpatory in nature and whether a consumer can be made whole by seeking arbitration."  (Ltr. Br. at 5.)  This argument fails for a number of reasons.  As an initial matter, WUFSI has already produced the arbitration agreements that Plaintiffs entered into with WUFSI.  (*See* Sherman Decl. Exs. A-H.)

Those agreements are all that Plaintiffs need to establish the "costs to the consumer for initiating arbitration; the location of arbitration; the selection of an arbitrator; the applicable rules of arbitration; the potential remedies available, including attorneys' fees and costs" (*see* Ltr. Br. at 5), as those items are expressly set forth in or necessarily determined by the terms of the agreements.  In other words, the changes that have been to WUFSI's arbitration provisions over time, and the policies behind them, are not relevant to whether the *specific arbitration agreement* that each named Plaintiffs entered into with WUFSI is enforceable.  Plaintiffs have not shown otherwise, either as a factual or legal matter.  In all events, as explained in response to Topic No. 10 of the IT/Document Retention Notice, arguments regarding the exculpatory nature of an arbitration provision are irrelevant to its enforceability.  *See* Part I.A.1, above; *AT&T Mobility,* 131 S. Ct. 1740.

Moreover, as explained in the objection to this interrogatory, WUFSI's arbitration policy was created at the direction of counsel is therefore privileged and protected from disclosure. Plaintiffs never dispute or even address this objection.  Their request for this information should be denied accordingly.

Interrogatory No. 20 asks for information, on yearly and state-by-state basis, regarding the number of "Due Diligence Letters you send to customers informing them that you are holding funds they may claim prior to your remittance of the funds to States under their escheat or unclaimed property laws."  Plaintiffs assert that this interrogatory is permissible because it "seeks information related to the 'take rate' as set forth above in regards to deposition Topic #10."  For the same reasons we explained in response to Topic No. 10 of the IT/Document Retention Notice, discovery into this subject matter is not relevant to the resolution of the

Arbitration Motion and should be denied.  *See* Part I.A.1, above; *AT&T Mobility,* 131 S. Ct. 1740.

### C.   The Document Requests At Issue Are Beyond The Scope Of Arbitration Discovery.

Plaintiffs seek to compel discovery of several document requests, none of which relate to the Arbitration Motion or the enforceability of the arbitration provisions at issue here.

*Document Request Nos. 12, 14, 21-22, 26.*  These requests seek the production of documents relating to "Western Union . . . settlement assets," communications between WUFSI and other Western Union companies, "how funds . . . end[] up in the possession of The Western Union Company," the identity of "which Western Union company . . . sends the due diligence letter," and "the current balance of and the location of unredeemed and/or un-completed funds." Plaintiffs' purported justification for these requests is that these documents will provide information about which "Western Union entity(ies) is the proper defendant(s) in this litigation" and "whether Defendants waived the right to arbitrate." (Ltr. Br. at 6-7.)  This justification does not hold up.  Beyond their conclusory statements, Plaintiffs offer no explanation as to how these document requests could help determine which "Western Union" entity is the proper party.  As explained above, the evidence submitted in support of the Arbitration Motion already disclosed that WUFSI—not The Western Union Company—is the party that operates the money transfer business at issue here (The Western Union Company is merely a holding company) and WUFSI is the party with which Plaintiffs contracted when they initiated their money transfers.  (*See* Ayres Decl. ¶ 3.)  Thus, discovery of documents responsive to these requests is unnecessary and should be denied.

*Document Request Nos. 13.*  This request calls for "each document you 'reviewed as referenced in your Due Diligence Letters sent to the Plaintiffs.'"  *Id.*  Plaintiffs argue that

documents responsive to this request are necessary to discovery "what steps . . . Defendants take to ensure consumers receive the Due Diligence Letters and thereby receive notice of a claim to arbitrate." *Id*. Again, this argument is unavailing. For the reasons described above (*see* Part I.A.1), discovery into the issues relating to the Due Diligence letters is irrelevant to the arbitration issues and should not be permitted.

Document Request No. 25 seeks "all documents sufficient to identify the percentage of U.S. non-business WUFSI customers initiating transactions in California." *Id*. Plaintiffs claim this material is relevant because "the arbitration provision does not apply to transactions in California . . . " *Id*. Plaintiffs ignore, however, that not one of them is a California resident and none of them allege that their money transfers originated in California. (*See* Compl. ¶¶ 20-37.) Plaintiffs are therefore not entitled to documents responsive to this request.

## II.   THE COURT SHOULD ENTER AN ORDER STAYING MERITS DISCOVERY PENDING RESOLUTION OF THE ARBITRATION MOTION.

Defendants are entitled to an order staying merits discovery. The Supreme Court has ruled that motions to compel arbitration "call for an expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983). Furthermore, "[i]n a proceeding to compel arbitration, no discovery into the underlying grievance is ordinarily permitted." *Levin v. Ripple Twist Mills, Inc.*, 416 F. Supp. 876, 880 (E.D. Pa. 1976). Consequently, where, as here, a party has moved to compel arbitration, merits discovery should be stayed. *See, e.g., PCH Mutual Ins. Co. v. Casualty & Surety, Inc.*, 569 F. Supp. 2d 67, 78 (D.D.C. 2008); *Cunningham v. Van Ru Credit Corp.*, 2006 WL 2056576 *2 (E.D. Mich. 2006). For example, in *PCH Mutual*, the defendant moved to compel arbitration and subsequently moved to stay merits discovery. The Court granted the motion, and permitted discovery only as to the issue of arbitrability, reasoning that "the Federal

Arbitration Act requires that the Court resolve the threshold issue of whether the parties agreed to mandatory arbitration before the litigation of this matter can continue." *Id.*

Similarly, in *Klepper v. SLI, Inc.*, 45 Fed. Appx. 136, 2002 WL 2005431 (3d Cir. 2002) (unpublished), the defendant asked the trial court to rule on the arbitrability of the plaintiff's claim. The trial court issued an order requiring the parties to complete discovery on all pending issues, without ruling on the arbitrability issue. The Third Circuit vacated the trial court's discovery order, noting that "requiring the parties to submit to full discovery under the Federal Rules of Civil Procedure may unnecessarily subject them "'to the very complexities, inconveniences and expenses of litigation that they determined to avoid.'" *Id.* at *1 (quoting *Suarez-Valdez v. Shearson Lehman/American Exp., Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) (Tjoflat, J., concurring)); *see also Int'l Union of Elec., Radio and Machine Workers, AFL-CIO v. Westinghouse Elec. Corp.*, 48 F.R.D. 298, 299 (S.D.N.Y. 1969) (where action has been brought to compel discovery under the FAA, "investigation into the merits of the grievance to be arbitrated would be improper").

Like *Klepper*, requiring Defendants to submit to full discovery would unnecessarily subject them to discovery that the parties, via their arbitration agreement, agreed to avoid. As explained above, the discovery requests at issue cover a variety of subjects that have nothing to do with the arbitrability of Plaintiffs' claims. Indeed, Defendants seek a stay as to additional depositions and interrogatory discovery, which may not even be available in arbitrations (depending the arbitrator or forum). Requiring Defendants to participate in merits discovery would result in needless expense, unnecessarily complicate discovery of the arbitrability issue and delay its resolution. *See, e.g., Bernal v. Burnett*, No. 10-cv-01917-PAB-KMT, 2010 WL 4792628, at *2 (Nov. 18, 2010) (Tafoya, J.) (granting stay of merits discovery and noting

burdens associated with possibility of conducting unnecessary class discovery if trial court decided that individual arbitrations were necessary); *Del Rio v. Creditanswers, LLC*, No. 10-cv-346-WQH-BLM, 2010 WL 3418430, *4 (S.D. Cal. Aug. 26, 2010) (staying underlying case during appeal of arbitration decision under Federal Arbitration Act due to significant differences in expense between discovery in a two-party case and that in a class action).

Furthermore, Plaintiffs have failed to demonstrate how their proposed discovery is necessary.  Indeed, there is neither a discovery cut-off date nor a trial date set in this case yet. Courts have routinely found that the threshold issue of arbitrability is resolved with only limited, if any, discovery.  *E.g., Wolff v. Westwood Management, LLC*, 558 F.3d 517, 521 (D.C. Cir. 2009) ("The district court did not abuse its discretion in refusing appellants' request for discovery under Rule 56(f) of the Federal Rules of Civil Procedure.  The appellants failed to demonstrate, both to the district court and on appeal, how discovery related to the merits of the claims would have assisted them in opposing the motion to compel arbitration."); *O.N. Equity Sales Co. v. Emmertz*, 526 F. Supp. 2d 523, 528 (E.D. Pa. 2007) (finding that the evidence before the court was sufficient to determine the issue of arbitrability without further discovery and noting that "discovery may serve to undermine the advantages offered by arbitration"); *Axa Equitable Life Ins. Co. v. Infinity Financial Group, LLC*, 608 F. Supp. 2d 1330 (S.D. Fla. 2009) (denying plaintiff's request for discovery where it "appears to bear more on the merits of the litigation rather than the issue of arbitrability.").  Plaintiffs' requested discovery goes only to class damages and certification issues and is entirely irrelevant to a determination of arbitrability. At the same time, Plaintiffs have put forth no reason why the arbitrability of their claims cannot be decided on the evidence currently available.  The only questions relevant to WUFSI's Arbitration Motion concern the validity of the agreements Plaintiffs entered into.  These can be

easily answered through a simple analysis of basic contract law, and Plaintiffs need not seek merits discovery to assist in this regard.  Therefore, Defendants should not be subjected to merits discovery.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to compel in its entirety and grant Defendants' cross-motion to stay merits discovery pending resolution of the Arbitration Motion.

DATED this 1st day of July, 2011                    Respectfully submitted,

*s/ Jason A. Yurasek*
Geraldine M. Alexis
Jason A. Yurasek
Perkins Coie LLP
4 Embarcadero Center, Suite 2400
San Francisco, California 94111-4131
Telephone:  415-344-7000
Facsimile:  415-344-7050
Email:  JYurasek@perkinscoie.com

and

Leonard H. MacPhee
Perkins Coie LLP
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Telephone:  (303) 291-2300
Facsimile:  (303) 291-2400
Email:  LMacphee@perkinscoie.com

Attorneys for Defendants
The Western Union Company and Western
Union Financial Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2011, I electronically filed the foregoing with the Clerk of Court using the **CM/ECF system**, which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Richard J. Burke | richard@freedweiss.com, paul@freedweiss.com, debs@freedweiss.com |
| Jeffrey A. Leon | jeff@freedweiss.com, paul@freedweiss.com, sherrie@freedweiss.com |
| Grant Y. Lee | grant@freedweiss.com |
| Rebecca E. Duggan | rebecca@freedweiss.com |
| Seth A. Katz | seth.katz@burgsimpson.com |
| Daniel E. McKenzie | dmckenzie@burgsimpson.com |
| Jim Calton | caltonlegal@gmail.com |
| Leonard H. MacPhee | lmacphee@perkinscoie.com |

*s/ Jason A. Yurasek*
Jason A. Yurasek
Perkins Coie LLP
4 Embarcadero Center, Suite 2400
San Francisco, CA 94111
Telephone:  (415) 344-7000
Facsimile:  (415) 344-7050
Email:  jyurasek@perkinscoie.com

65726-0012/LEGAL21237275