UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

JAMES P. TENNILLE, ROBERT SMET,
ADELAIDA DELEON and
YAMILET RODRIGUEZ,
Individually and on behalf of
all others similarly situated,

      Plaintiffs,

v.

THE WESTERN UNION COMPANY and
WESTERN UNION FINANCIAL
SERVICES, INC.,

      Defendants.

Civil Action No. 09-cv-00938-JLK
*consolidated with*
No. 10-cv-00765-JLK

Hon. John L. Kane

John E. Anding (P30356)
Theodore J. Westbrook (P70834)
DREW, COOPER & ANDING, P.C.
Attorneys for Plaintiff-Objector Sikora Nelson
Aldrich Place, Suite 200
80 Ottawa Avenue, N.W.
Grand Rapids, MI 49503
(616) 454-8300
janding@dca-lawyers.com
twestbrook@dca-lawyers.com

# BRIEF IN SUPPORT OF OBJECTIONS OF SIKORA NELSON TO PROPOSED CLASS SETTLEMENT AGREEMENT

## INTRODUCTION

Plaintiff-Objector Sikora Nelson, an unnamed member of the plaintiff class, submits this brief in support of her Objections (submitted herewith) to the proposed Settlement Agreement in this action. The proposed settlement, which contemplates (at most) only the return to the class members of funds withheld by Western Union and interest earned thereon, does not adequately compensate Ms. Nelson and other class members who conducted their transactions with Western

Union in the state of Michigan. Michigan provides a remedy under its "statutory conversion" law of *treble actual damages* in addition to attorney fees. While the proposed settlement terms may be adequate with respect to other class members to whom such a state law remedy is unavailable, the compensation provided is at best 25% of the amount to which Michigan class members like Ms. Nelson are entitled. The proposed settlement disproportionately compromises the claims of Michigan class members without any corresponding benefit to them.

While the Settlement Agreement purports to release all class members' claims against Western Union deriving in any way from money transfer services, the notice sent to prospective settlement class members ("Notice") does not adequately notify Michigan class members that these valuable claims stand to be wiped out by the settlement. Indeed, the Notice describes the claims at issue in this settlement only as relating to Western Union's failure to inform class members that it held unredeemed funds, neglecting to even mention the allegations that Western Union *failed to return* unredeemed funds to the class members. The Notice then misleadingly notes that class members are not giving up their right to sue Western Union for claims that are not resolved by the settlement. Michigan class members have not been fairly warned that the proposed settlement will prejudice their rights. In the interest of fairness, the proposed settlement should not be approved.

## ARGUMENT

### I.   LEGAL STANDARD

The named parties in a class action may not settle, voluntarily dismiss or compromise class claims without the Court's approval. Fed. R. Civ. P. 23(e). The Court may approve a proposed settlement only after a hearing and upon a finding that the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). The first and fundamental question in determining the fairness of a proposed settlement is whether the proposed settlement is

2

comparable to the likely result of litigating the claims to their conclusion. *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 216 F.R.D. 197, 206-07 (D. Me. 2003).

II.  **THE PROPOSED SETTLEMENT DOES NOT COMPENSATE MICHIGAN CLASS MEMBERS FOR THE RELEASE OF THEIR REMEDIES UNDER MICHIGAN COMPILED LAWS SECTION 600.2919A.**

A.  **Western Union's Conduct Entitles Michigan Class Members to Additional Relief Including *Treble Actual Damages* and Attorney Fees under Michigan's Conversion Statute.**

Western Union's wrongful conduct as alleged in the First Amended Class Action Complaint (Dkt. No. 13) can be distilled into two parts: (1) Western Union's failure to return unredeemed funds to its customers;[1] and (2) Western Union's failure to notify its customers that the funds they attempted to send via Western Union's services were not redeemed and that Western Union held these funds.  Under the laws of most if not all states, the first category of wrongful conduct could be characterized as conversion—exerting wrongful dominion over the property of another—the measure of damages for which is the value of the converted property. *See, e.g., Virtanen v. O'Connell*, 140 Cal. App. 4th 688, 707-08 (Cal. Ct. App. 2006); *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (N.Y. 1980); *Kraft Constr. Co. v. Cuyahoga County Bd. of Comm'rs*, 128 Ohio App. 3d 33, 713 N.E.2d 1075 (Ohio Ct. App. 1998); Rest. 2d Torts § 222A.  Michigan's common law is in accord. *Trail Clinic, P.C. v. Bloch*, 114 Mich. App. 700, 319 N.W.2d 638, 640 (Mich. Ct. App. 1982) (citing *Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438, 104 N.W.2d 360 (1960); *Wronski v. Sun Oil Co.*, 89 Mich. App. 11, 20-21, 278 N.W.2d 564 (1979); *Gum v. Fitzgerald*, 80 Mich. App. 234, 238, 262 N.W.2d 924 (1977)).

---

[1] Western Union's collection of interest on these funds, effectively using class members' funds for its own purposes without authorization, fits into this category.

Michigan, however, provides by statute an additional recovery to the victim of conversion or embezzlement that is specific, greater than and cumulative to other remedies: *treble actual damages and attorney fees in addition to all other available rights or remedies.* Mich. Comp. Laws § 600.2919a. Michigan's "statutory conversion" law thus provides:

(1)  A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

    (a)  Another person's stealing or embezzling property or converting property to the other person's own use.

    (b)  Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2)  The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

*Id.* By virtue of this statute, a valuable additional cause of action and remedy is available to Michigan class members that has not been asserted in this litigation and is not accounted for in the remedies provided under the proposed settlement.

Michigan's statutory conversion law does not define "converting;" rather, that term is interpreted as incorporating Michigan's common law conversion doctrine. *McCallum v. Pixley (In re Pixley)*, 456 B.R. 770 (Bankr. E.D. Mich. 2011) (citing *Dep't of Ag. v. Appletree Mktg., L.L.C.*, 485 Mich. 1, 779 N.W.2d 237, 244 (Mich. 2010); *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 486 N.W.2d 600, 606 (Mich. 1992)). Michigan's Supreme Court has noted that "[c]onversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Appletree*, 779 N.W.2d at 244-45.

4

Neither Ms. Nelson nor any Michigan class member authorized Western Union to use the principal amount of their intended funds transfers for any purpose except to complete the funds transfers to their specified recipients. When those funds transfers failed to reach their specified recipients, Western Union neither returned the funds nor informed the class members that the transfers were unsuccessful. Western Union's retention and use of those funds beyond any reasonable period that might be allowed for return of the funds—for the admitted purpose of profiting by earning interest[2]—constitutes "us[ing] it in an improper way, for an improper purpose," see id., and therefore entitles Michigan class members such as Ms. Nelson to the remedies available under Section 600.2919a in addition to all other remedies allowed by law.

**B.    Michigan Class Members' Claims Stand to Be Compromised by at Least 75% If the Proposed Settlement Is Approved Without Modification.**

The relief available to any class member amounts to, at best, (1) return of the principal amount of the funds the class member attempted to transfer; and (2) return of a calculated amount of interest on that amount.[3]  (Dkt. No. 172-2 § 2.C.1.)  For class members who are entitled to this relief, the compensation is strikingly similar to the damages that would be available in a conversion claim under the laws of most states: the value of the converted property at the time of conversion.  The crux of Ms. Nelson's Objection is that for Michigan class members whose funds have not been returned by Western Union, even this *maximum* amount of

---

[2] Western Union notes in its annual SEC Form 10-K its "investment" of these "settlement assets" for the purpose of earning income. At the end of 2012, Western Union held over *$3.1 billion* of these "settlement assets." 2012 Form 10-K, pp. 46, 51, 64, 92-93, *available at* www.sec.gov/Archives/edgar/data/1365135/000136513513000008/wu-12312012x10k.htm. At the end of 2011, Western Union held over *$3 billion* of these "settlement assets." 2011 Form 10-K, pp. 44, 50, 65, 89, 95-96, *available at* www.sec.gov/Archives/edgar/data/1365135/000119312512078259/d257693d10k.htm. It is worth noting that the proposed common settlement fund in this case of $180 million is less than 6% of the total settlement funds held by Western Union.

[3] For class members whose funds have escheated to their respective states, the relief does not include return of the principal amount of the funds, but rather includes instructions for seeking return of those funds from the state to which they have escheated. (Dkt. No. 172-2 § 2.B.2.)

relief available under the proposed settlement short-changes Michigan class members by a minimum of 75%. This is because under Michigan law, Michigan class members are entitled to three (3) times their actual damages *in addition to* the return of funds contemplated by the proposed settlement.

Michigan law is clear that the relief available for conversion or embezzlement under Michigan's conversion statute is in addition to any other available relief, including damages for common law conversion. *Dep't of Ag. v. Appletree Marketing*, 485 Mich. 1, 779 N.W.2d 237, 242-46 (Mich. 2010) (citing Mich. Comp. Laws § 600.2919a). The following illustration shows a comparison of the hypothetical claims of a non-Michigan class member (i.e., a class member lacking the right to treble damages and cumulative relief under state law) versus a Michigan class member, assuming in each instance Western Union failed to return the principal amount of a $300 transfer:

| | Michigan class member[4] | Non-Michigan class member |
|---|---|---|
| Common law conversion damages (value of unreturned principal) | $300 | $300 |
| Common law conversion damages (value of interest) | $10 | $10 |
| Statutory cumulative treble damages (unreturned principal) | $900 (3 x $300) | $0 |
| Statutory cumulative treble damages (interest) | $30 (3 x $10) | $0 |
| **Total damages (principal + interest)** | $1240 | $310 |

---

[4] The damages figures illustrated here assume that the Michigan class member has no "actual damages" apart from being deprived of the funds themselves. In reality, Michigan class members' statutory conversion claims may be worth significantly more since their "actual damages" may include damages that are consequential to the funds having failed to reach their intended recipient; e.g., their mortgage lender or auto finance company.

Under the proposed settlement, each of these class members—who are similarly situated except with respect to the availability of the remedy provided by Section 600.2919a—receives a payment of $310.[5] The non-Michigan class member receives a payment that is basically consistent with the damages to which he would be entitled had he prevailed under a common law conversion theory; by contrast, the Michigan class member receives only 25% of the amount to which she would be entitled under Michigan law. The proposed settlement is unfair to Michigan class members because it makes no provision for the higher value of Michigan class members' claims against Western Union.

C.   **The Release Language Contained in the Proposed Settlement Is Overly Broad as to Michigan Class Members Because It Prohibits Valuable Unasserted Claims that Are Held by All Michigan Class Members.**

Unless they opted out, the proposed settlement would bar Michigan class members from seeking their remedies for statutory conversion, even though the proposed settlement does not provide any commensurate benefit to them. This much is clear from the broad release language:

- The "Released Claims" include "all liabilities, claims … that have been, might have been, are now, or could have been brought relating to the transactions … that are the subject of the Litigation and/or Settlement Agreement, or arising from or relating to the sale or marketing of any of Western Union's money transfer services or otherwise alleged in the Complaint …" (Dkt. No. 172-2 §§ 1.R, 10.B);

- The proposed settlement provides that "[t]he proposed Final Judgment and Order of Dismissal shall provide (1) that Class members' rights to their money transfer funds against Western Union have been extinguished, in perpetuity …" (id. § 6.C);

- The proposed settlement purports to "satisfy any obligations of Western Union to Class members arising out of the Western Union Transfers," i.e., any funds transfer (id. § 10.A).

---

[5] This figure assumes Western Union is not allowed to levy a refund charge on the class member under the applicable contracts and state laws (Dkt. No. 172-2 § 2.C.1), and that the established common fund of $180 million is sufficient to pay out all fees and claims (Id. § 2.A.4). The failure of either assumption would result in a lesser recovery for one or both class members.

There is no question that, based on precisely the same fact pattern alleged in the First Amended Class Action Complaint in this case (Dkt. No. 13), the Michigan class members could have stated a claim for treble actual damages and attorney fees which, if successful, would entitle them to an additional damages award at least three times greater than the award contemplated by the proposed settlement. However, a claim under Section 600.2919a has neither been alleged nor litigated in any way in the present case, and now stands to be released class-wide. Michigan class members should be given a fair opportunity to obtain the remedies uniquely available to them under Michigan law in addition to the amount of the proposed settlement award. The release of these claims where they have not been litigated, and would significantly increase the recovery if they were litigated, is not fair to Michigan class members and should not be approved by this Court.

III.   **THE NOTICE OF PROPOSED SETTLEMENT IS NOT SUFFICIENT TO DISCLOSE THE BREADTH OF THE RELEASE CONTAINED THEREIN.**

It is unlikely that most class members are aware of the broad scope of the release contained in the proposed settlement based on reviewing the Notice made available to them. This is particularly problematic in the case of Michigan class members, to whom additional, cumulative remedies are available but have not been pursued by class counsel. Fairness requires that before a proposed settlement is approved, Michigan class members be given clear notice that unless they opt out of the proposed settlement, the release precludes their right to a recovery under Michigan's conversion statute even though that claim has not been litigated.

A.   **The Description of the Claims in the Notice Suggests that the Release Is Narrower than that Actually Provided in the Settlement Agreement.**

The adequacy of a settlement notice in a class action case is measured by reasonableness. *Wal-Mart Stores Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citing *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983); Fed. R. Civ. P. 23(e)). The settlement notice must

8

"fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). Notice is adequate if it may be understood by the average class member. *Id.* (quoting 4 NEWBERG ON CLASS ACTIONS § 11:53).

Plaintiff-Objector Sikora Nelson received the Notice of proposed settlement in the mail in April of 2013. (Ex. 1, attached.) She sought the advice of counsel because she did not understand its description of this lawsuit or the proposed settlement. Indeed, the scope of the release contemplated in the proposed settlement cannot be determined at all without reference to the Stipulation and Agreement of Compromise and Settlement, a technical legal document spanning more than forty (40) pages and comprising more than one hundred (100) parts and subparts. (Dkt. No. 172-2.) The notice mailed to class members is not sufficiently clear to describe the actual terms of the release imposed by the proposed settlement.

A significant source of confusion in the Notice is the description of the lawsuit that it provides:

This settlement involves a lawsuit over whether Western Union Financial Services, Inc. ("WUFSI") and the Western Union Company (collectively, "Western Union") *timely notified its customers of unredeemed Western Union Transactions* in the United States using Western Union's money transfer services.

(Ex. 1, p. 1, emphasis added.) The description of the lawsuit does not mention one of the two major types of conduct by Western Union which this lawsuit challenges: *Western Union's retention of and/or failure to return funds belonging to class members*. In other words, the description omits the conduct which gives rise to the plaintiff class's conversion claims against Western Union. This omission continues on the following page of the Notice, under the heading "What is this lawsuit about?":

The lawsuit claims that Western Union *did not timely notify its customers that their Western Union Transactions were not redeemed* by the receivers to whom

the Western Union Transactions were sent, and as a result caused harm to their customers.

(*Id.*, p. 2, emphasis added.)   These descriptions minimize the scope of Western Union's wrongdoing as alleged in the First Amended Class Action Complaint and apply a gloss on the facts that favors Western Union at the expense of accuracy.  It does not take a leap of logic to recognize that members of the plaintiff class receiving this Notice will react less strongly—and work less diligently to preserve their rights—than they would if the Notice explained to them that this lawsuit *also* concerns whether Western Union *unlawfully retained and failed to return funds belonging to them*.  Yet this description is nowhere stated in the Notice.  Indeed, it is nowhere stated in any document made freely available to members of the plaintiff class, including the Stipulation and Agreement of Compromise and Settlement that memorializes the legal terms of the proposed settlement. (Dkt. No. 172-2.)

Apart from encouraging class members' complacency by minimizing the scope of Western Union's alleged wrongdoing, the Notice suggests that the proposed settlement is limited to the claims that are described within the Notice when, in reality, it is not.  The Notice explains the release of claims as follows:

If you are a class member and you do not exclude yourself, you will be deemed a member of the Class participating in the settlement and give up your right to sue Western Union for the **claims that this settlement resolves**, whether or not you file a claim form.

*      *      *

All Class members who do not actively exclude themselves, regardless of whether they file a valid claim form or not, also release all claims they have against Western Union including the right to sue Western Union or the Released Parties (identified in Section 10.B of the Settlement Agreement) regarding all of the claims resolved by the Settlement, as described more fully in Section 10 of the Settlement Agreement.

However, you will NOT give up your right to sue Western Union or any of the Released Parties for any other claims (that is, any claims that were not resolved by the Settlement).

(Ex. 1, pp. 5, 7, emphasis added.)   When paired with the language describing the claims and settlement only as involving Western Union's failure to "timely notify" class members of their unredeemed transfers, the release-related language above suggests that class members could still sue Western Union for its retention of and/or failure to return funds, even if the class members did not opt out of the settlement.  The problem is that under the proposed settlement, *any and all* claims relating to money transfer services are included in the release; not just those relating to Western Union's failure to provide "timely notification" to class members.  (Dkt. No. 172-2 §§ 1.R, 10.B, 6.C, 10.A.)  The release encompasses, among other potential claims, the conversion claims asserted in this lawsuit—claims not described in the Notice—as well as the statutory conversion claims Michigan class members could assert against Western Union under Section 600.2919a.  The Notice simply does not provide fair warning that those who do not opt out will forever release these claims, whether asserted or not, relating to the most egregious conduct alleged against Western Union in this lawsuit.

**B.     The Lack of Clarity in the Notice Disproportionately Affects Michigan Class Members.**

Michigan class members, unlike other members of the plaintiff class, could assert claims for treble damages pursuant to Michigan Compiled Laws Section 600.2919a based on the same facts giving rise to the common law conversion claims asserted in this lawsuit.  (*See* discussion *supra* parts I.A-B.)  As a result, Michigan class members are especially likely to be harmed by the failure of the Notice to describe the scope of the claims asserted in this lawsuit and the effect of the settlement on their rights.  It is likely that the vast majority of Michigan class members

11

receiving the Notice do not realize that they have valuable, unasserted claims against Western Union under Michigan law that will be extinguished by the proposed settlement.

To approve the proposed settlement, the Court must find that the settlement Notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Weinberger*, 698 F.2d at 70. Because the settlement Notice fails to fairly apprise Michigan class members regarding the scope of the settlement and its effect on their rights under Michigan law, the Court should reject the proposed settlement.

## IV.   THE COURT SHOULD REJECT THE PROPOSED SETTLEMENT BECAUSE FAIRNESS REQUIRES THE CREATION OF A SEPARATE SETTLEMENT CLASS FOR MICHIGAN CLASS MEMBERS.

Michigan class members should not be limited to the same relief afforded to all class members under the proposed settlement when claims under Michigan law are at least *four times* more valuable than the claims of other class members. If the proposed settlement is approved, Michigan class members' claims will go uncompensated, but will be released just as fully as will those of other class members. This unfairness is possible to ameliorate, however. The Court should reject the proposed settlement and instead encourage class counsel, the named Plaintiffs and Western Union to create a separate settlement class for Michigan class members that duly compensates them for the release of their claims.

As proposed, the settlement class consists of:

[A]ll persons (a) who initiated any Western Union Transaction in the United States on or after January 1, 2001 and on or before the date of Preliminary Approval, whose Western Union Transaction was not redeemed within 60 calendar days; and (b) who either (i) have not claimed their money transfer funds (nor had that money claimed on their behalf) from Western Union; or (ii) were informed by written communication that their money was about to escheat to the state, district, territory, or U.S. jurisdiction in which their money transfers were initiated, and who sought and received a refund of their money but did not receive a payment for interest Western Union earned on that money.

(Dkt. No. 172-2 § 1.C.) This definition includes persons who initiated their Western Union Transaction(s) within the state of Michigan. Though it provides no greater relief for Michigan class members than is provided for any other class member, it would be a relatively simple matter to adjust the amount of relief for Michigan class members.

Persons whose Western Union Transactions were initiated in Michigan should form a sub-class for settlement purposes. The relief provided to that sub-class should be set at four times the relief provided to similarly situated non-Michigan class members. For example, a Michigan class member to whom Western Union has not returned a $300 transfer on which Western Union made $10 in interest should receive a distribution of $1240; where a similarly situated (with the exception of applicable state law) non-Michigan class member receives $310. A Michigan class member whose principal fund transfer amount has escheated to the state should receive four times the amount of interest earned on those funds by Western Union, where a similarly situated non-Michigan class member receives the amount of interest earned. This distribution formula gives due consideration to the law of the different jurisdictions in which the Western Union Transactions at issue in this case took place. In this instance, it allows the will of the Michigan Legislature—which saw fit to provide exemplary relief to victims of conversion or embezzlement through its enactment of Michigan Compiled Laws Section 600.2919a—to be carried out.

## CONCLUSION

Plaintiff-Objector Sikora Nelson submits her Objections to the sound discretion of the Court and respectfully requests that the Court, in the interest of fairness to the plaintiff class, to herself, and to other class members whose Western Union Transactions took place in the state of Michigan, deny approval of the proposed settlement of this case.

Respectfully submitted,

Dated: May 15, 2013

John E. Anding (P30356)
Theodore J. Westbrook (P70834)
**DREW, COOPER & ANDING, P.C.**
Attorneys for Plaintiff-Objector Sikora Nelson
Aldrich Place, Suite 200
80 Ottawa Avenue, N.W.
Grand Rapids, MI 49503
(616) 454-8300
janding@dca-lawyers.com
twestbrook@dca-lawyers.com

I:\JEA_Team\3221-01\PLEADINGS\BIS Objection (120.121)

14

# EXHIBIT 1

UNITED STATES DISTRICT COURT DISTRICT OF COLORADO

# If you initiated a money transfer in the United States with Western Union between January 1, 2001 and January 3, 2013 and your money transfer was not redeemed within 60 days, you may be eligible to receive payment from a class action settlement.

*A federal court directed this notice. This is not a solicitation from a lawyer.*

- This settlement involves a lawsuit over whether Western Union Financial Services, Inc. ("WUFSI") and The Western Union Company (collectively, "Western Union") timely notified its customers of unredeemed Western Union Transactions in the United States using Western Union's money transfer services. Western Union denies it did anything wrong. The settlement provides for refunds to Western Union customers and releases Western Union from liability.

- If you received this notice in the mail, Western Union's records indicate that you may have initiated a money transfer between January 1, 2001 and January 3, 2013, which was never redeemed and that you may be entitled to a refund under the settlement.

- The settlement establishes a Class Settlement Fund, currently estimated to be about $180 million, and offers reimbursements of the unredeemed funds and interest earned on those funds to eligible Class members. Additionally, the settlement establishes procedures to assist certain Class members in recovering money that may have "escheated" to their respective states. In the future, Western Union will notify their customers of covered Western Union services if their money transfers have not been redeemed within 60 days.

- Class members will be sent claim forms if and when the Court approves the settlement. Your legal rights are affected whether or not you act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** (TO BE SUBMITTED AFTER ALL APPEALS ARE FINAL) | This is the only way to receive a refund payment from the settlement. Claim forms will become available after the Court approves the settlement and all appeals, if any, are final. |
| **EXCLUDE YOURSELF FROM THE CLASS BY MAY 15, 2013** | If you opt out of the settlement, you will not be eligible to receive the Settlement Benefits, but you keep your right to sue on your own regarding any claims that are part of the settlement. |
| **OBJECT OR COMMENT BY MAY 15, 2013** | You may write to the Court about why you do, or do not, like the settlement. You must remain in the Class to comment in support of, or in opposition to, the settlement. |
| **ATTEND A HEARING ON JUNE 14, 2013** | You may ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | If you do nothing, you will not receive a refund payment from the settlement. You will also give up your right to sue on your own regarding any claims that are part of the settlement. |

These rights and options—and the deadlines to exercise them—are explained in this notice.



# BASIC INFORMATION

## 1. Why is this notice being provided?

A Court authorized this notice because you have a right to know about a proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the settlement.

This notice explains the lawsuit, the settlement, your legal rights, what Settlement Benefits are available, who is eligible for them, and how to get them. The Court in charge of the case is the United States District Court for the District of Colorado, and the case is known as *Tennille v. The Western Union Co.*, Case No. 09-cv-00938-JLK. The people who sued are called Plaintiffs, and the companies they sued, Western Union, are called Defendants.

If you received this notice in the mail, it was because Western Union's records indicate you may have initiated a Western Union Transaction in the United States using Western Union's money transfer services, and your money transfer was not redeemed within 60 days. A "Western Union Transaction" is defined in response to Question 5 below.

## 2. What is this lawsuit about?

The lawsuit claims that Western Union did not timely notify its customers that their Western Union Transactions were not redeemed by the receivers to whom the Western Union Transactions were sent, and as a result caused harm to their customers. Western Union denies it did anything wrong, and the Court has not ruled on whether Western Union violated any laws.

## 3. Why is this a class action?

In a class action lawsuit, one or more people, called "Class Representatives" (in this case, James P. Tennille, Robert Smet, Adelaida DeLeon, and Yamilet Rodriguez) sue on behalf of people who have similar claims. These people together are called a "Class". If the Court allows the case to proceed as a class action, the Court will resolve the issues for all Class members, except for those who exclude themselves from the Class. U.S. District Judge John L. Kane is in charge of this class action.

## 4. Why is there a settlement?

The Court has not decided in favor of either side in the case. The settlement was reached after mediation before a neutral mediator, David W. Aemmer, Chief Circuit Mediator, United States Court of Appeals for the Tenth Circuit. Western Union denies all allegations of wrongdoing or liability against it, and contends that its conduct was lawful. Western Union is settling to avoid the expense, inconvenience, and inherent risk of litigation, as well as the related disruption of its business operations. Class Counsel believes that the terms of the settlement are fair, adequate, and reasonable to the Class because the settlement provides an appropriate recovery now while avoiding the risk, expense, and delay of pursuing the case through trial and any appeals.

## 5. What do "Western Union Transaction" and "Escheat" mean?

A "Western Union Transaction" means a consumer-to-consumer, consumer-to-business, or business-to-consumer money transfer transaction initiated using Western Union's services, including Dinero En Minutos, Envio Plus, Equity Accelerator, Mexico Giro Paisano, Money in Minutes, Money Transfer, Next Day, Quick Cash, Quick Collect, Quick Pay, Speedpay, and Swiftpay.

"Escheat" means the process where unclaimed or abandoned property is given over to a state according to certain state statutes.

# WHO IS IN THE SETTLEMENT

To see if you will be affected by the settlement or if you can get a payment from it, you first have to determine if you are a Class member.

## 6. How do I know if I am part of the settlement?

Unless you exclude yourself (as described in response to Question 9 below), you are included in the settlement as long as you are a member of the Class. Judge Kane decided that everyone who fits this description is a Class member: All persons (a) who initiated any Western Union Transaction in the United States on or after January 1, 2001 and on or before the date of Preliminary Approval, whose Western Union Transaction was not redeemed within 60 calendar days; and (b) who either (i) have not claimed their money transfer funds (nor had that money claimed on their behalf) from Western Union; or (ii) were informed by written communication that their money was about to escheat to the state, district, territory, or U.S. jurisdiction in which their money transfers were initiated, and who sought and received a refund of their money but did not receive a payment for interest Western Union earned on that money. Again, a "Western Union Transaction" means a consumer-to-consumer, consumer-to-business, or business-to-consumer money transfer transaction initiated using Western Union's services, including Dinero En Minutos, Envio Plus, Equity Accelerator, Mexico Giro Paisano, Money in Minutes, Money Transfer, Next Day, Quick Cash, Quick Collect, Quick Pay, Speedpay, and Swiftpay.

If you were sent this notice in the mail, Western Union's records indicate you may have transferred money between January 1, 2001 and January 3, 2013 and that money was not redeemed within 60 days. If you fall within the description of the previous paragraph, then you are part of the settlement and your rights will be affected, unless you actively exclude yourself.

Excluded from membership in the Class are the following: (1) Western Union and its affiliates, and officers and employees of Western Union and its affiliates; (2) persons who timely and validly exclude themselves from the Class; (3) state and federal governmental entities; and (4) the judge to whom this case is assigned and any member of the judge's immediate family.

## THE SETTLEMENT BENEFITS — WHAT YOU GET

## 7. What does the settlement provide?

Class members who submit valid claims will be entitled to the following "Settlement Benefits". The benefits are also described in summary in the table below.

1. Western Union will establish a Class Settlement Fund Class consisting of Class members' money transfer funds held by Western Union on the date of Final Approval of the settlement (which is currently estimated to be approximately $180 million). An Initial Settlement Fund has already been established by Western Union to pay the Administrator's costs prior to the Settlement Effective Date, as defined below.

2. Upon submission of a valid claim, Class members (a) whose funds have not yet escheated to any state, territory, district, or U.S. jurisdiction as of January 3, 2013; and (b) who did not receive a prior refund of their money transfer funds from Western Union, will be entitled to receive lump sum cash refunds from the Class Settlement Fund in an amount equal to their unclaimed funds, less administrative fees and charges as specified in their contracts, plus interest earned by Western Union while the funds were held by Western Union. Class members whose funds escheat after January 3, 2013, but before any appeals are resolved, will only be entitled to receive a lump sum cash payment of interest earned on those funds while those funds were held by Western Union, paid out of an account held by Western Union instead of the Class Settlement Fund.

3. Upon submission of a valid claim, Class members whose funds have escheated to any state, territory, district, or U.S. jurisdiction as of January 3, 2013 will be entitled to a lump sum cash payment equal to the amount of interest that Western Union earned on their unclaimed money transfer funds while those funds were held by Western Union, paid out of an account held by Western Union instead of the Class Settlement Fund. These Class members are also entitled to recover their escheated money from the appropriate state, territory, district, or U.S. jurisdiction. Escheat Recovery Forms and Instructions will be mailed to the Class members after the Settlement Effective Date.

4. Upon submission of a valid claim, Class members who were informed by written communication that their money was about to escheat, and who sought and received a prior refund of their money transfer funds from Western Union, but did not receive a payment for interest Western Union earned on that money, will be entitled to receive a lump sum cash refund paid out of the Class Settlement Fund for interest earned on their funds while the funds were held by Western Union.

5. When not contrary to a request from any law enforcement agency or prohibited by law, court order, or other legal process, WUFSI will change its policies and practices to affirmatively notify its customers who send money transfers, except for Quick Collect money transfers paid to receivers via checks, that those transfers have not been redeemed within 60 calendar days. For Quick Collect money transfers paid to receivers via checks, WUFSI will, within 90

K7723 v.06 03.07.2013    **QUESTIONS? CALL 1-877-316-3151 OR VISIT WWW.MONEYTRANSFERSETTLEMENT.COM**
**SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.**

3



calendar days after such checks become void due to non-redemption, notify its customers that their money transfers have not been redeemed. Western Union already provides notifications to customers using certain of its money transfer services, so Western Union is not obligated to change its policies and practices with respect to those money transfer services where such notification is already provided within 60 days.

Once Western Union implements the notification procedure provided for above, it will have no obligation to refund any interest to its customers. If there is not sufficient money in the Class Settlement Fund to pay in full all valid claims, then valid claims will be paid pro rata (meaning all payments would be reduced proportionately).

In addition, Western Union will pay for the Administrator's necessary tasks that must be performed before the Settlement Effective Date out of the Initial Settlement Fund. If Judge Kane approves the settlement, Western Union will be reimbursed from the Class Settlement Fund for those costs. All other administrative costs will be paid out of the Class Settlement Fund. Subject to Court approval, an incentive award of $7,500 to each Class Representative and attorneys' fees and expenses will also be paid out of the Class Settlement Fund.

## SETTLEMENT BENEFITS SUMMARY TABLE

| | |
|---|---|
| **Your Funds Have Not Escheated & You Have Not Already Received A Refund** | • Receive a refund of your money transfer funds from the Class Settlement Fund, in an amount equal to your unclaimed funds minus administrative fees and charges, as specified in your contract. <br> • Receive a refund from the Class Settlement Fund of the interest earned on your funds while they were held by Western Union. |
| **Your Funds Have Escheated** | • Receive a refund of the interest earned on your funds while they were held by Western Union out of an account held by Western Union. <br> • Receive Escheat Recovery Forms & Instructions on how to recover your escheated money from the appropriate state, territory, district, or U.S. jurisdiction. |
| **You Were Informed Your Money Was About To Escheat and You Already Received A Refund** | • Receive a refund from the Class Settlement Fund of the interest earned on your funds while they were held by Western Union. |
| **Future Money Transfer Fund Transactions** | • Western Union will notify their customers if their money transfers have not been redeemed within 60 days. |

# HOW YOU GET A PAYMENT — SUBMITTING A CLAIM FORM

### 8. How can I submit a claim for a payment from the Settlement Fund?

Class members who wish to receive a payment must submit a claim form. If you received this notice in the mail, a claim form will be mailed to you after the Settlement Effective Date at the same address so long as the Court approves the settlement and all appeals are final (sometime after the Final Approval Hearing – see Question 16 below). The claim forms will be due 180 calendar days after the Settlement Effective Date. This process can take time, so please be patient.

After the Settlement Effective Date, you will also be able to (a) download a claim form online at www.MoneyTransferSettlement. com (b) call the Administrator at 1-877-316-3151 to request a claim form, or (c) write to the Administrator to request a claim form at info@MoneyTransferSettlement.com or the following address:

Tennille v. Western Union Settlement Administrator
PO Box 3058
Portland, OR 97208-3058

After you receive your claim form, read the instructions carefully, fill out the form, include any requested documentation, sign the declaration, and mail the form postmarked to the Administrator at the address noted above no later than the date specified on the claim form.

K7724 v.08 03.07.2013     **QUESTIONS? CALL 1-877-316-3151 OR VISIT WWW.MONEYTRANSFERSETTLEMENT.COM**
**SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.**

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want to participate in the settlement and you want to keep all of your rights to sue Western Union about the claims being resolved by the settlement, then you must take steps to get out of the Class. This is called asking to be excluded from, or is sometimes called "Opting Out" of, the Class.

## 9. How do I exclude myself from the settlement?

To exclude yourself from (or Opt Out of) the Class, you must send a letter by mail stating that you want to be excluded from *Tennille v. The Western Union Co.*, Case No. 09-cv-00938-JLK. Be sure to include your first and last name, valid mailing address, functioning telephone number, signature and a statement such as "I do not want to be part of the settlement and wish to exclude myself." You must mail your exclusion request postmarked no later than May 15, 2013 to the Administrator:

Tennille v. Western Union Settlement Administrator
PO Box 3058
Portland, OR 97208-3058

You cannot ask to be excluded from the Settlement on the phone, by email, or on the website.

## 10. If I don't exclude myself, can I sue Western Union later?

No. If you are a Class member and you do not exclude yourself, you will be deemed a member of the Class participating in the settlement and give up your right to sue Western Union for the claims that this settlement resolves, whether or not you file a claim form. If you have a pending lawsuit against Western Union, other than this class action, speak to your lawyer in that lawsuit immediately. You must exclude yourself from this Class to continue your own lawsuit.

## 11. If I exclude myself, can I get anything from this settlement?

No. If you exclude yourself from the settlement, you will not be able to make a claim to receive any payment under the settlement, and you cannot object to the proposed settlement. If you exclude yourself, however, you may sue Western Union, in the future. You will not be bound by anything that happens in this lawsuit.

# THE LAWYERS REPRESENTING YOU

## 12. Do I have a lawyer in this case?

The Court has appointed Complex Litigation Group LLC; Seeger Weiss LLP; Burg Simpson, Eldredge, Hersh & Jardine, P.C.; Calton Legal Services; Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.; and Mitchell Baker as legal counsel for the Class. Together, the lawyers are called "Class Counsel." The law firm of Complex Litigation Group LLC has been appointed Lead Class Counsel.

*Highland Park, Ill*

## 13. How will the lawyers be paid?

From the beginning of this case and the filing of the litigation in April 2009, Class Counsel have not received any payment for their services in litigating the case or obtaining settlement, and have not been reimbursed for any out-of-pocket expenses they have incurred. The Federal Judge must approve any fees or expenses ultimately paid to Class Counsel. When they ask the Court to approve the settlement, Class Counsel will ask the Court to award them attorneys' fees not to exceed 30% of the Class Settlement Fund (which amount is currently estimated at $180 million) or approximately $54 million. This amount, which will come from the Class Settlement Fund, will also include reimbursement for costs and expenses. Class Counsel will also request incentive payments of $7,500 to each Class Representative for their services on behalf of the Settlement Class. The Court may award less than the amount requested. Western Union has reserved the right to object to the attorneys' fee request. Class members may also object to the attorneys' fee request by submitting an objection letter postmarked no later than May 15, 2013 to the Court, Lead Class Counsel and Defense Counsel, as explained in response to Question 14 below. Class members may obtain a copy of the attorneys' fees request by e-mailing the Administrator at the address in response to Question 8, or by writing to Lead Class Counsel at the address in response to Question 14. In addition, the attorneys'

fee request will be posted at www.MoneyTransferSettlement.com. Payments approved by the Court will be made from the Class Settlement Fund. No matter what the Court decides with regard to the requested attorneys' fees, Class members will never be personally responsible to any of Class Counsel for attorneys' fees or expenses.

# OBJECTING TO THE SETTLEMENT

## 14. How do I tell the Court if I do not like the Settlement?

Only Class members who do not exclude themselves can object to the settlement or request for reimbursement of attorneys' fees and expenses. If you do not exclude yourself, you may object to the settlement if you believe that some part, or all of the settlement is unreasonable, unfair, or inadequate. To object, send a letter explaining your objection in *Tennille v. The Western Union Co.* Your objection letter must include:

1. Your first and last name, a valid mailing address, and a functioning telephone number;
2. Your signature;
3. The reasons you object to the settlement;
4. The identity of any witness to be called at the Fairness Hearing;
5. A summary of any evidence to be submitted; and
6. The identity of any documents to be submitted.

Objections must be sent to each of the following addresses postmarked by **May 15, 2013**. Objections submitted after this date may not be considered.

| COURT | LEAD CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk's Office<br>United States District Court<br>District of Colorado<br>Alfred A. Arraj U.S. Courthouse<br>Room A105<br>901 19th Street<br>Denver, CO 80294 | Richard J. Burke<br>Jamie E. Weiss<br>Complex Litigation Group LLC<br>513 Central Ave., Suite 300<br>Highland Park, IL 60035 | Jason A. Yurasek<br>Perkins Coie LLP<br>Four Embarcadero Center<br>Suite 2400<br>San Francisco, CA 94111<br><br>Thomas M. Barba<br>Steptoe & Johnson LLP<br>1330 Connecticut Ave. NW<br>Washington, DC 20036 |

If you file an objection, you must be willing to agree to sit for a deposition, within the county or state in which you reside, within 14 calendar days after serving the objection. An objecting Class member whose objection is limited to the proposed award of attorneys' fees and expenses is not required to sit for a deposition.

## 15. What's the difference between objecting and excluding?

Objecting is simply telling the Court you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to attend or speak at the hearing.

## 16.  When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 10:00 A.M. on June 14, 2013 at the United States District Court for the District of Colorado located at Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, CO 80294, in Courtroom A802. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  Judge Kane will listen to people who have asked to speak at the hearing.  The Court may also discuss Class Counsel's request for an award of attorneys' fees and reimbursement of costs.  After the hearing, the Court will decide whether to approve the settlement and whether to grant Class Counsel's request for attorneys' fees and expenses. We do not know how long these decisions will take.

## 17.  Do I have to come to the hearing?

No.  Class Counsel will answer any questions Judge Kane may have, but you are welcome to attend the hearing at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

## 18.  May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing.  Your request must be postmarked no later than May 15, 2013 and be sent to Clerk of the Court, Lead Class Counsel, and Defense Counsel, at the four addresses listed in response to Question 14.  Your request must state your first and last names, valid mailing address, and functioning telephone number as well as the first and last names, valid mailing address, and functioning telephone number of any person who will appear on your behalf.  Your request must also state whether or not you have filed a written objection. You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

## 19.  What happens if I do nothing at all?

In order to receive any of the cash benefits from the settlement, you must file a valid claim form.  If you do nothing, you will get no cash Settlement Benefits from this settlement.  But unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Western Union about the legal issues in this case ever again.

# FINAL SETTLEMENT APPROVAL

## 20.  What is the effect of final settlement approval?

If the settlement becomes final, Class members who submit a valid claim form will receive the Settlement Benefits to which they are entitled.  All Class members who do not actively exclude themselves, regardless of whether they file a valid claim form or not, also release all claims they have against Western Union including the right to sue Western Union or the Released Parties (identified in Section 10.B of the Settlement Agreement) regarding all of the claims resolved by the Settlement, as described more fully in Section 10 of the Settlement Agreement.

However, you will NOT give up your right to sue Western Union or any of the Released Parties for any other claims (that is, any claims that were not resolved by the Settlement).

The full text of the Settlement Agreement is available on the website.  **The Settlement Agreement describes the Released Claims and the Released Parties with specific descriptions in legal terminology, so read it carefully.**  If you have any questions about the Released Claims and what they mean, you can talk to the law firms representing the Class, listed in Question 14 above, for free; or you can, at your own expense, talk to your own lawyer.

If the settlement is not approved, the case will proceed as if no settlement had been attempted.  There can be no assurance that if the settlement is not approved and litigation resumes, the Class will recover more than is provided for under the settlement, or will recover anything.

K7727 v.06 03.07.2013   **QUESTIONS? CALL 1-877-316-3151 OR VISIT WWW.MONEYTRANSFERSSETTLEMENT.COM**
**SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.**

7



# GETTING MORE INFORMATION

## 21. How do I get more information?

This notice summarizes the proposed settlement. More details about the settlement are in the Settlement Agreement. You can get a copy of the Settlement Agreement on the website. You also may write with questions to Tennille v. Western Union Settlement Administrator, PO Box 3058, Portland, OR 97208-3058 or send an email to info@MoneyTransferSettlement.com. You can also look at and copy the legal documents in the case, Civil Action Number 09-cv-00938-JLK, during regular business hours at the Clerk's Office, United States District Court for the District of Colorado, Alfred A. Arraj United States Courthouse, Room A105, 901 19th Street, Denver, CO 80294. After the Settlement Effective Date (if one is not sent to you) you can get a claim form on the website, or have a claim form mailed to you by calling 1-877-316-3151.

**Do not call the Court or any Judge's office to get more information about the settlement.**

If you have questions, please visit the website www.MoneyTransferSettlement.com or call 1-877-316-3151.

Tennille v. Western Union Settlement Administrator
PO Box 3058
Portland, OR 97208-3058

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
**PAID**
TWIN CITIES, MN
PERMIT NO. 6006

4636-0211012-4

00018-001078   **********AUTO**5-DIGIT 49507
SIKORA NELSON
1422 LINWOOD ST SE
GRAND RAPIDS MI 49507-3727

QUESTIONS? CALL 1-877-316-3151 OR VISIT WWW.MONEYTRANSFERSETTLEMENT.COM
SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.

8

K7728 v.08 03.07.2013

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

JAMES P. TENNILLE, ROBERT SMET,
ADELAIDA DELEON and
YAMILET RODRIGUEZ,
Individually and on behalf of
all others similarly situated,

      Plaintiffs,

v.

THE WESTERN UNION COMPANY and
WESTERN UNION FINANCIAL
SERVICES, INC.,

      Defendants.

Civil Action No. 09-cv-00938-JLK
*consolidated with*
No. 10-cv-00765-JLK

Hon. John L. Kane

## PROOF OF SERVICE

STATE OF MICHIGAN    )
                    :ss
COUNTY OF K E N T    )

I, Lynne M. Gardiner, state that I am an employee in the law firm of DREW, COOPER & ANDING, and that on **May 15, 2013**, I served copies of: **Objections of Sikora Nelson to Proposed Class Settlement Agreement** and **Brief in Support of Objections of Sikora Nelson to Proposed Class Settlement Agreement** via *Certified Mail*, postage fully prepaid thereon, upon the following:

Richard J. Burke
Jamie E. Weiss
Complex Litigation Group LLC
**Lead Class Counsel**
513 Central Ave., Suite 300
Highland Park, IL  60035

Jason A. Yurasek
Perkins Coie LLP
**Attorney for Defendants**
Four Embarcadero Center
Suite 2400
San Francisco, CA  94111

Thomas M. Barba
Steptoe & Johnson LLP
**Attorney for Defendants**
1330 Connecticut Ave. NW
Washington, DC  20036

Lynne M. Gardiner

Subscribed and sworn to before me on May 15, 2013.

Carla Jo Compton, Notary Public
Kent County, Michigan
My Commission Expires:  09/29/2017
Acting in Kent County, Michigan

I:\UEATeam\3221-01\PLEADINGS\POS 2013.05.15(120.121)

2