UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 09-cv-00938-JLK, consolidated with No. 10-cv-00765-JLK

**JAMES P. TENNILLE, ROBERT SMET, ADELAIDA DELEON, and YAMILET RODRIGUEZ**, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

**THE WESTERN UNION COMPANY and WESTERN UNION FINANCIAL SERVICES, INC.**,

      Defendants.

_____

**CLASS PLAINTIFFS' MOTION FOR APPEAL BOND**
_____

Two objectors – out of a class numbering over one million members – have filed notices of appeal which, although substantively baseless, will operate as a *de facto* bar to delay implementation of this extremely worthy settlement until the appeal is resolved, a period based on Tenth Circuit statistics of approximately nine months. During the pendency of this appeal, the Settlement Class and Class Counsel will suffer significant expenses that are solely caused by the delay occasioned by the filing of these appeals. Federal law allows this Court to set an appeal bond to protect the Settlement Class and Class Counsel from these substantial costs.

The settlement approved by the Court provides excellent relief to the class, and is of the type and magnitude that represents what plaintiffs would have secured by successful verdict at trial. Viewed in that light, the appealing objectors here do not have a leg to stand on. The first appealing objector, Sikora Nelson, solely seeks to represent the purportedly "special" interests of

1

Michigan residents who, Ms. Nelson argues, should receive treble damages as their share of the settlement. However, the mere act of filing this notice of appeal on behalf of Michigan residents – who make up 1.8% of the settlement class – stops in its tracks the implementation of the entire settlement for class members in the entirety of the United States. The costs of that delay should not be imposed upon the class as a whole without a bond from which to remediate those costs. The other appealing objector, Mr. Paul Dorsey, is a pro se party who during the notice process filed several pleadings with the Court, and at final approval filed a formal objection to notice-related aspects of the settlement. Mr. Dorsey and Ms. Nelson were unaware that Western Union was holding their unredeemed transfers until they received a copy of the class action settlement notice in early 2013.

The delay occasioned by these misplaced appeals has implications all across the class certified by this Court and is likely to sow confusion among the class, who, having received notice, has been told to have certain expectations which now will be in many cases upended at least in terms of timing. The harm to the Class during the potential one year delay occasioned by this improvident appeal is difficult to quantify but is not insignificant. The Class will incur the cost of supplemental notice which Class Counsel will ask this Court to approve so that the Class can remain fully informed, as well as the increased cost of administration of the settlement caused by a delay. Accordingly, Plaintiffs and Class Counsel ask for this Court to impose an appeal bond of $1,007,294 to be paid by the Appellants to cover the potential costs of this appeal.

## ARGUMENT

A substantial appeal bond here is necessary under the facts and permissible under the law. The Federal Rules of Appellate Procedure empower district courts to "require an

appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The Court therefore retains jurisdiction "during the pendency of an appeal" to order appeal bonds. *See In re Advanced Elecs., Inc.*, 283 F. App'x 959, 963 (3rd Cir. 2008) (quoting *Venen v. Sweet*, 758 F.2d 117, 120-21 (3rd Cir. 1985)). A "district court has discretion in setting [a] cost bond." *Jenson v. Fisher*, 99 F.3d 1149, 1150 (10th Cir. 1996).[1] *See also Sierra Club v. El Paso Gold Mines, Inc.*, 2003 WL 2526871 at *11 (D. Colo. April 21, 2003) ("The amount of a cost bond is in the discretion of the district court."); *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) ("The nature and amount of the bond is a matter left to the sound discretion of the district court."). At a minimum, the appeal bond should be sufficient to cover and secure the costs of the appeal. *See In re Wal-Mart Wage & Hour Employment Practices Litig.*, 2010 WL 786513, at *2. There has been an increasing recognition of the great harm a single objector can inflict on the absent class in a class action lawsuit, and the role that such bonds can play in ensuring that the appeal process not be misused. Earlier this year, the district court for the Southern District of Indiana imposed a joint and several bond of $250,000 on each of two objectors to a class action lawsuit and engaged in a thorough analysis of the law governing such a bond request related to the appeal of a class action lawsuit. As that Court noted, "'[a]ppeal bonds are often required on appeals of class action settlements or attorneys' fee awards because the appeal effectively stays the entry of final judgment, the claims, process, and payment to all class members.' In class action cases, therefore, bonds are used to cover excess administrative costs that otherwise would not have

---

[1] As its authority, the *Jenson* Court cited to *Westinghouse Credit Corp. v. Bader & Dufty*, 627 F.2d 221, 224 (10th Cir. 1980) which stated that "[t]he trial court fixed a cost bond in the amount of $5,000. Westinghouse complains here about the amount of the cost bond. Whether that matter is properly before us is debatable. In any event, under the circumstances of the case, we find no abuse of discretion on the part of the trial court in setting the cost bond at $5,000. *See* F.R.A.P. 7."

3

been incurred." *Heekin v. Anthem*, 2013 WL 752637 at *1 (S.D. Ind. Feb. 27, 2013) (quoting *In re Uponor, Inc.,* 2012 WL 3984542, at *2 (D.Minn. Sept.11, 2012)). *See also In re Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 47659, at *40 (in the class action context "an appeal bond is 'necessary to provide some level of security to Lead Plaintiffs who have no assurances that Appellants have the ability to pay the costs and fees associated with opposing their appeals.'") (citations omitted); *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) ("[T]he class is likely to be damaged if the appeal is rejected and there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions."); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 814 (6th Cir. 2004)); ("Federal courts have required an appeal bond from apppelants. . . as a condition of maintaining objector appeals of class action settlements or attorneys' fee awards."); *Allapattah Servs., Inc.*, 2006 WL 1132371, at *18 (imposing appeal bond on class member appealing settlement on behalf of entire class when impact of appeal would be "highly detrimental" as it would stay "both the entry of final judgment on all claims . . . and payment to all Class members."). In particular, it has been noted that "an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond ... prior to filing the appeal." *Pedraza v. United Guaranty Corp.,* 313 F.3d 1323, 1333 (11th Cir. 2002). The same result should apply here.

Three categories of bond costs have been acknowledged: (1) the cost of potentially republishing the notice to the class; (2) the costs caused by the delay; and (3) the direct costs related to the appeal.[2]

### I. THERE ARE SIGNIFICANT COSTS TO BE BONDED AGAINST AS A RESULT OF THE FILING OF THE NOTICES OF APPEAL.

---

[2] *In re Uponor,* at *1.

### A. SUPPLEMENTAL NOTICE SHOULD BE SENT TO THE CLASS INFORMING THE CLASS OF THE PENDENCY OF THE APPEAL AND THE DELAY IN THE IMPLEMENTATION OF THE SETTLEMENT BENEFITS.

The fact of appeal here creates a complicated issue of communicating with the Class about the timing of the benefits under the Settlement. Class Counsel and the settlement administrator have already fielded numerous calls from class members (over 20,000 to date) inquiring about claims procedures and timing. It will be necessary to inform the class of the appeal and advise them of the likely length of the appeal and what their options are while the appeal remains pending. Class Counsel have obtained an estimate from the notice vendor for such an additional notice, which is predicated on the assumption of a simple two-page letter sent to all class members for whom an email or postal address is available. That estimate, as set forth in the affidavit of Mallory Sander, is a likely cost of $647,674. (See Exhibit A attached hereto) Plaintiffs therefore request a bond in that amount to cover this expense.

Such a cost of supplemental notice is a cost properly bonded against. In *In re Uponor, Inc.,* Class Counsel requested and received a substantial bond "to cover the costs of any additional class notice that may be required due to the delay caused by the appeal." *In re Uponor, Inc.,* 2012 WL 3984542, at *2 (D.Minn. Sept.11, 2012). U.S. District Court Judge Ann D. Montgomery held that "[a] bond in the amount of $125,000 in this case is sufficient to ensure that appellees' rights are protected. This amount reflects that the appeal will result in a significant delay of the claims process and ultimate payment to class members… The Court finds that additional class notice may be required due to the delay occasioned by the appeal, and that a bond of $125,000 is sufficient to protect the appellees." *Id.* at *16-17 (citations omitted). *See also Heekin v. Anthem*, 2013 WL 752637 at *1 (S.D. Ind. Feb. 27, 2013) (approving cost of

supplemental notice as part of bond but finding such notice need not be as expensive as the initial class notice, a dictate which Plaintiffs have followed in obtaining the attached estimate).

### B. THE COST OF ADMINISTERING THE SETTLEMENT WILL INCREASE AS A RESULT OF THE APPEAL.

As set forth in the declaration of Ms. Sander, the delay occasioned by the appeal will increase settlement administration costs by approximately $37,180 a month. (See Exhibit A) Assuming an appeal will take approximately the nine month average of Tenth Circuit appeals to come to full resolution, this means that the cost of settlement administration will increase by $334,620, and Plaintiffs therefore ask for a bond to be set that includes this amount. These are costs properly included in a Rule 7 appeal bond. *See, e.g.,Dennings v. Clearwire,* 2013 WL 3553625 at *2 (W.D. Wash. July 11, 2013) (reaffirming Rule 7 bond that included $395,000 for "incremental increases in ongoing settlement administration fees and expenses during the appeal period" and rejecting arguments that such costs are not permitted by FRAP 7 -- order setting bond noted that "courts have interpreted Rule 7 broadly to include increased expenses in settlement administration and administrative costs" (2013 WL 945267)); *Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012) ("the Court finds good cause to impose an appeal bond in the amount of $60,000, which represents solely the appellate costs and administrative costs requested by Plaintiff"); *In re Am. Inves. Life Ins. Co.,* 695 F. Supp. 2d at 166-67; *In re Wal-Mart*, 2010 WL 786513, at *1-*2 (each of four objectors appealing from final approval of class action settlement required to post $500,000 bond in light of administrative costs and interest the class would lose as a result of the delay in compensation and injunctive relief due under the settlement agreement); *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (appealing objector required to post

$61,000 bond for administrative costs that class will suffer as a result of delay in distribution from class action settlement).

### C. CLASS COUNSEL ARE ENTITLED TO A BOND FOR THE COSTS OF PRINTING AND COPYING AND PREPARATION OF ANY SUPPLEMENTAL RECORD.

FRAP 7 explicitly provides for costs for printing, copying and preparation of the record. A bond for such expenses is routine and need not be requested with specificity given the number of unknowns that counsel face when asking for such a bond. "Costs that may be taxed in an appeal bond include the costs of preparing and transmitting the record, costs of obtaining necessary transcripts, printing costs, and other copying costs." *In re Uponor*, *3 ("Courts routinely approve bonds for appeal-related costs of $25.000.") *See In re. Ins. Brokerage Antitrust Lit.*, 2007 WL 1963063 at *2-3 (D.N.J. July 2, 2007) ("Iaad O, however, contends that $25,000 is an exorbitant bond, and that it is impossible that the costs associated with this appeal will reach that amount. Iaad O claims that the copying, transcript and filing costs are minimal, and would not exceed $1,000 (based on a calculation of volume rates for copying and rates for binding). Further, Iaad O contends that to justify the $25,000 bond, Plaintiffs should submit affidavits stating the copying service they intend to use, the transcripts they will require and whether the transcripts have been prepared, and other costs they anticipate incurring in defending this appeal. Iaad O does not offer any case law in support of its argument that Plaintiffs be required to make some sort of delineated showing of costs for a bond motion. Plaintiffs contend that it is not possible to anticipate all of the potential costs of a multi-party appeal, and so $25,000 is a reasonable amount. In addition to the printing and administrative costs associated with an appeal, as discussed in Rules 7 and 39, it is possible that the Plaintiffs will face different issues from different appellants, which may increase the expenses. Accordingly, this Court

concludes that a $25,000 bond is reasonable, and Iaad O and the objectors appealing the Zurich Settlement will be jointly and severally responsible for posting the bond.") (citations omitted). As in *Insurance Brokerage*, a decision rendered under cost assumptions in existence seven years ago, Plaintiffs and Class Counsel here seek a bond of $25,000 from ***each appellant*** to cover the expense of appeal. *Compare Shames v. Hertz Corp.*, 2013 WL 3155019 at *1 (S.D. Cal. June 18, 2013) (finding "an appeal bond is warranted and the amount of $15,000 requested by Class Counsel is reasonable" and stating that appellants "Hansmeier and Lavery must separately post $15,000 each, Perle, Bishop, de Julius and Cesare must post $15,000 as a group since they filed their appeal as a group represented by the same counsel.").

## II. AN APPEAL BOND OF $1,007,294 IS APPROPRIATE UNDER THE FACTS AND THE LAW.

In evaluating a bond request in an appeal of settlement final approval in a class action,

> courts generally consider the following factors in determining whether an appeal bond is appropriate: (1) the appellant's financial ability to post a bond, (2) the risk of nonpayment of appellee's costs if the appeal is unsuccessful, (3) the merits of the appeal, and (4) bad faith or vexatious conduct on the part of the appellants. *In re Uponor,* 2012 WL 3984542, at *2. As an initial matter, the trial Court recognizes that it is its place to determine whether an appeal is frivolous. However, the merits of an appeal may be relevant to the risk of nonpayment, "in that if the appellant is pursuing a clearly frivolous appeal one might infer that the appellant is abusing the judicial process and thus has no intention of paying any costs taxed on appeal."

*Id.* at *2 (quoting *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,* 2010 WL 4630846, at *1 (E.D.Wis. Nov.2, 2010)). *See also In re Nutella Mktg. & Sales Practices,* No. 11-1086, 2012 U.S. Dist. LEXIS 172006, at *5-8 (D.N.J. Nov. 20, 2012) (assessing a $22,500 bond on appealing objectors after observing "the unresponsiveness of the Objectors' briefs in the present motion, coupled with the fact that the Objectors appear to be objectors who repeatedly raise objections in class actions around the country, further suggest that their appeal in

8

this case is meritless."); *Allapattah Servs., Inc. v. Exxon Corp.,* 2006 WL 1132371 at *18 (S.D. Fla. Apr. 7, 2006) (objector to $1 billion class action settlement required to post bond of $13.5 million in event of appeal on behalf of entire class to cover damages, costs, and interest as result of delay); *Barnes v. FleetBoston*, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) (appealing objector required to post bond of $645,111.60 to cover costs and interest for anticipated one-year delay in distribution of $12.5 million settlement to class); *In re Broadcom Corp. Sec. Litig.*, Case No. SACV 01-275 DR (MLGx), 2005 U.S. Dist. LEXIS 45656, at *9-11 (C.D. Cal. Dec. 9, 2005) (ordering objector to post appeal bond of over $1.2 million in response to appeal of final order approving class action settlement); *see also In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 352 (E.D.N.Y. 2010) ("If the issue was of moment, the court would consider requiring an appealing objector to post an appropriate bond to protect the value of the settlement to the class members.").

The objectors have all read the settlement, and they know that by simply filing an appeal, the settlement, by its terms, as is the case with all class action settlements, is stayed from going into effect. For this reason, courts have imposed appeal bonds for costs of delay under FRAP Rule 8. See *In re. Checking Account Overdraft Litigation,* 2012 WL 456691 at *2 (S.D. Fla. Feb. 14, 2012) (imposing $621,338 bond and stating that "Objector–Appellants insist that they cannot be required to post a *supersedeas* bond under FRAP 8 because they have not sought a stay. However, because the filing of this appeal prevents distribution of the Settlement proceeds as ordered by this Court's Final Judgment, it is an actual stay of Judgment and bond is appropriate."). The Court in *In Re Checking Account* acknowledged that costs to be included in an appeal bond are not limited to costs under Rule 39(e) but also may include at least a partial preservation of the status quo on behalf of the Class, relying in part on *In re Broadcom Securities*

9

*Litig.,* SACV 01–275 (C.D.Cal. Dec. 5, 2005) (requiring bond including costs of delay equaling $517,700).

### A. PUTATIVE APPELLANTS HAVE NOT DEMONSTRATED A FINANCIAL INABILITY TO POST THE BOND THAT CLASS COUNSEL SEEK HERE.

A bond is typically secured by paying 10% of the face value. Thus, if each Appellant here were required to post a $500,000 bond, it would cost $50,000 for the bond to be paid for. None of the putative appellants has demonstrated they lack the financial ability to post such a bond, and the burden is on the putative appellants to make such a showing. *See Heekin*, 2013 WL 752637 at *2 ("In this case, the Court finds that a bond is appropriate. First, neither Mr. DeJulius nor Mr. Paul has submitted to the Court that they are unable to financially sustain a bond."). *See also In re Pharmaceutical Industry Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (imposing a bond where "[t]here is no evidence that a bond would pose an undue hardship on the objector").

### B. THERE IS A SUBSTANTIAL RISK OF NON-PAYMENT IF THE APPEAL IS UNSUCCESSFUL.

If a sizable bond is not required, the putative appellants would be liable for the full amount of the costs, and not just the 10% bond premium. Given that the expenses and losses to be bonded against here are substantial, there is no evidence that the Appellants have the financial ability to make such a payment. Further, the Appellants reside in the Sixth and Second Circuits and Class Counsel would have to file suit in the objectors' home districts to try to collect on any appeal cost related judgment. Such circumstances further weigh in favor of a Rule 7 appeal bond. *See In re Initial Pub. Offering Sec. Litig.,* 2010 WL 2884794, at *1-5 (S.D.N.Y. July 20, 2010) ("the Objectors are dispersed around the country and none has offered to guarantee payment of costs that might be assessed against them. In the event the Objectors are unsuccessful

on appeal, plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs. As a result, there is a significant risk of non-payment."); *Fleury v. Richemont North America, Inc.*, 2008 WL 4680033, at *7 (N.D. Cal. Oct. 21, 2008).

### C. THERE IS NO MERIT TO THE APPEALS.

The likely merits of the appeal also factor into this Court's decision to set an appeal bond. It is recognized that "a district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal." *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) (citation omitted). Objectors received a thorough hearing from this Court, and under the abuse of discretion standard, the appeal is highly unlikely to be successful. The baselessness of Mr. Dorsey's objections were comprehensively rebutted in Class Counsel's filings with this Court, and the lack of merit in Ms. Nelson's appeal concerning Michigan class members was recently reiterated by the 8th Circuit's recent rejection of a similar objector argument in *In. re Uponor, Inc.,* Case Nos. 12-2761 and 12-3179 (8th Cir. June 7, 2013).[3]

Such a weighing of the Appellant's likelihood of success on appeal is entirely appropriate in the context of setting a bond. *Compare IPO*, 721 F. Supp.2d at 214 ("the Objectors contend as an initial matter that it is not for the district court to decide whether an appeal has merit. However, in upholding a district court's order for a Rule 7 bond, the Second

---

[3] In *Uponor*, a California resident had asserted that the California Right of Repair Act "does not require proof of leak or differential water flow to recover damages" and that therefore this law "affords Californians a broader remedy than that available under the settlement", an argument strikingly similar to Ms. Nelson's argument that Michigan law would afford her broader relief. *Uponor* Slip Op. at 5. The *Uponor* Panel rejected this contention finding that California class members were adequately represented even though there was no California class representative, and that "[t]he objectors [] have provided no reason why they could not have simply opted out of the class and instead chosen to pursue their claims separately under California law." *Id.* at 9.

11

Circuit unequivocally rejected the argument that a district court may not forecast the merits of the appeal. Having considered the Objectors' arguments on appeal, I predict that the October 5 Opinion and Order will be affirmed. Class action settlements are reviewed on appeal for abuse of discretion and there is nothing to suggest that this Court will be reversed on appellate review.").

### D. PUTATIVE APPELLANT'S APPEAL IS VEXATIOUS.

By pursuing her intended appeal, Ms. Nelson, solely for the putative benefit of less than 2% of the settlement class, seeks to hold hostage the significant settlement proceeds to be distributed to the Class as a whole. Mr. Dorsey seeks to hold the same class hostage even without obtaining the representation of experienced counsel who could inform him of the lack of merit in his appeal. Mr. Dorsey's intention to recklessly proceed in this matter despite the potential harm his appeal could cause is vexatious. Objectors with such goals "undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients." *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010).

### CONCLUSION

For the reasons stated herein, Plaintiffs and Class Counsel respectfully request that this Court grant their request for an appeal bond in the amount of $1,007,294, or whatever amount this Court deems appropriate, to cover the potential costs of this appeal, such amount to be paid joint and severally by the two appealing objectors.

**Dated: August 12, 2013**             **Respectfully submitted,**

                                                    /s/ Richard J. Burke

                                                    Richard J. Burke
                                                    **COMPLEX LITIGATION GROUP LLC**

1010 Market Street, Suite 1340
St. Louis, MO 63101
(847) 433-4500
rich@complexlitgroup.com

Paul M. Weiss
Jeffrey A. Leon
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave., Suite 300
Highland Park, Illinois 60035
(847) 433-4500
paul@complexlitgroup.com
julie@complexlitgroup.com

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market St., Suite 1380
Philadelphia, PA 19102
(215) 564-2300
jshub@seegerweiss.com

**Class Counsel for Plaintiffs**