# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **09-cv-00938-JLK-KMT** (consolidated with No. 10-cv-00765-JLK)

**JAMES P. TENNILLE, ROBERT SMET, ADELAIDA DELEON and YAMILET**

**RODRIGUEZ**, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

**THE WESTERN UNION COMPANY and WESTERN UNION FINANCIAL SERVICES, INC.**,

    Defendants.

## ORDER FOR ARGUMENT ON CLASS COUNSEL'S MOTION
## FOR ATTORNEY FEES (Doc. 195)

Kane, J.

This nationwide class action was the subject of a global settlement approved on June 24, 2013. I have described the Settlement as "remarkable" given the scope and difficulty of Plaintiffs' case and the nature of the relief obtained. The Settlement secured, for individual Plaintiff Class members, notice and the immediate return of unclaimed transfers that had previously been withheld until the customer learned of the fact or until the funds were ready to escheat under the various states' unclaimed property laws, as well as the time value (interest) on those funds that Western Union had previously been keeping for itself. Significantly, the Settlement also compelled Western Union to change

its business practices in the future, requiring the Company to notify customers of any unclaimed transfers and provide an immediate and fee-free procedure for their return. This change is dramatic and sweeping, however it inures to the benefit of individual Class members only to the extent they continue to use Western Union's wire transfer services after the date of the Settlement. It benefits new and future Western Union customers for however long Western Union continues to do business.

The settlement agreement cleaved the subject of attorney fees and costs from the settlement itself, providing simply that Class Counsel would "file an application" for reasonable attorney fees and case expenses within 45 days of the final approval hearing. Counsel did so, seeking and, predictably, its "Motion for Approval of Attorney Fees, Costs, and Expenses and for Approval of Incentive Awards" (Doc. 195) was met with opposition. I referred the Motion, together with Defendants' Response and related Motion to Strike Affidavits (Doc. 208),[1] to Magistrate Judge Tafoya.

In a written Recommendation dated December 31, 2013 (Doc. 315), the magistrate judge rejected the Motion to Strike Affidavits and applied the "common fund" doctrine to recommend a fee award of $22,946,208, plus a total of $30,000 in individual class representative incentive awards. The recommended fee was calculated as a percentage of the combined value of the $19 million in interest recouped for the Class and $45,560,596,

---

[1] The Motion to Strike was directed to the Affidavits of Larry R. Johnson (Doc. 200) and Brian T. Fitzpatrick (Doc. 197), filed in support of Class Counsel's Motion for Fees, "and all references in the Fees Motion to either." *See* Motion (Doc. 208) at 2.

representing the present value, based on expert accountant methodologies, of the prospective injunctive relief ordered as part of the settlement. The magistrate judge determined the injunctive relief was a common benefit to the Class because members were "likely to remain Western Union customers" in the future. Given that the recommended award was less than Class Counsel requested but more than Defendants and certain individual class believe was warranted, objections were filed.

I have reviewed and considered and pondered the attorney fees issue in this case and am ordering Class Counsel's Motion for Attorney Fees set for oral argument. My concerns, which I want addressed at the hearing, include the following:

1. *The CSF as a benefit in itself*. The Class Settlement Fund, comprised of the universe of unclaimed wire transfers in the possession of Western Union at the time of settlement, *does* confer a "common benefit" on the class notwithstanding the fact that the unclaimed wire transfer funds themselves remained the property of individual transferors and were always recoverable on demand. The dispossession of those moneys and the placement of them into a fund for disbursement to individual class members benefitted the Class by *notifying* individuals who previously may never have known that a transfer had gone unclaimed; *guaranteed* the return of those funds when their return would otherwise have required individual demands, litigation, negotiation, and/or arbitration; and guaranteed the return without requiring the *administrative fee* individual thwarted

transferors would, but for the Settlement, have had to have paid to get their money back.[2] This notice and fee-free return guarantee constitutes a real and tangible value to the Class, and that value should be included in the "common fund."

What that value is may be difficult to ascertain, but I trust it can be done. I have my own ideas, but would like concrete and substantive suggestions from the parties as well.

2. *Injunctive Relief.* I consider the injunctive relief negotiated by Class Counsel to be the single most significant and praiseworthy fruit of Counsel's labors in this litigation. However, I agree the prospective nature of the relief is problematic for Class Counsel in any "common fund" analysis of attorney fee remuneration. The relief, simply by definition, does not benefit the *Class* of Western Union customers that is defined and certified as the operative Class in the Final Settlement Agreement.[3] While I have no

---

[2] The CSF also repatriates some percentage of unclaimed funds that would otherwise have been lost to escheatment. Is this not also a benefit conferred by the Settlement on that percentage of Class members who would have lost their principal in the absence of this litigation and resulting Class Action Settlement?

[3] The Amended Final Judgment in this case confirmed the certification, for Settlement purposes, of the following Plaintiff Class: for purposes of the Settlement preliminarily approved on January 3, 2013 (Doc. 175):

> All persons (a) who initiated any Western Union Transaction in the United States on or after January 1, 2001 and on or before the date of Preliminary Approval, whose Western Union Transaction was not completed within 60 calendar days; and (b) who either (i) have not claimed their money transfer funds (nor had that money claimed on their behalf) from Western Union; or (ii) were informed by written communication that their money was about to escheat to the state, district, territory, or U.S. jurisdiction in which their money transfers were initiated, and who sought and received a refund of their money but did not receive a payment for interest Western Union earned on that money. Excluded from membership in

problem presuming, as the magistrate judge did, that Western Union customers generally are repeat customers and that individual members of the Class "will likely remain" Western Union customers in the future (and therefore realize an actual benefit in the changed business practices Western Union will employ from the date of Settlement forward), I am confident this presumption, if adopted, will be litigated on appeal (as will, it should be noted, Western Union's standing to take such an appeal under Rule 23(h)(2)). This likelihood impacts all of the relevant players adversely by delaying final disposition and increasing litigation costs.

Accordingly, at oral argument I want to hear the evidentiary basis for the assertion that current Western Union customers will remain Western Union customers: What percentage of Western Union's customers are repeat customers? Can this percentage be used to generate a percentage of Class members who will benefit from the injunctive relief? If so, what is the present value of that benefit? Can that value be characterized in terms of the interest income Western Union will forego in the future as a result of the injunctive relief ordered?

*

In short, if my experience in handling this case from its outset convinces me of one

---

the Class are the following: (1) Western Union and its affiliates, and officers and employees of Western Union and its affiliates; (2) persons who timely and validly exclude themselves from the Class; (3) state and federal governmental entities; and (4) the judge to whom this case is assigned and any member of the judge's immediate family.

Am. Jm. (Doc. 256) at 2.

thing it is this: Class Counsel undertook this litigation at great risk and achieved a sweeping and manifestly just result. Class Counsel's lodestar (Doc. 290) does not begin to compensate it for its undertaking and any fair and reasonable award based on it would include a multiplier probably unprecedented in my courtroom. I am convinced the CSF conferred a real and tangible benefit on the Class that individual Class members would have foregone but for Counsel's efforts. This benefit is categorically different from the unclaimed transfer funds themselves, and I agree with the magistrate judge that a fee request based on a percentage of those funds is excessive. But the value of the notice and fee-free return guarantee that the CSF represents exists and should be added to the $19 million in recovered interest income. With regard to the injunctive relief, I am troubled by its inclusion in the "common fund" because it is prospective relief that operates by definition after the Class period ends, but am amenable to including a value for this relief to the extent there is an empirically established nexus between the benefit conferred and the Class. Accordingly,

IT IS ORDERED THAT on or before July 17, 2014, Class Counsel shall have conferred with each of the parties who have filed an Objection to the magistrate judge's Recommendation and shall call in for a date to hold argument on their Motion for Attorney Fees (Doc. 195). If any party desires to present evidence, Class Counsel should so state and I will accommodate the request. *I encourage the parties to think long and hard about their options coming in to oral argument, and to be creative in achieving the purposes laid out above without need for further litigation.*

Dated July 8th, 2014.

                                                **s/John L. Kane**
                                                SENIOR U.S. DISTRICT JUDGE