**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Judge John L. Kane

Civil Action No. **09-cv-00938-JLK-KMT** (consolidated with No. 10-cv-00765-JLK)

**JAMES P. TENNILLE, ROBERT SMET, ADELAIDA DELEON and YAMILET**

**RODRIGUEZ**, individually and on behalf of all others similarly situated,

     Plaintiffs,

v.

**THE WESTERN UNION COMPANY and WESTERN UNION FINANCIAL**
**SERVICES, INC.**,

     Defendants.

---

**ORDER MODIFYING MAGISTRATE JUDGE'S RECOMMENDATION re**
**ATTORNEY FEES**

---

Kane, J.

     This nationwide class action was the subject of a global settlement approved on

June 24, 2013. Under the terms of the settlement, Western Union agreed to disgorge all of

the remaining unclaimed wire transfer funds in its possession and deposit them into a

Class Settlement Fund (CSF) for disbursement to class members.  Until the settlement,

Western Union's business practice had been to hold onto unclaimed funds for as long as

possible, leveraging them for interest income until customers either discovered the

transfer failure and asked for their money back or the funds escheated under state

unclaimed property statutes. In addition to the creation of the CSF, the settlement also

1

wrought wholesale changes to the way Western Union agreed to do business in the future. Specifically, Western Union agreed that from the date of settlement forward it would no longer keep mum when attempted transfers failed, but would notify customers within 60 days and facilitate the funds' return.  Finally, Western Union agreed to reimburse class members for the time value of their unclaimed transfer funds withheld – to the tune of $19 million – and to pay small incentive awards to individual class representatives. Victory for class members and current and future Western Union customers worldwide was virtually complete.  At the final approval hearing, I described the settlement as "remarkable."

The question of attorney fees was cleaved from the settlement, with the Agreement providing simply that Class Counsel would "file an application" for reasonable attorney fees and case expenses within 45 days of the final approval hearing. Stipulation and Agreement of Compromise and Settlement, ¶ 5A (Doc. 172-2, p. 29/48). The Agreement specifically provided that Western Union would have the right to object. *Id.*

Class Counsel filed its Motion for Approval of Attorney Fees, Costs, and Expenses and for Approval of Incentive Awards on April 30, 2013 (Doc. 195), requesting a fee award equal to "30% of the Class Settlement Fund as determined by the Court pursuant to the Settlement Agreement" plus $7500 in incentive awards for individual class representatives.  At the time, the CSF was estimated at a $180 million cash value,

resulting in a fee request in the area of $54 million.[1] Because the CSF included neither the $19 million in interest nor any dollar value for the change in business practices, Class counsel argued their fee request was both conservative and reasonable.

The request met with opposition, less from individual class members than from Western Union, which denied the CSF constituted any new "benefit" to the Class because it was comprised of funds that never lost their character as property of the class and were always either eventually returned or left to escheat to the state.  The only "new" and quantifiable[2] benefit of the settlement, according to Western Union, was the $19 million in interest income Western Union agreed to refund. Accordingly, Western Union argued the fee award in this case should be limited to a percentage of the $19 million in returned interest and nothing more.  In addition, Western Union sought to strike the affidavits of Plaintiffs' forensic accountant, R. Larry Johnson (Doc. 200), and class action specialist Brian T. Fitzpatrick (Doc. 197), "and all references in the Fees Motion to either." *See* Motion to Strike (Doc. 208) at 2. Mr. Fitzpatrick's affidavit supported the use of the CSF as the "common fund" basis for awarding fees in this case and the reasonableness of

---

[1]  Over time, any diminution in the cash value of the CSF as a result of interim escheatment of funds to the state would decrease the amount of the fee award.  Class Counsel therefore busied itself negotiating individual stays of action on escheatment statutes with individual states.

[2]  The possibility that individual class members might recoup funds that had already escheated to the states, or might benefit from the prospective relief by remaining Western Union customers whose transfers may fail to complete in the future, were too tangential and too speculative, according to Western Union, to constitute quantifiable benefits, conferred by the settlement, on the existing class.

Class Counsel's request given the substantial additional benefits obtained, and Mr.

Johnson's affidavit provided an economic basis for assigning a present monetary value to

the prospective relief to support the conservative nature of the CSF-based fee request.

I referred the Motion for Fees, the related Responses and Objections, and the

Motion to Strike to Magistrate Judge Tafoya for recommendation.  In a written decision

dated December 31, 2013 (Doc. 315), the Magistrate Judge denied the Motion to Strike,

considered the subject affidavits, and recommended a fee award of $22,946,208 – less

than half the amount Class Counsel requested.  The decision was lengthy and complex,

reflecting a compromise between the two sides' positions.  The Magistrate Judge adopted

Western Union's critique that CSF was comprised of funds that "already" belonged to the

Class and was therefore not a benefit "conferred by the Settlement," but used Mr.

Johnson's affidavit to assign a $46.5 million value to the prospective relief.  Finding

many class members "were likely to remain" Western Union customers, the Magistrate

Judge rejected Western Union's contention that the prospective relief provided no benefit

to the existing class.  The Magistrate added the present value of the prospective relief to

the $19 million in interest, and recommended a fee award equal to 35% of that

combined "common fund."  With the individual incentive awards, the total recommended

fee award was $22,946,208.

Both sides were unhappy with the Recommendation. Plaintiffs challenged the

decision to exclude the CSF from the calculus of benefits conferred by the settlement, and

Western Union reiterated its position that the only new and quantifiable benefit conferred

4

by the Settlement was the requirement that Western Return to class members the $19

million in interest on unclaimed transfer funds that Western Union would otherwise have

kept for itself.  I set the matter for oral argument on September 3, 2014, expressing

concern at the tenuous nexus on which the Magistrate Judge's prospective relief present

value calculations depended and disagreeing that the CSF added no "new" or actual value

to the Class.  At the conclusion of arguments that day, I took the matter under advisement.

I issue my rulings below.

*Standard of Review.*

My review of the Magistrate Judge's Recommendation is *de novo* under Fed. R.

Civ. P. 72(b) as to the portions of the Recommendation to which written objection is

made, and I may accept, reject, or modify the Recommendation under that standard.  I

have thoroughly considered the written and oral arguments of counsel, together with the

divergent opinions and analyses of various experts.  I am persuaded by Professor

Fitzpatrick's concise and well reasoned analysis and expertise that Class Counsel's fee

request is both reasonable and appropriate.  I therefore GRANT Class Counsel's Motion

for Attorney Fees and ORDER an award of fees equal to 30% of the CSF.

*Background.*

The Settlement Agreement provided four specific types of relief for class

members:  (1) the placement of all unclaimed transfer funds still in Western Union's

possession on the date of Final Approval in a Class Settlement Fund (CSF) trust account

for return to transferors; (2) notification to class members whose unclaimed funds had

5

already escheated to the state of that fact and the establishment of a Class Counsel-assisted process for recovering them; (3) a lump sum payment, on submission of a valid claim form, to individual class members equal to the amount of interest accrued on their unclaimed moneys; and (4) a change in Western Union's policies and practices going forward requiring notice to individual customers within 60-90 days that transfers were not redeemed.  In recognition of their efforts on behalf of the class, the Settlement Agreement also called for the payment of $7,500 to each of the Class Representative Plaintiffs as an incentive award.  The Agreement provided that any funds remaining in the CSF account after full payment of all valid claims, fees, incentive awards and attorney fees and expenses would be placed into a *cy pres* fund subject to distribution upon court order.

Class Counsel's original Motion sought an award of 30% of the total value of the CSF under the theory that the CSF constituted a straightforward and conservative estimate of the "common fund" of benefits conferred by the settlement through Class Counsel's efforts.  The Magistrate Judge disagreed, reasoning that unclaimed transfer funds had always been returnable to customers on demand and that the real benefit of the litigation was in the recoupment of the *interest* Western Union earned on those funds while wrongfully holding onto them and the injunctive relief that will prevent Western Union from taking advantage of its customers in this manner in the future.

The principal objection at issue is Class Counsel's assertion that, by excluding the CSF from the "common fund" of benefits conferred by the Settlement, the Magistrate Judge ignored the real and actual value the recoupment of those monies represent and

6

thereby undervalued Class Counsel's efforts to a significant degree.  Defendants object to the recommended fee award to the extent it is premised on a speculative valuation of what the prospective relief means to the former Western Union customers that form the membership of the Class. Both objections have merit.[3]

*Discussion.*

I incorporate the Magistrate Judge's statement of the case and procedural history at pages 2-7 of her Recommendation.  Briefly recounted, this litigation posed a nationwide challenge to Western Union's practice of declining to notify customers when an attempted wire transfer went unclaimed.  Western Union would hold the funds, generating interest income for itself, returning the principal – for a fee – when the customer realized the failure or when state unclaimed property statutes required Western Union to attempt repatriation.  When repatriation efforts were unsuccessful, Western Union allowed unclaimed funds to escheat to the state.

The parties engaged in robust motions practice over a period of years to narrow their claims and defenses.  Class status, jurisdiction, and venue were all challenged. Settlement was reached while an order denying Defendants' motion to compel individual class members to arbitrate their claims was on appeal to the Tenth Circuit.  The Plaintiff Class was comprised of thousands of individuals with relatively small individual losses.

---

[3] Other objections were received from Class members Paul Dorsey (Docs. 317, 321) and Albert Bacharach (Docs. 324).  I have benefitted from each objector's thoughts and comments in making my ruling regarding fees, but neither changes my ultimate decision.

But for the creativity and perseverance of Class Counsel, these losses would have gone unremedied and the way business was conducted at Western Union would have continued to enrich the company at the expense of their individual, often indigent, customers.  The settlement achieved very real and comprehensive relief for individual Class members and for all Western Union customers now and into the future.  It was, as I characterized it at the final approval hearing, a "remarkable" result.

While I understand the Magistrate Judge's view that the CSF included funds that "always belonged" to Class member transferors and which Western Union would never ultimately or permanently retain, I do not agree that these funds may not therefore form the basis for a fee award.  While technically correct, the Magistrate Judge's view fails to recognize the practical effect of the successful actions taken by Plaintiffs' counsel.  In the real world, the amounts owed to each member of the class are small, thus detracting from an incentive to comply with the detailed requirement for refund, and the anticipated delays in receiving payment.  So, too, the transient habits of many customers who actually use wire transfer services suggest that without notice and assistance developed through collection efforts, the return of these funds is highly speculative, if not, indeed, aspirational.  The value of the Class Settlement Fund puts the bird in the hand rather than in the bush.  It cannot be demonstrated, as a practical matter, that simply because the funds are locatable that they can be retrieved without additional, probably preclusive, cost and effort.

As stated above, I am persuaded by the Declaration of Professor Brian T.

8

Fitzpatrick and his view, after thoroughly evaluating the fee request in light of the

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) factors and his

comprehensive empirical study of class action settlement and fee awards, that the fee

request is well within the ambit of reasonableness and propriety.  Thirty percent of the

cash portion of the settlement is a lower percent than has been used in other cases and

well within the range accepted by the Tenth Circuit Court of Appeals. This is especially

true where, as here, the cash fund is but one aspect of the settlement and therefore

understates the real and actual value realized.  That these benefits are difficult to reduce to

actual or present monetary value does not mean they were not conferred.  They were, and

Class Counsel deserves credit for that.

I am also convinced, however, of the folly in attempting to reduce to a dollar

amount the present value of the prospective relief obtained in the Settlement.  One look at

the assumptions, regression analyses, probabilities, and caveats employed to attribute a

value, to the Plaintiff Class of *past* Western Union customers, of a change in business

practices that does not take effect until the date of Settlement and beyond, portends

nothing but further appeal and uncertainty.  Class Counsel's original fee request is the

best and most reliable basis on which to calculate a reasonable fee award in this case, and

I adopt it without reservation. Based on the foregoing, IT IS ORDERED THAT

1.  Class Counsel's Motion for Attorney Fees (Doc. 195) is GRANTED;

2.  Western Union's Motion to Strike the Affidavits of Messrs. Fitzpatrick and

Johnson and Request for Attorney Fees (Doc. 208) is DENIED;

3.  Class Counsel's Motion to Strike the expert opinions of Professor Shavell and

Michael J. Gallagher (Doc. 350) is DENIED as MOOT.

IT IS FURTHER ORDERED THAT Class Counsel and Western Union shall

CONFER and Class Counsel shall PREPARE a Proposed Order awarding Counsel's

requested fees, costs, and incentive payments for the Court's signature.  The Proposed

Order shall be filed in the normal course in the Court's CM/ECF filing system and

submitted in editable formal to the Kane Chambers email account.  The Proposed Order is

due on or before October 4, 2014.  Counsel are congratulated on jobs exceedingly well

done.

Dated September 23, 2014.

**s/John L. Kane**_____
SENIOR U.S. DISTRICT JUDGE
