FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2016 JAN 11  AM 9: 50

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO
### Judge John L. Kane

Civil Action No. 09-cv-00938-JLK-KMT consolidated with No. 10-cv-00765-JLK

**JAMES P. TENNILLE, ROBERT SMET, ADELAIDA DELEON and YAMILET RODRIGUEZ,** individually and on behalf of all others similarly situated,

Plaintiffs,

v.

**THE WESTERN UNION COMPANY and WESTERN UNION FINANCIAL SERVICES, INC.,**

Defendants.

---

## SETTLEMENT OBJECTOR PAUL DORSEY'S
## MOTION FOR LEAVE TO INTERVENE

---

Pursuant to Federal Rule of Civil Procedure 24(b)(2) ("Permissive Intervention"), putative class member and objector Paul Dorsey, pro se, respectfully submits this Motion For Leave to Intervene in order to accomplish the five limited objectives listed below.

It should be noted that this list of objectives has been modified from the intended list of objectives contained in my previous letter to this court (Doc 411). Specifically, the objectives of filing motions to remove/replace class counsel and to set aside the judgment have been eliminated.

**Table of Contents**

Table of Contents … … … … … … … … … … … … … … … … … … … … … … … 2

Table of Cited Authorities … … … … … … … … … … … … … … … … … … …  3

Objectives … … … … … … … … … … … … … … … … … … … … … … … … …  4

Certification of Conferral under Local Rule 7.1(a) … … … … … … … … … … …  8

Argument
  Ripeness … … … … … … … … … … … … … … … … … … … … … … … …  8
  *Res judicata* … … … … … … … … … … … … … … … … … … … … … … … 11
  F.R.Civ. P. 24   … … … … … … … … … … … … … … … … … … … … … … 11
  Timeliness  … … … … … … … … … … … … … … … … … … … … … … … 11
    1.  Length of Time . … … … … … … … … … … … … … … … … … … … 12
    2.  Prejudice to the Existing Parties   … … … … … … … … … … … … … 13
    3.  Prejudice to the Movant … … … … … … … … … … … … … … … … 14
    4.  Existence of Unusual Circumstances … … … … … … … … … … … … 14
  Claim Shared With Main Action / Common Law or Facts . … … … … … … … 16

Conclusion … … … … … … … … … … … … … … … … … … … … … … … … 16
Certificate of Service … … … … … … … … … … … … … … … … … … … … 17
Exhibit List … … … … … … … … … … … … … … … … … … … … … … … 18

A   [Proposed] Motion by Intervenor Paul Dorsey to Enforce the Amended
    Final Judgment and Order of Dismissal Requirement Regarding the
    Filing of Claim Administrator's Invoices … … … … … … … … … … … … 19
B   [Proposed] Motion by Intervenor Paul Dorsey to Require Defendants to
    Cross-Check Their In-house Databases Before Disclosing the "Last Known
    Address" of Class Members to the Claims Administrator .. … … … … … … … 23
C   [Proposed] Motion by Intervenor Paul Dorsey to Reconcile Conflicting
    Declarations Made by Defendants and Claims Administrator Regarding
    Class Size … … … … … … … … … … … … … … … … … … … … … … 31
D   [Proposed] Motion by Intervenor Paul Dorsey to Require Defendants to
    Disclose and Declare Level of Compliance With Previous Court Order
    Regarding "Last Known Address" of Class Members … … … … … … … … 36
E   [Proposed] Motion by Intervenor Paul Dorsey to Require Claims
    Administrator to Disclose Additional Information Regarding Previous
    Declaration   … … … … … … … … … … … … … … … … … … … … … 41

## Table of Cited Authorities

**Cases:**

*City of Golden v. Parker*, 138 P.3d 285 (Colo. 2006) .. … … … … … … … … … … 28

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)  … … … …  22, 29, 34

*Morris v. City of Hobart*, 39 F.3d 1105 (10th Cir. 1994)  … … … … … … … 22, 30, 34

*NAACP v. New York*, 413 U.S. 345 (1973) … … … … … … … … … … … … … 11

*New Design Constr., Inc. v. Hamon Contractors, Inc.*,
215 P.3d 1172 (Colo. App. 2008)   … … … … … … … … … … … … … … 28

*Oklahoma ex rel.Edmondson v Tyson Foods, Inc*, 619 F.3d 1223 (10th Cir. 2010)…12, 13

*Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416 (10th Cir. 1984) .… … … … 11, 12

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) … … … … … … … … … 12, 13

*Stupak-Thrall v. Glickman* 226 F.3d 467 (6th Cir. 2000) .. … … … … … … … … 12

*Tennille v. Western Union Co.* 785 F.3d 422 (10th Cir 2015) .. … … … … … 10, 25, 28, 38

*United Nuclear Corp v Cranford Ins. Co.*, 905 F.2d 1424 (10th Cir 1990) … … … … 14

*Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001) … … … … … 12, 13

**Rules:**

D.C.COLO.L.CivR 7.1(A) .. … … … … … … … … … … … … … … … … … *passim*

Federal Rule of Civil Procedure 24 . … … … … … … … … … … … … … … 1, 11, 14

United States Supreme Court Rule 44  .. … … … … … … … … … … … … … 8

**Other Authorities:**

Federal Practice and Procedure, Wright, Miller & Kane, 3d ed. Vol 7C § 1916  … … 13

**Objectives:**

**1)** To seek this court's enforcement of that portion of this court's amended final order that is currently being ignored by lead class counsel. Specifically, the requirement that class counsel file with the court "every three months" the administrator's invoices of expenses incurred, starting with the <u>date of Final Approval</u> (June 25, 2013 - see Doc 256, ¶29 at page 12). I note that the Settlement Agreement pegs the start date for the filing of the administrator's invoices as of the <u>Settlement Effective Date</u> (see Doc 172-2, ¶3.B and ¶3.C at page 17). If this motion for intervention is granted, I will file a motion substantially similar in form to that shown in Exhibit A. Alternatively, this court, *sua sponte,* could simply order enforcement of its original order.

**2)** To seek this court's interpretation and enforcement of the Settlement Agreement under Colorado law, which imposes an implied duty of good faith and fair dealing on the parties to every contract. Specifically, this court needs to ensure that the Claims Forms and the Escheat Recovery Forms and Instructions (hereinafter, "Benefit Package") will be mailed to the last-known mailing addresses of the putative class members, as required by the language – garbled language, to be sure, but language never-the-less - of the Settlement Agreement (see Doc 172-2, ¶3.F.3 at page 22).

A good faith effort to obtain the last known mailing addresses of the putative class members requires a cross-check of Western Union's numerous in-house customer

databases – including databases that contain post-class period transactions – followed by a final cross-check of the post office's national change of address database.

By way of a short example, if customer Jose Smith (Gold Card Customer # 123456) of 1 Main Street, Denver, CO made a money transfer in 2007, which remains unredeemed, then moved to Durango, CO in 2010 and made another money transfer that was redeemed "within minutes" of it being sent, then the Benefit Package should be sent to Mr. Smith's Durango, CO address.

I note that the Tenth Circuit ruled it was not constitutionally necessary to first cross-check Western Union's in-house databases before mailing out the Class Notice. In my previous letter to this court (see Doc 411), I stated my intention to challenge that ruling in the Supreme Court of the United States. And, in fact, I have petitioned for a writ of certiorari (see Doc 417).

In any event, the upcoming mailing of the Benefit Package is governed by the specific terms of the Settlement Agreement, as interpreted by this Court. Accordingly, the Tenth's Circuit's decision with regard to the mailing of the initial Class Notice is not a controlling, relevant legal authority as to the mailing of the Benefit Package. If this motion for intervention is granted, I will file a motion substantially similar in form to that shown in Exhibit B. Alternatively, this court, *sua sponte*, could simply mandate the cross-checking prior to the mailing of the Benefit Package.

**3)**  To seek an investigation into the difference between the 1,911,955 "distinct customers" in the class member data provide to the Administrator, per the declaration in Western Union's filing (see Doc 356-1, ¶5 on page 2) and the "total of 1,373,451 individual Class member records" per declaration of the Administrator (see Doc 227-2, ¶22 at page 10).  Class Counsel, Western Union and this Court have a duty to ensure that any mistake made in the mailing of the Class Notice is not repeated in the possible upcoming mailing of the Benefit Package.  If this motion for intervention is granted, I will file a motion substantially similar in form to that shown in Exhibit C.  Alternatively, this court, *sua sponte*, could simply mandate the cross-checking prior to the mailing of the Benefit Package.

**4)**  To seek a declaration from Western Union, clearly written in plain English and signed under oath – and filed with this Court and made part of the public record - stating that they did not, in fact, update <u>any</u> addresses by cross checking their in-house databases before turning over the names and addresses of class members to the Administrator: that as a result, <u>ever</u> transaction turned over to the Administrator contained only the original, stale address provided by the customer/class member at the time of his initial transaction.

Or, if appropriate, to seek a declaration from Western Union, clearly written in plain English and signed under oath – and filed with this Court and made part of the public record – stating that they did, in fact, update class member addresses by cross checking their in-house databases before they turned over names and addresses of class

members to the Administrator. The declaration will disclose the number of class member addresses that were updated and the number of addresses that were not updated. If this motion for intervention is granted, I will file a motion substantially similar in form to that shown in Exhibit D. Alternatively, this court, *sua sponte*, could simply order Western Union to make the appropriate declaration.

**5)** To seek a declaration from the Administrator, clearly written in plain English and signed under oath – and filed with this Court and made part of the public record – that discloses and/or admits:

A) how many of the 1,306,725 class notices that were mailed out in the initial first class mailing (see Doc 227-2, ¶24 at page 11) were addressed to the same original address provided by the customer at the time of the initial transaction;

B) how many of the 1,306,725 class notices that were mailed out in the initial mailing were actually mailed to addresses that were changed/updated due to the use of the post office's National Change of Address database service; and

C) that after the initial mailing of 1,306,725 class notices, the Administrator re-mailed 77,264 class notices to different, updated addresses (1,125 obtained from USPS corrections and 76,139 obtained from LexisNexis' "ALLFIND" service); however, only 3 (three) of these re-mailings were successful (see Doc 227-2, ¶25 at page 11).

If this motion for intervention is granted, I will file a motion substantially similar in form to that shown in Exhibit E. Alternatively, this court, *sua sponte*, could simply order the Administrator to make the appropriate declaration.

## CERTIFICATION OF CONFERRAL UNDER D.C.COLO.LCivR 7.1(a)

In accordance with D.C.COLO.L.CivR 7.1(A), I conferred with lead class counsel (via email) and with counsel for Western Union (via telephone). Both indicated that they do not consent to this motion. There was also some additional "conferring" with lead class counsel via dueling letters to this court. See Docs 411 & 410.

## ARGUMENT

**Ripeness:** This motion for leave to intervene is ripe for this court's consideration because the Supreme Court has not yet announced its decision to grant or deny my petition for a writ of certiorari.

On the one hand, should my petition (and that of fellow objector Sikora Nelson) be denied, the Settlement Effective Date will not occur for another twenty-five days (allowing for a motion for reconsideration to be filed by Nelson or me. See Supreme Court of the United States Rule 44 and Doc 172-2, "Settlement Agreement" ¶1.V at 7). Then, the Claims Administrator will have an additional 75 days in which to mail the Benefit Packages to class members (*id*, ¶3.F.5). The actual refund checks won't

be mailed until six months after the Settlement Effective Date.[1] Accordingly, this Court will have sufficient time to decide how vigorously it wants to enforce the terms of the Settlement Agreement with regard to the mailing of the Benefit Package to the "last known address" of class members without disrupting the scheduled mailing of that Benefit Package.

On the other hand, should the Supreme Court grant my petition (or that of fellow objector Sikora Nelson), then Class Counsel will have one last chance to fulfill the promise it made to this court when it sought an appeal bond for $1,007,269: "The Class will incur the cost of supplemental notice which Class Counsel will ask this Court to approve so that the Class can remain fully informed . . . " (Doc 268 "Class Plaintiffs' Motion for Appeal Bond" at 2). After I pointed out the inconsistencies in class counsel's representations to this court versus the court of appeals (see Doc 287), Class Counsel insisted that they would, in fact, send a notice to the class (given certain conditions):

> "As for Mr. Dorsey's query as to whether Class Counsel intend to ask this Court permission to send supplemental class notice, the answer is yes, subject to whether the bond has been posted – if the bond has not been posted, the appeal is not permitted and there is no need for supplemental notice because the settlement distribution will no longer be delayed by the pendency of the appeal. If Ms. Nelson and/or Mr. Dorsey post the required bond, then Class Counsel do intend to seek approval to send supplemental

---

[1] The Settlement Agreement doesn't openly impose a six month delay on the mailing of refund checks. Instead, the Agreement sets up an administrative scheme whereby: 1) attorney fees are paid "within 3 calendar days" of the Settlement Effective Date (Doc 172-2, "Settlement Agreement" ¶5.A); 2) a six month window is created for the timely submission of claim forms (*id*, ¶3.G.3); and 3) "In the event that there is not sufficient money in the Class Settlement Fund to pay in full valid claims, then valid claims will be paid *pro rata*." (*id*, 2.A.4). Hence, a *de facto* six month delay.

notice unless the Court of Appeals significantly expedites consideration of the appeals." (Doc 284, e-filed ahead of Doc 287).

I posted the required bond, as did Nelson: "Nelson and Dorsey each posted that bond" *Tennille v. Western Union Co.* 785 F.3d 422, 429 (10th Cir 2015).   Likewise, Class Counsel's Motion to Expedite Oral Argument (Tenth Circuit's case 13-1317, Doc. 01019177138, filed December 24, 2013) was, effectively, rejected:

> "The Motion is denied in part as to the request to hold argument for Case Nos. 13-1310 and 1378 during the court's January 2014 term of court. Instead, consolidated argument for Case Nos. 13-1310 and 1378 will be held during the March 2014 term of court, which is scheduled from March 17-21, 2014." (Tenth Circuit's case 13-1378, Doc 01019183037, filed January 8, 2014).

Either way, whether it's the Claim Administer's mailing of the Benefit Package or Class Counsel's mailing of a "heads up" notice, this court's review of the procedure to be used in the upcoming mailing is ripe for consideration.

As an interesting aside, I first raised my concern about Class Counsel's insufficient effort to actually return class members' money to them – as opposed to its legal efforts – in the opening paragraph of my original objection to the proposed settlement:

> "I want to start this objection by stating that overall, my opinion is that Class Counsel has done an excellent job in this lawsuit for the period 2009 – January, 2013.  I have two primary concerns regarding this Settlement . . . 2) Not enough is being done to get the settlement money back to the Class Members." (Doc 211 "Objection to Proposed Settlement and Opposition to Motion for Attorneys' Fees," filed May 20, 2013 at 3)

**Res judicata:**   In the Tenth Circuit, I argued that this Court abused its discretion when it found that "[T]he record shows that notice has been given to the Class in the manner approved by the Court in its Preliminary Approval (Docket No. 175)." (Doc 256, ¶7 at 4).

In the end, in their decision, the Tenth Circuit took note of the factual dispute between me and Class Counsel regarding whether Western Union had, in fact, used its in-house databases to update Class Member addresses.  But they did not decide the dispute. Instead, they side-stepped the issue by deciding that address updating using only the post office's database was sufficient for due-process.

The issue of enforcing the terms of the Settlement Agreement with regard to mailing the Benefit Package was never raised or ruled upon by this court or the Tenth Circuit.

**F.R.Civ. P. 24:**   Federal Rule of Civil Procedure 24(b)(2) states, in pertinent part that "In General, On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact."

**Timeliness:**

> "Intervention in a federal court suit is governed by Fed. Rule Civ. Proc. 24. Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24 (a) and Rule 24 (b), that the application must be 'timely.'" *NAACP v. New York*, 413 U.S. 345, 365 (1973) Footnotes omitted.

Also,

> "The timeliness of a motion to intervene is determined 'in light of all of the circumstances.' *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416,

1418 (10th Cir. 1984). We have recognized three factors as particularly important: "[(1)] the length of time since the [movant] knew of [its] interests in the case; [(2)] prejudice to the existing parties; [and (3)] prejudice to the [movant]." *Id.* But these consideration{s} are not exclusive and the trial court should also consider 'the existence of any unusual circumstances.' *Id. Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010).{added}

## 1. Length of Time:

"The analysis is contextual; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d [1202], at 1205; see also *Stupak-Thrall* [*v. Glickman*], 226 F.3d [467] at 475 (absolute measure of time between filing of the complaint and the motion to intervene is one of least important circumstances) *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001).

This motion to intervene is filed some thirty months after this court entered its Amended Final Judgment (See Doc 256, filed June 26, 2013). "Courts are normally reluctant to grant a motion to intervene at a late stage in the proceedings or after entry of judgment." *Sanguine, Ltd., v. U.S. Dept. of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984). Internal citations omitted.

Thirty months is a long time, of course, as this Court very recently – and very pointedly - pointed out to my fellow objector, Sikora Nelson (see Doc 429, filed Dec. 21, 2015). However, I first learned of my interest in this case on April 1, 2013 (see Doc 176, filed on April 1, 2013). Since then, I have demonstrated what this court has described as a "history of diligent participation throughout the course of the settlement proceedings" (Doc 299, "Order" Filed Oct 21, 2013, n1 at 3). During the period starting April 1, 2013,

I have not had to formally intervene: "We hold that nonnamed class members like petitioner who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening" *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002).

## 2. Prejudice to the Existing Parties:

> '"The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case."' *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1235 (10th Cir. 2010) (quoting 7C Charles Alan Wright, Arthur R. Miller Mary Kay Kane, <u>Federal Practice Procedure</u> § 1916, at 541-48) (3rd ed.).

Also,

> "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner. Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.' *Sierra Club v. Espy*, 18 F.3d at 1205 ([internal] citation omitted)" *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001).

Here, granting intervention would not prejudice class members or defendants Western Union. As lead class counsel pointed out in their letter to this court:

> "Dorsey now wishes to launch a wave of collateral attacks on the Final Judgment in the form of Rule 60(b) motions. While those intended collateral attacks <u>would not, as a legal matter, delay the effectuation of the Settlement</u> . . . " (Doc 410, Lead Class Counsel Letter to Court at 2). Underlining added.

This intervention is made for the purpose of <u>enforcing</u> the Settlement Agreement's requirement that the Benefit Package be mailed to the "last known address" of class

members.  As such, there can be no prejudice.  Admittedly, there might be some level of

professional embarrassment to Class Counsel and the Class Administrator if it turns out

that the terms of the Settlement were not followed when the initial Class Notice was

mailed.  But that revelation will be incidental ("collateral") to the purpose of this

intervention.

> "Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties, a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose." *United Nuclear Corp v Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir 1990).

**3. Prejudice to the Movant:**  This factor appears to be neutral or "not applicable."

**4. Existence of Unusual Circumstances:**  The unusual circumstance that exists in this

case is the specter  of 538,727 class members never being mailed a Benefit Package

because of an as-of-yet unreviewed, overly aggressive culling by the Claims

Administrator and  an additional – estimated – 500,000 class members' Benefits

Packages being mailed to the wrong address.  The wrong address being the original, stale

address provided by the class member at the time of his original failed money transfer

(albeit with some limited updating thru the Post Office), as opposed to a newer, more

current address provided by the class member during a subsequent transaction (with the

same Post Office updating).

My earlier ten-page letter to this court (Doc. 411) explained in detail how and why this unusual circumstance developed in this court. My letter was written to fulfill a commitment I made to the Supreme Court of the United States in my application for an extension of time in which to file a petition for a writ of certiorari.

In it, I described how class members could – and did – seek refunds of their unredeemed money transfers; how such refunds served to reduce the size of the common fund on which class counsels' fees were to be based; and how that reduction created a conflict of interest for class counsel, in that it gave class counsel an incentive to skimp on sending out the class notice. I referred to this conflict of interest as class counsels' original conflict of interest.

My letter presented a scenario that explained how the conflict of interest went undetected prior to this Court's approval of the Settlement Agreement and highlighted two facts in the record that provided some indication that skimping had, in fact, occurred when the class notice was sent. The first fact I highlighted was the difference between the 1.9 million "unique customers" declared by Western Union and the 1.4 million class members declared by the Administrator; the second fact I highlighted was how the record was completely devoid of any mention of the methodology used by the Administrator to update the customers' original address by cross-checking Western Union's in-house databases.

My letter expressed concern that it was not in class counsels' interest to investigate shortcomings in their previous class notice protocol so as to ensure that future mailings to the class would be sent in a non-negligent manner.  I referred to this conflict of interest as class counsels' on-going conflict of interest.

**Claim Shared With Main Action / Common Law or Facts:**  As a member of the class, I have a claim that shares with the main action a common question of law and fact:  I paid for a money transfer in 2010; the transfer went unredeemed by the intended recipient (who, at the time of this transaction, was located in Ireland); the transfer remains unredeemed to this day; and prior to this lawsuit, Western Union never alerted me to my money transfer's unredeemed status.

Accordingly, I meet all the prerequisites for intervention under the permissive intervention standard.

**Conclusion:**

For the reasons stated, this court should grant this motion for intervention.  In the alternative, the court could order, *sua sponte*, the requests contained in the attached five proposed motions, for the reasons stated in those proposed motions.

Respectfully submitted,

Date: __[Jan 9, 2016]_____                    s/   Paul Dorsey_____
                                                 Paul Dorsey *pro se*
                                                 110 Westminster Drive
                                                 West Hartford, CT  06107
                                                 (860) 521-0081
                                                 p.dorsey@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2016, I caused this motion to be HAND DELIVERED and
filed with the Clerk of the Court.  I also certified that I emailed this motion to the addresses on
record for all parties and interested parties, per the attached Certificate of Service List (pg 46-
48).

Date: __[Jan 9, 2016]_____                    s/   Paul Dorsey_____
                                                 Paul Dorsey *pro se*
                                                 110 Westminster Drive
                                                 West Hartford, CT  06107
                                                 (860) 521-0081
                                                 p.dorsey@comcast.net

# Exhibit List

A   [Proposed] Motion by Intervenor Paul Dorsey to Enforce the Amended
Final Judgment and Order of Dismissal Requirement Regarding the
Filing of Claim Administrator's Invoices … … … … … … … … … … … … 19

B   [Proposed] Motion by Intervenor Paul Dorsey to Require Defendants to
Cross-Check Their In-house Databases Before Disclosing the "Last Known
Address" of Class Members to the Claims Administrator .. … … … … … … … …  23

C   [Proposed] Motion by Intervenor Paul Dorsey to Reconcile Conflicting
Declarations Made by Defendants and Claims Administrator Regarding
Class Size … … … … … … … … … … … … … … … … … … … … … 31

D   [Proposed] Motion by Intervenor Paul Dorsey to Require Defendants to
Disclose and Declare Level of Compliance With Previous Court Order
Regarding "Last Known Address" of Class Members … … … … … … … … … 36

E   [Proposed] Motion by Intervenor Paul Dorsey to Require Claims
Administrator to Disclose Additional Information Regarding Previous
Declaration   … … … … … … … … … … … … … … … … … … … … … 41